DALEY & HEFT, ATTORNEYS AT LAW
ROBERT W. BROCKMAN, ESQ. (SBN 123546)
GOLNAR J. FOZI, ESQ. (SBN 167674)
462 STEVENS AVENUE, SUITE 201
SOLANA BEACH, CA 92075
TELEPHONE: (858) 755-5666
FACSIMILE: (858) 755-7870

ORIGINAL

FILED
08 APR -8 PM 2:18
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

Attorneys for Defendants
CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE and FRANCISCO MESQUITA

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

SONDRA BOONE,

Plaintiff,

v.

CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA and DOES 1-20,

Defendants.

Case No. '08 CV 0634 W AJB

(San Diego Superior Court Case No. 37-2007-00057536-CU-DF-NC)

**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1441(b) (FEDERAL QUESTION)**

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that defendants CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA hereby remove to this Court the State Court action described below.

1. On or about October 29, 2007, an action was commenced in the Superior Court of the State of California, County of San Diego entitled Sondra Boone v. Carlsbad Community Church, Tom Wood, Dick Lee, Francisco Mesquita, Case 37-2007-00057536-CU-DF-NC. The complaint did not allege the violation of any federal statutes or laws. A copy of plaintiff's original summons and complaint are attached hereto as Exhibit A.

///

2. On or about December 17, 2007, defendants filed a demurrer. A true and correct copy of the demurrer and is attached hereto as Exhibit B.

3. On or about December 17, 2007, defendants filed a motion to strike allegations in plaintiff's original complaint. A true and correct copy of the motion to strike is attached hereto as Exhibit C.

3. On or about March 12, 2008, plaintiff voluntarily amended her original complaint in advance of the hearing on the defendants' demurrer and motion to strike, and served it on defendants via U.S. Mail. A true and correct of the First Amended Complaint is attached hereto as Exhibit D.

4. Concurrently with the filing of the First Amended Complaint, plaintiff also filed a Motion to Seek Punitive Damages Against Defendant Carlsbad Community Church. A copy of motion papers is attached hereto as Exhibit E.

5. The First Amended Complaint contains claims premised on federal law. Specifically, the First, Second, Sixth and Seventh claims for relief in the First Amended Complaint alleges violation of a Federal statute, namely Title VII of the Civil Rights Act, 42 U.S.C. Section 2000e-3(a) , and the Age Discrimination in Employment Act, 29 U.S.C. Section 623. Therefore, this lawsuit is a civil action of which this Court has original jurisdiction under 28 U.S.C. Section 1331, and is one which may be removed to this Court by defendants pursuant to the provisions of 28 U.S.C. Section 1441(b).

5. There are no other defendants named in this action.

6. Defendants demand a jury trial.

Dated: April 4, 2008

DALEY & HEFT, LLP

By: [signature]
ROBERT W. BROCKMAN
GOLNAR J. FOZI
Attorneys for Defendants CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE and FRANCISCO MESQUITA

EXHIBIT A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

FILED
NORTH COUNTY DIVISION
2007 OCT 29 AM 10:43
CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA, and DOES 1-20

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
SONDRA BOONE

**You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.**

**There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.**

***Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.***

***Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.***

The name and address of the court is:
*(El nombre y dirección de la corte es):*
SUPERIOR COURT OF CALIFORNIA
325 S. Melrose
Vista, CA
North County

CASE NUMBER:
*(Número del Caso):* **37-2007-00057536-CU-DF-NC**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Daniel R. Shinoff, Esq. 619/232-3122 619/232-3264
Stutz Artiano Shinoff & Holtz
2488 Historic Decatur Road
San Diego, CA 92106

DATE: OCT 29 2007 Clerk, by M. Bates, Deputy
*(Fecha)* *(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☐ on behalf of *(specify)*:

under:
- ☐ CCP 416.10 (corporation)
- ☐ CCP 416.20 (defunct corporation)
- ☐ CCP 416.40 (association or partnership)
- ☐ CCP 416.60 (minor)
- ☐ CCP 416.70 (conservatee)
- ☐ CCP 416.90 (authorized person)
- ☐ other *(specify)*:

4. ☐ by personal delivery on *(date)*:

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

**STUTZ ARTIANO SHINOFF & HOLTZ**
*A Professional Corporation*
Daniel R. Shinoff, Esq. (State Bar No. 99129)
Gil Abed, Esq. (State Bar No. 195771)
Ryan L. Church, Esq. (State Bar No. 249484)
2488 Historic Decatur Road, Suite 200
San Diego, CA 92106-6113
Tel: (619) 232-3122
Fax: (619) 232-3264

Attorneys for Plaintiff SONDRA BOONE

FILED
NORTH COUNTY DIVISION
2007 OCT 29 AM 10:43
CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SAN DIEGO - NORTH COUNTY BRANCH**

SONDRA BOONE,

Plaintiff,

v.

CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA and DOES 1-20,

Defendants.

Case No. 37-2007-00057536-CU-DF-NC

ICJ:
DEPT:
DATE:
TIME:

**PLAINTIFF'S COMPLAINT FOR DAMAGES FOR WRONGFUL TERMINATION; RETALIATION; AGE DISCRIMINATION AND HARASSMENT; GENDER DISCRIMINATION AND HARASSMENT; DEFAMATION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

COMPLAINT FILED:
TRIAL DATE: Not Set

Plaintiff, SONDRA BOONE, hereinafter complains and alleges as follows:

**PARTIES**

1. At all times herein mentioned, Plaintiff, SONDRA BOONE ("Plaintiff" or "Sandy Boone") was and is a resident of the County of San Diego, State of California.

2. Plaintiff is informed and believes, and thereon alleges, that Defendant Carlsbad Community Church ("Church") was and is an entity operating in the County of San Diego at 3175 Harding Street, Carlsbad, California 92008.

3. Plaintiff is informed and believes, and thereon alleges, that Defendants Tom

STUTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

Wood, Dick Lee, and Francisco Mesquita were, at all times, agents, co-conspirators, aiders, abettors, fiduciaries, representatives or employees of the Church and in doing the things alleged, were acting in concert with, under the direction of, and within the course and scope of the agency, conspiracy, or employment relationship.

4. Plaintiff is informed and believes that said individuals, Tom Wood, Dick Lee, and Francisco Mesquita were acting in their official and individual capacity at all times mentioned herein.

5. Plaintiff sues DOES 1-20, inclusive, under fictitious names. Their true names and capacities are unknown to the Plaintiff. When their true names and capacities are ascertained, Plaintiff will amend this Complaint by inserting their true names and capacities herein. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the harm suffered the Plaintiff.

6. Each of the defendants DOES 1-20 were the agents, co-conspirators, aiders, abettors, fiduciaries, representatives or employees of the Church and in doing the things alleged, were acting in concert with, under the direction of, and within the course and scope of the agency, conspiracy, or employment relationship.

**VENUE**

7. Venue in this matter is proper within the Superior Court, County of San Diego, as a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred within the County of San Diego, State of California. The injuries and damages sustained by Plaintiff, as more fully set forth herein, occurred in the County of San Diego, State of California. The conduct of the Defendants, and each of them, occurred and directly impacted the Plaintiff within the County of San Diego, State of California.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

8. On or about August 14, 2007, Plaintiff filed a Complaint against Defendants alleging harassment, retaliation, and discrimination with the Department of Fair Employment and Housing ("DFEH"). Plaintiff received a Right-to-Sue letter from DFEH dated August 23,

2

Plaintiff's Complaint for Damages for Wrongful Termination; Retaliation; Age Discrimination and Harassment; Gender Discrimination and Harassment; Defamation; Intentional Infliction of Emotional Distress

@PFDesktop\::ODMA/WORLDOX/G:/DATA/3138/1/PL/S7020739.WPD

STUTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

2007. A true and correct copy of the Right-to-Sue letter is attached herewith as Exhibit "A."

## GENERAL ALLEGATIONS

9. Plaintiff, who is now 61 years of age, began her employment with the Church in September of 1987.

10. Plaintiff was initially hired by the Church as a Data Base Specialist and later was promoted to the Administrative Assistant to the Senior Pastor.

11. Throughout her employment with the Church, Plaintiff has only served in the Administrative capacity and has never held any position that was germane to the religious functioning of the Church.

12. Plaintiff hereby alleges that on many occasions during the course of her employment, a supervisor, Douglas Bosler, subjected Plaintiff and other female Church employees to abusive and threatening verbal and physical behavior.

13. Plaintiff alleges that during her employment at the Church, she was consistently subjected to discriminatory treatment based on her age. Those who subjected Plaintiff to the discriminatory treatment were Church employees and/or agents, including but not limited Defendants Tom Wood, Dick Lee, Francisco Mesquita, and DOES 1-20.

14. Plaintiff alleges that during her employment at the Church, she was consistently subjected to discriminatory treatment based on her sex. Those who subjected Plaintiff to the discriminatory treatment were Church employees and/or agents, including but not limited Defendants Tom Wood, Dick Lee, Francisco Mesquita, and DOES 1-20.

15. At or around September 1, 2006, Plaintiff and four other female Church employees were left alone in the Church office for the day.

16. Plaintiff and the other female Church employees felt unsafe working in the office because indigent visitors often came to the office seeking assistance.

17. On or about September 4, 2006, Plaintiff and four other female Church employees submitted a written complaint to Senior Pastor Charles Youngkin and to the Board of Elders regarding their safety concerns. In addition, the female employee's complained of their

3

Plaintiff's Complaint for Damages for Wrongful Termination; Retaliation; Age Discrimination and Harassment; Gender Discrimination and Harassment; Defamation; Intentional Infliction of Emotional Distress

@PFDesktop\::ODMA/WORLDOX/G:/DATA/3138/1/PL/S7020739.WPD

STOTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

supervisor, Supervisor Douglas Bosler, long history of abusive and inappropriate behavior towards females in the office, including the Plaintiff.

18. Plaintiff and the other female employees requested that their employer or any supervisor on behalf of their employer not subject them to any of the conditions that they were complaining of, or any retaliation due to their filing of a complaint.

19. On or about September 8, 2006, Supervisor Bosler entered Plaintiff's office and verbally threatened, physically intimidated, and harassed the Plaintiff regarding her filing of the September 4, 2006 complaint concerning, among other things, discrimination, harassment, and workplace safety.

20. As a result of the September 8, 2006 confrontation with Supervisor Bosler, Plaintiff's fear of her safety at her workplace had increased.

21. On or about September 8, 2006, Plaintiff filed a complaint with the Church regarding Supervisor Bosler's verbal threats, physical intimidation, harassment, and retaliation.

22. The Church took no immediate actions to remedy any concerns raised by the Plaintiff, and Plaintiff remained in fear of her safety.

23. On or about January of 2007, Francisco Mesquita was hired as the Church's Pastor of Administration.

24. In the course and scope of Plaintiff's employment at the Church, Plaintiff had rightful access to a Church database ("Database") that details the Church finances.

25. During the course of her employment, Plaintiff became aware of potential improper financial activity by Francisco Mesquita and Church Treasure Dick Lee as they relate to Church funds. The financial improprieties included, but were not limited to, Mesquita and Lee's unauthorized and excessive use of Church funds.

26. On or about March 19, 2007, a Church Administration Ministry Team Member requested an investigation into possible financial improprieties within the Church.

27. In or around March and April of 2007, Plaintiff openly supported the Church Administration Ministry Team Member's request to initiate an investigation into potential misuse

4

Plaintiff's Complaint for Damages for Wrongful Termination; Retaliation; Age Discrimination and Harassment; Gender Discrimination and Harassment; Defamation; Intentional Infliction of Emotional Distress

@PFDesktop\::ODMA/WORLDOX/G:/DATA/3138/1/PL/S7020739.WPD

STOTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

of Church funds. Plaintiff was aware of possible improper financial activity by Francisco Mesquita and Church Treasure Dick Lee and wished to discuss this with investigators.

28. In or around April of 2007, Plaintiff had a meeting with her supervisor, Charlie Younkin, regarding the investigation. Plaintiff expressed support of the investigation, and expressed her desire to discuss the possible improper financial accounting with the investigators. Younkin became irrate over her support and desire to share information with investigators. During the course of the meeting, Mr. Younkin stated that an investigation would only occur "over my dead body."

29. Plaintiff was intimidated and fearful of her safety following the meeting she had with Charlie Younkin on or around April of 2007.

30. On or about April 22, 2007, the Church Board of Elders initiated an official investigation into financial improprieties as they relate to Church funds and personnel issues.

31. As part of the investigation, the investigative team made it clear that they intended to interview all administrative staff members, including the Plaintiff.

32. The investigative team assured all employees that they would not suffer any form of retaliation or harassment after speaking with the investigators.

33. On or about April 23, 2007, prior to the Church Administration Ministry's interview with Plaintiff, Francisco Mesquita and Tom Wood terminated the Plaintiff.

34. Plaintiff is informed and believes that on or about April 25, 2007, Francisco Mesquita falsely informed Church employees that she (Plaintiff) broke into the Church after being terminated and destroyed her former work computer.

35. Plaintiff is informed and believes that after April 25, 2007, Francisco Mesquita continued to tell employees that Plaintiff illegally entered the Church and destroyed her computer following her April 23, 2007 termination.

36. Plaintiff is informed and believes that on or about August 26, 2007, an email was sent from Dick Lee to Paula Padilla, a member of the community, stating that Sandy Boone (Plaintiff) was terminated because she "Had done things that were evil and absolutely

despicable."

37. Plaintiff is informed and believes that on or about September 1, 2007, Tom Wood called Carol Nave, a member of the community, and stated that Sandy Boone was fired because she did "grievous acts."

38. Plaintiff is informed and believes that on or about September 3, 2007, Tom Wood stated to Clyde Cobb, a member of the community, that Plaintiff was terminated because she had done "Evil things."

39. Plaintiff is informed and believes that Defendants continue to make slanderous and defamatory statements against her to third parties.

## FIRST CAUSE OF ACTION

**Wrongful Termination in Violation of Public Policy**
**[As Against Defendant Church and DOES 1-20 inclusive]**

40. Plaintiff realleges and incorporate herein by reference the allegations of paragraphs 1 through 39, inclusive.

41. At all times herein mentioned, Plaintiff was an employee of the Defendant Carlsbad Community Church.

42. The Constitution of the State of California, Article 1, section 8; Government Code section 12940 et seq., Labor Code section 1102.5, and Labor Code section 6400 et seq. prohibit, among other things, harassing, retaliating, defaming or discriminating against an employee based on her age, sex, or complaints of unsafe working conditions. These provisions set forth a fundamental public policy. The Fair Employment and Housing Act applies to this action notwithstanding subparagraph (j)(4)(B) of section 12940 of the Government Code, because of the operation of subparagraph (f)(2) of section 12926.2 of the Government Code, and the secular nature of Plaintiff's employment.

43. At all times herein mentioned, the aforementioned provisions were in full force and effect and delineated fundamental, substantial, and well-established policies that benefit the public at large rather than private interests and were binding on the Defendants at the time of Plaintiff's termination.

6

Plaintiff's Complaint for Damages for Wrongful Termination; Retaliation; Age Discrimination and Harassment; Gender Discrimination and Harassment; Defamation; Intentional Infliction of Emotional Distress

@PFDesktop\::ODMA/WORLDOX/G:/DATA/3138/1/PL/S7020739.WPD

STOLZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

44. Plaintiff is a member of the class entitled to protection under the aforementioned code sections.

45. Plaintiff is informed and believes that she was terminated due to her age, sex, and because of her complaints of workplace safety.

46. Plaintiff is informed and believes that she was terminated as an act of retaliation for her demand to work in a workplace free and clear of discrimination and harassment based on gender and age in violation of Government Code section 12940, or free and clear of intimidation for her request to provide a safe and healthy workplace.

47. As a direct and proximate result of the violation of public policy and retaliation, Plaintiff sustained and continues to suffer: (1) loss of past and future income and other valuable employee benefits; (2) loss of employment-related opportunities for growth; (3) damage to her professional reputation; and (4) emotional distress, anxiety and injury to her psyche, all to her damage according to proof at trial. Plaintiff claims such amounts as damages together with prejudgment interest pursuant to Civil Code sections 3287 and 3288, and/or any other provision of law providing for prejudgment interest.

48. Plaintiff seeks an award of attorneys fees on this cause of action pursuant to Government Code section 12965 and Code of Civil Procedure section 1021.5.

## SECOND CAUSE OF ACTION

**Retaliation in violation of Labor Code sections 1102.5 and 6310 et seq.**
**[As Against All Defendants]**

49. Plaintiff realleges and incorporate herein by reference the allegations of paragraphs 1 through 48, inclusive.

50. Plaintiff's termination on April 23, 2007, was in retaliation for (1) her filing of the September 4, 2006, internal complaint regarding Supervisor Bosler's treatment of her and other female employees; (2) her filing of the September 4, 2006, internal complaint regarding the safety of her and other female employees; and (3) her expressed support of an internal financial audit of the Church in connection with accusations of financial improprieties.

51. As a result of Defendants' retaliation in terminating Plaintiff's employment,

A Professional Corporation

Plaintiff has suffered and continues to suffer substantial loss and damage, including lost salary, bonuses, lost retirement benefits, medical expenses and related harm, in an amount within the jurisdictional limits of this court which will be proven according to proof at the time of trial.

52. Defendant's conduct has caused Plaintiff embarrassment, humiliation, anger, mental anguish and emotional upset in an amount within the jurisdictional limits of this court, which will be proven according to proof at the time of trial.

53. Defendant committed said retaliation against Plaintiff maliciously, fraudulently and oppressively with the wrongful intent of injuring Plaintiff for an improper and evil motive which constitutes a malicious and conscious disregard of Plaintiff's rights. Plaintiff is thereby entitled to punitive damages from defendant according to proof at the time of trial.

## THIRD CAUSE OF ACTION

**Retaliation in violation of Labor Code sections 6400 et seq.**
**[As Against All Defendants]**

54. Plaintiff realleges and incorporate herein by reference the allegations of paragraphs 1 through 53, inclusive.

55. Pursuant to Labor Code section 6400 et seq., Defendants have a statutory duty to furnish employment and a place of employment that his safe and healthful for the employees therein.

56. On or before September 4, 2006, Plaintiff reasonably believed that her work environment was unsafe and unhealthful.

57. On or about September 4, 2006, Plaintiff complained to her supervisors of an unsafe work environment.

58. Following Plaintiff's September 4, 2006 complaint, Defendants failed to furnish the Plaintiff with a place of employment that is safe and healthful. Instead, following the Plaintiff's filing of a complaint, Defendants allowed for Supervisor Bosler to physically and verbally retaliate against Plaintiff.

59. As a direct and proximate result of the violation of Labor Code section 6400 et seq., Plaintiff sustained and continues to suffer: (1) loss of past and future income and other

STOTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

valuable employee benefits; (2) loss of employment-related opportunities for growth; (3) damage to her professional reputation; and (4) emotional distress, anxiety and injury to her psyche, all to her damage according to proof at trial. Plaintiff claims such amounts as damages together with prejudgment interest pursuant to Civil Code sections 3287 and 3288, and/or any other provision of law providing for prejudgment interest.

60. Plaintiff seeks an award of attorneys fees on this cause of action pursuant to Government Code section 12965 and Code of Civil Procedure section 1021.5.

**FOURTH CAUSE OF ACTION**

**Age Discrimination and Harassment in violation of The California Constitution and Government Code section 12940 et seq.**
**[As Against All Defendants]**

61. Plaintiff refers to, re-alleges, and incorporates herein by this reference all allegations set forth in paragraphs 1 through 60, inclusive.

62. The Constitution of the State of California, Article 1, section 8, prohibits, among other things, harassing, retaliating, defaming or discriminating against an employee based on her age, sex, or complaints of unsafe working conditions.

63. The foregoing conduct violates the California Fair Employment and Housing Act ("FEHA"), Government Code § 12940, et seq., which prohibits discrimination and harassment based on age. At all times mentioned in this complaint, FEHA was in full force and effect, and was binding on Defendants. This section requires Defendants, *inter alia*, to refrain from discriminating and harassing Plaintiff on the basis of age. These provisions set forth a fundamental public policy.

64. Plaintiff is a member of the class entitled to protection under the aforementioned section of the California Constitution and FEHA sections.

65. Plaintiff was terminated from the Church and otherwise unfairly and unjustly treated, and discharged on the on the basis of her age, 61, by Defendants and their agents, as described above.

66. Defendant engaged in outrageous acts and abuses against Plaintiff intentionally,

9

Plaintiff's Complaint for Damages for Wrongful Termination; Retaliation; Age Discrimination and Harassment; Gender Discrimination and Harassment; Defamation; Intentional Infliction of Emotional Distress

@PFDesktop\::ODMA/WORLDOX/G:/DATA/3138/1/PL/S7020739.WPD

STUTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

willfully and wantonly for the purpose of depriving Plaintiff of her rights and to cause her to suffer humiliation, mental anguish, emotional and mental distress, highly unpleasant mental reaction, including anxiety, grief, shame, embarrassment, anger, chagrin, disappointment and worry.

67. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, the exact amount of which have not yet been fully ascertained but are within the jurisdictional limits of this Court. Plaintiff is entitled to damages, general and special, in an amount which will be shown at the time of trial.

68. Plaintiff is informed, believes, and thereon alleges that Defendant acted fraudulently, maliciously, and oppressively with a conscious, reckless, willful and callous disregard of the probable detrimental and economic consequences to Plaintiff, and entitling Plaintiff to punitive damages under California Civil Code section 3294, in an amount sufficient to punish or set an example of Defendants.

69. Plaintiff seeks an award of attorneys fees on this cause of action pursuant to Government Code section 12965 and Code of Civil Procedure section 1021.5.

**FIFTH CAUSE OF ACTION**

**Gender Discrimination and Harassment in violation of The California Constitution and Government Code section 12940 et seq.**
**[As Against All Defendants]**

70. Plaintiff realleges and incorporate herein by reference the allegations of paragraphs 1 through 69, inclusive.

71. The Constitution of the State of California, Article 1, section 8, prohibits, among other things, harassing, retaliating, defaming or discriminating against an employee based on her age, sex, or complaints of unsafe working conditions.

72. The foregoing conduct violates the California Fair Employment and Housing Act ("FEHA"), Government Code § 12940, et seq., which prohibits discrimination and harassment based on sex. At all times mentioned in this complaint, FEHA was in full force and effect, and was binding on Defendants. This section requires Defendants, *inter alia*, to refrain from

STOLZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

discriminating and harassing Plaintiff on the basis of sex

73. Plaintiff is a member of the class entitled to protection under the aforementioned section of the California Constitution and FEHA sections.

74. Plaintiff was terminated from the Church and otherwise unfairly and unjustly treated, and discharged on the basis of her sex, female, by Defendants and their agents, as described above.

75. Defendant engaged in outrageous acts and abuses against Plaintiff intentionally, willfully and wantonly for the purpose of depriving Plaintiff of her rights and to cause her to suffer humiliation, mental anguish, emotional and mental distress, highly unpleasant mental reaction, including anxiety, grief, shame, embarrassment, anger, chagrin, disappointment and worry.

76. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, the exact amount of which have not yet been fully ascertained but are within the jurisdictional limits of this Court. Plaintiff is entitled to damages, general and special, in an amount which will be shown at the time of trial.

77. Plaintiff is informed, believes, and thereon alleges that Defendant acted fraudulently, maliciously, and oppressively with a conscious, reckless, willful and callous disregard of the probable detrimental and economic consequences to Plaintiff, and entitling Plaintiff to punitive damages under California Civil Code section 3294, in an amount sufficient to punish or set an example of Defendant.

**SIXTH CAUSE OF ACTION**

**Defamation - [As Against All Defendants]**

78. Plaintiff refers to, re-alleges, and incorporates herein by this reference all allegations set forth in paragraphs 1 through 77, inclusive, as though set forth in full.

79. Beginning on our about April 25, 2007, and continuing to the date of this complaint, Defendants Francisco Mesquita, Dick Lee, and Tom Wood began making defamatory and slanderous statements about the Plaintiff.

STOLZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

80. Defendants Francisco Mesquita, Dick Lee, and Tom Wood made disparaging statements about Plaintiff publicly, through written email, and through use of other channels of communication to third parties. These statements were false, entirely improper and opportunistic, and were disseminated throughout the Plaintiff's community. Plaintiff's career and professional reputation were severely damaged as a result of these statements. Numerous statements were made by Defendants, including but not limited to:

(a) On or about April 25, 2007, Defendant Francisco Mesquita falsely informed Church employees that Sandy Boone (Plaintiff) broke into the Church after being terminated and destroyed her computer. After April 25, 2007, Mesquita continued to tell employees that Plaintiff illegally entered the Church and destroyed her computer.

(b) On or about August 26, 2007, an email was sent from Defendant Dick Lee to Paula Padilla, a member of the community, stating that Sandy Boone (Plaintiff) was terminated because she "Had done things that were evil and absolutely despicable."

(c) On or about September 1, 2007, Defendant Tom Wood called Carol Nave, a member of the community, and stated that Sandy Boone was fired because she committed "grievous acts."

(d) On or about September 3, 2007, Defendant Tom Wood stated to Clyde Cobb, a member of the community, that Plaintiff was terminated because she had done "Evil things."

81. The foregoing publications were false, outrageous, negligent, reckless, intentional, and maliciously published by Defendants, and each of them. Plaintiff is informed and believes that the negligent, reckless, and intentional publications by Defendants, and each of them, were published by Defendants, their agents and employees. Plaintiff hereby seeks damages for these Defendant publications and all foreseeable re-publications discovered up to the time of trial.

82. The defamatory publications consisted of oral and written, knowingly false and unprivileged communications, tending directly to injure Plaintiff and Plaintiff's personal, business, and professional reputation. These and similar statements published by Defendants, and each of them, expressly and impliedly asserted that Plaintiff engaged in criminal behavior,

committed grievous acts, did evil things, and acted despicably.

83. The defamatory meaning of all of the above-described false and defamatory statements and their reference to Plaintiff, were understood by these above-referenced third person recipients and other members of the community who are known to Defendants.

84. None of Defendants' defamatory publications against Plaintiff referenced above are true. The above defamatory statements were understood as assertions of fact, and not as opinion. Plaintiff is informed and believes this defamation will continue to be negligently, recklessly, and intentionally published and foreseeably republished by Defendants, and each of them, and foreseeably republished by recipients of Defendants' publications, thereby causing additional injury and damages for which Plaintiff seeks redress by this action.

85. Each of these false defamatory *per se* publications were negligently, recklessly, and intentionally published in a manner equaling malice and abuse of any alleged conditional privilege, which Plaintiff denies existed, since the publications, and each of them, were made with hatred, ill will, and an intent to vex, harass, annoy, and injure Plaintiff in order to justify the illegal and cruel actions of Defendants, and each of them, to cause further damage to Plaintiff's professional and personal reputation.

86. As a proximate result of the publication and republication of these defamatory statements by Defendants, and each of them, Plaintiff has suffered injury to her personal, business and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, and general damage in an amount according to proof.

87. All actions of Defendants, and each of them, their agents and employees, herein alleged were known, ratified and approved by the Defendants, and each of them. Plaintiff thus is entitled to recover punitive and exemplary damages from Defendants Francisco Mesquita, Dick Lee, Tom Wood, the Church, and DOES 1-20.

88. In addition to the aforementioned damages, Plaintiff seeks an award of attorney

13

Plaintiff's Complaint for Damages for Wrongful Termination; Retaliation; Age Discrimination and Harassment; Gender Discrimination and Harassment; Defamation; Intentional Infliction of Emotional Distress

@PFDesktop\::ODMA/WORLDOX/G:/DATA/3138/1/PL/S7020739.WPD

A Professional Corporation

fees on this cause of action pursuant to Code of Civil Procedure section 1021.5.

**SEVENTH CAUSE OF ACTION**

**Intentional Infliction of Emotional Distress - [As Against All Defendants]**

89. Plaintiff refers to, re-alleges, and incorporates herein by this reference all allegations set forth in paragraphs 1 through 88, inclusive.

90. Defendants Francisco Mesquita, Dick Lee, and Tom Wood, who are employed by and/or are agents of the Church, engaged in unprivileged conduct when they defamed Plaintiff and caused her embarrassment and humiliation. This conduct was outrageous in that the Defendant Church knew and condoned the conduct of its agent.

91. Defendants' conduct was done with reckless disregard of the probability of causing Plaintiff emotional distress or with the intent of causing Plaintiff to suffer emotional distress.

92. Plaintiff did in fact suffer severe emotional distress. Plaintiff's emotional distress was a direct and proximate result of the outrageous conduct of Defendants.

93. Defendants' conduct was oppressive, fraudulent, malicious, despicable, and was carried on by Defendants with willful disregard of the rights or safety of Plaintiff. Defendants, therefore, subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights.

94. As a further proximate result of Defendants' actions against Plaintiff, as alleged above, Plaintiff has been harmed in that Plaintiff has suffered humiliation, mental anguish, emotional and physical distress, anxiety, and has been injured in the mind and body. Plaintiff is thereby entitled to general and compensatory damages in an amount to be proven at trial.

95. Plaintiff is further informed and believes that each business or employer, through its officers, directors and managing agents, and each individual Defendant had advance knowledge of the wrongful conduct set forth above and sanctioned said wrongful conduct, thereby ratifying it, with a conscious disregard of the rights and safety of Plaintiff and for the deleterious consequences of Defendants' actions, and after becoming aware of their wrongful conduct, each Defendant, by and through its agents, and each individual Defendant, authorized

STOTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

and ratified the wrongful conduct herein alleged.

96. Plaintiff seeks an award of attorney fees on this cause of action pursuant to Code of Civil Procedure section 1021.5.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, as follows:

1. For economic damages, including, but not limited to, past and future loss of earnings and benefits, and loss of earning capacity, according to proof;

2. For damages for physical and mental pain and anguish and emotional distress according to proof;

3. For punitive damages against all Defendants according to proof;

4. For costs of suit and pre-judgment interest at the legal prevailing rate;

5. Reasonable attorney's fees; and

6. For such other and further relief as the Court may deem just and proper.

DATED: October 29, 2007

STUTZ ARTIANO SHINOFF & HOLTZ
*A Professional Corporation*

By: ______________________
Daniel R. Shinoff
Gil Abed
Ryan L. Church
Attorneys for Plaintiff SONDRA BOONE

15

Plaintiff's Complaint for Damages for Wrongful Termination; Retaliation; Age Discrimination and Harassment; Gender Discrimination and Harassment; Defamation; Intentional Infliction of Emotional Distress

G:\DATA\3138\1\PL\S7020739.WPD

A Professional Corporation

POS-015

ATTORNEY OR PARTY WITHOUT ATTORNEY (*Name, State Bar number, and address*):

STUTZ, ARTIANO, SHINOFF & HOLTZ
2488 Historic Decatur Road
Suite 200
San Diego, California 92106
TELEPHONE NO.: (619) 232-3122 FAX NO. (*Optional*): (619) 232-3264
E-MAIL ADDRESS (*Optional*):
ATTORNEY FOR (*Name*):

FOR COURT USE ONLY

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SAN DIEGO
STREET ADDRESS: 325 South Melrose Drive
MAILING ADDRESS:
CITY AND ZIP CODE: Vista, California 92083
BRANCH NAME: NORTH COUNTY BRANCH

PLAINTIFF/PETITIONER: SONDRA BOONE

DEFENDANT/RESPONDENT: CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA and DOES 1-20

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL**

CASE NUMBER: 372007-00057536CUDFNC

TO (*insert name of party being served*): Golnar J. Fozi, Esq.

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: November 8, 2007

Robin Stewart
(TYPE OR PRINT NAME)

▶ [signature]
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of ***(to be completed by sender before mailing)***:

1. [X] A copy of the summons and of the complaint.
2. [ ] Other: (*specify*):

***(To be completed by recipient)***:
Date this form is signed:

(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY, ON WHOSE BEHALF THIS FORM IS SIGNED)

▶
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL

Legal Solutions Plus

Code of Civil Procedure, §§ 415.30, 417.10

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 325 S. Melrose
MAILING ADDRESS: 325 S. Melrose
CITY AND ZIP CODE: Vista, CA 92081
BRANCH NAME: North County
TELEPHONE NUMBER: (760) 806-6347

PLAINTIFF(S) / PETITIONER(S): Sondra Boone

DEFENDANT(S) / RESPONDENT(S): Carlsbad Community Church et.al.

BOONE VS. CARLSBAD COMMUNITY CHURCH

| NOTICE OF CASE ASSIGNMENT | CASE NUMBER: 37-2007-00057536-CU-DF-NC |
|---|---|

Judge: Michael B. Orfield Department: N-28

**COMPLAINT/PETITION FILED:** 10/29/2007

**CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW**

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

**TIME STANDARDS:** The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil consists of all cases except: Small claims appeals, petitions, and unlawful detainers.

**COMPLAINTS:** Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SDSC CIV-345) filed within 60 days of filing. This is a mandatory document and may not be substituted by the filing of any other document.

**DEFENDANT'S APPEARANCE:** Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.)

**DEFAULT:** If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service.

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS. SEE ADR INFORMATION PACKET AND STIPULATION.

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION PURSUANT TO CCP 1141.10 AT THE CASE MANAGEMENT CONFERENCE. THE FEE FOR THESE SERVICES WILL BE PAID BY THE COURT IF ALL PARTIES HAVE APPEARED IN THE CASE AND THE COURT ORDERS THE CASE TO ARBITRATION PURSUANT TO CCP 1141.10. THE CASE MANAGEMENT CONFERENCE WILL BE CANCELLED IF YOU FILE FORM SDSC CIV-359 PRIOR TO THAT HEARING

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 325 S. Melrose
MAILING ADDRESS: 325 S. Melrose
CITY, STATE, & ZIP CODE: Vista, CA 92081-6695
BRANCH NAME: North County

*FOR COURT USE ONLY*

PLAINTIFF(S): Sondra Boone

DEFENDANT(S): Carlsbad Community Church et.al.

SHORT TITLE: BOONE VS. CARLSBAD COMMUNITY CHURCH

**STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION PROCESS (CRC 3.221)**

CASE NUMBER: 37-2007-00057536-CU-DF-NC

Judge: Michael B. Orfield

Department: N-28

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution process. Selection of any of these options will not delay any case management time-lines.

- ☐ Court-Referred Mediation Program
- ☐ Private Neutral Evaluation
- ☐ Private Mini-Trial
- ☐ Private Summary Jury Trial
- ☐ Private Settlement Conference with Private Neutral
- ☐ Court-Ordered Nonbinding Arbitration
- ☐ Court-Ordered Binding Arbitration (Stipulated)
- ☐ Private Reference to General Referee
- ☐ Private Reference to Judge
- ☐ Private Binding Arbitration
- ☐ Other (specify): ____________________

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) ____________________

Alternate: (mediation & arbitration only) ____________________

Date: ____________________

Name of Plaintiff

Signature

Name of Plaintiff's Attorney

Signature

Date: ____________________

Name of Defendant

Signature

Name of Defendant's Attorney

Signature

(Attach another sheet if additional names are necessary). It is the duty of the parties to notify the court of any settlement pursuant to California Rules of Court, 3.1385. Upon notification of the settlement the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court and all un-served, non-appearing or actions by names parties are dismissed.

**IT IS SO ORDERED.**

Dated: 10/29/2007

JUDGE OF THE SUPERIOR COURT

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CASE NUMBER: 37-2007-00057536-CU-DF-NC CASE TITLE: Boone vs. Carlsbad Community Church

## NOTICE TO LITIGANTS/ADR INFORMATION PACKAGE

You are required to serve a copy of this Notice to Litigants/ADR Information Package and a copy of the blank Stipulation to Alternative Dispute Resolution Process (received from the Civil Business Office at the time of filing) with a copy of the Summons and Complaint on all defendants in accordance with San Diego Superior Court Rule 2.1.5, Division II and CRC Rule 201.9.

## ADR POLICY

It is the policy of the San Diego Superior Court to strongly support the use of Alternative Dispute Resolution ("ADR") in all general civil cases. The court has long recognized the value of early case management intervention and the use of alternative dispute resolution options for amenable and eligible cases. The use of ADR will be discussed at all Case Management Conferences. It is the court's expectation that litigants will utilize some form of ADR – i.e. the court's mediation or arbitration programs or other available private ADR options as a mechanism for case settlement before trial

## ADR OPTIONS

**1) CIVIL MEDIATION PROGRAM:** The San Diego Superior Court Civil Mediation Program is designed to assist parties with the early resolution of their dispute. All general civil independent calendar cases, including construction defect, complex and eminent domain cases are eligible to participant in the program. Limited civil collection cases are not eligible at this time. San Diego Superior Court Local Rule 2.31, Division II addresses this program specifically. Mediation is a non- binding process in which a trained mediator 1) facilitates communication between disputants, and 2) assists parties in reaching a mutually acceptable resolution of all or part of their dispute. In this process, the mediator carefully explores not only the relevant evidence and law, but also the parties' underlying interests, needs and priorities. The mediator is not the decision-maker and will not resolve the dispute – the parties do. Mediation is a flexible, informal and confidential process that is less stressful than a formalized trial. It can also save time and money, allow for greater client participation and allow for more flexibility in creating a resolution.

**Assignment to Mediation, Cost and Timelines:** Parties may stipulate to mediation at any time up to the CMC or may stipulate to mediation at the CMC. Mediator fees and expenses are split equally by the parties, unless otherwise agreed. Mediators on the court's approved panel have agreed to the court's payment schedule for county-referred mediation: $150.00 per hour for each of the first two hours and their individual rate per hour thereafter. Parties may select any mediator, however, the court maintains a panel of court-approved mediators who have satisfied panel requirements and who must adhere to ethical standards. All court-approved mediator fees and other policies are listed in the Mediator Directory at each court location to assist parties with selection. **Discovery:** Parties do not need to conduct full discovery in the case before mediation is considered, utilized or referred. **Attendance at Mediation:** Trial counsel, parties and all persons with full authority to settle the case must personally attend the mediation, unless excused by the court for good cause.

**2) JUDICIAL ARBITRATION:** Judicial Arbitration is a binding or non-binding process where an arbitrator applies the law to the facts of the case and issues an award. The goal of judicial arbitration is to provide parties with an adjudication that is earlier, faster, less formal and less expensive than trial. The arbitrator's award may either become the judgment in the case if all parties accept or if no trial de novo is requested within the required time. Either party may reject the award and request a trial de novo before the assigned judge if the arbitration was non-binding. If a trial de novo is requested, the trial will usually be scheduled within a year of the filing date.

**Assignment to Arbitration, Cost and Timelines:** Parties may stipulate to binding or non-binding judicial arbitration or the judge may order the matter to arbitration at the case management conference, held approximately 150 days after filing, if a case is valued at under $50,000 and is "at issue". The court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. In addition, if parties select an arbitrator from the court's panel, the court will pay the arbitrator's fees. Superior Court

**3) SETTLEMENT CONFERENCES:** The goal of a settlement conference is to assist the parties in their efforts to negotiate a settlement of all or part of the dispute. Parties may, at any time, request a settlement conference before the judge assigned to their case; request another assigned judge or a pro tem to act as settlement officer; or may privately utilize the services of a retired judge. The court may also order a case to a mandatory settlement conference prior to trial before the court's assigned Settlement Conference judge.

**4) OTHER VOLUNTARY ADR:** Parties may voluntarily stipulate to private ADR options outside the court system including private binding arbitration, private early neutral evaluation or private judging at any time by completing the "Stipulation to Alternative Dispute Resolution Process" which is included in this ADR package. Parties may also utilize mediation services offered by programs that are partially funded by the county's Dispute Resolution Programs Act. These services are available at no cost or on a sliding scale based on need. For a list of approved DRPA providers, please contact the County's DRPA program office at (760) 726-4900.

**ADDITIONAL ADR INFORMATION:** For more information about the Civil Mediation Program, please contact the Civil Mediation Department at (619) 515-8908. For more information about the Judicial Arbitration Program, please contact the Arbitration Office at (619) 531-3818. For more information about Settlement Conferences, please contact the Independent Calendar department to which your case is assigned. Please note that staff can only discuss ADR options and cannot give legal advice.



GJF

A Professional Corporation
2488 Historic Decatur Road, Suite 200
San Diego, California 92106-6113
(619) 232-3122
Fax (619) 232-3264

# FACSIMILE TRANSMISSION COVER SHEET

**DATE:** **November 8, 2007**

| RECIPIENT | COMPANY | FAX NUMBER |
|---|---|---|
| Golnar J. Fozi, Esq. | Daley & Heft | 858-755-7870 |

**SENDER:** **Ryan L. Church, Esq.**

**RE:** **Boone v. Carlsbad Community Church**

**CASE/CODE:** **3138-1**

**COMMENTS:**

Please see attached Summons, Stipulation to Alternative Dispute Resolution Process and Notice of Case Assignment in the above referenced case. These documents were inadvertently left off my previous fax.

Please add them to the documents faxed earlier this afternoon and acknowledge them on the Notice and Acknowledgment of Receipt which is also attached, and return it to our offices. Thank you.

YOU SHOULD RECEIVE 6 PAGE(S), INCLUDING THIS COVER SHEET. IF THERE ARE ANY PROBLEMS WITH THIS TRANSMISSION, PLEASE CONTACT US AT (619) 232-3122.

The information contained in this communication is intended only for the use of the addressee and may be confidential, may be attorney-client privileged, and may constitute inside information. Unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify us at (619) 232-3122.

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

FILED
NORTH COUNTY DIVISION
2007 OCT 29 AM 10:43
CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA, and DOES 1-20

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
SONDRA BOONE

**You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.**

**There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.**

***Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.***

***Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.***

The name and address of the court is:
*(El nombre y dirección de la corte es):*
SUPERIOR COURT OF CALIFORNIA
325 S. Melrose
Vista, CA
North County

CASE NUMBER: (Número del Caso): 37-2007-00057536-CU-DF-NC

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Daniel R. Shinoff, Esq. 619/232-3122 619/232-3264
Stutz Artiano Shinoff & Holtz
2488 Historic Decatur Road
San Diego, CA 92106

DATE: *(Fecha)* OCT 2 9 2007 Clerk, by *(Secretario)* M. Bates, Deputy *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☐ on behalf of *(specify)*:

under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:

4. ☐ by personal delivery on *(date)*:

Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. January 1, 2004]

SUMMONS

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
STREET ADDRESS: 325 S. Melrose
MAILING ADDRESS: 325 S. Melrose
CITY AND ZIP CODE: Vista, CA 92081
BRANCH NAME: North County
TELEPHONE NUMBER: (760) 806-6347

PLAINTIFF(S) / PETITIONER(S): Sondra Boone

DEFENDANT(S) / RESPONDENT(S): Carlsbad Community Church et.al.

BOONE VS. CARLSBAD COMMUNITY CHURCH

| NOTICE OF CASE ASSIGNMENT | CASE NUMBER: 37-2007-00057536-CU-DF-NC |
|---|---|

Judge: Michael B. Orfield

Department: N-28

**COMPLAINT/PETITION FILED:** 10/29/2007

**CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW**

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

**TIME STANDARDS:** The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil consists of all cases except: Small claims appeals, petitions, and unlawful detainers.

**COMPLAINTS:** Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SDSC CIV-345) filed within 60 days of filing. This is a mandatory document and may not be substituted by the filing of any other document.

**DEFENDANT'S APPEARANCE:** Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.)

**DEFAULT:** If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service.

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS. SEE ADR INFORMATION PACKET AND STIPULATION.

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION PURSUANT TO CCP 1141.10 AT THE CASE MANAGEMENT CONFERENCE. THE FEE FOR THESE SERVICES WILL BE PAID BY THE COURT IF ALL PARTIES HAVE APPEARED IN THE CASE AND THE COURT ORDERS THE CASE TO ARBITRATION PURSUANT TO CCP 1141.10. THE CASE MANAGEMENT CONFERENCE WILL BE CANCELLED IF YOU FILE FORM SDSC CIV-359 PRIOR TO THAT HEARING

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS: 325 S. Melrose | |
| MAILING ADDRESS: 325 S. Melrose | |
| CITY, STATE, & ZIP CODE: Vista, CA 92081-6695 | |
| BRANCH NAME: North County | |
| PLAINTIFF(S): Sondra Boone | |
| DEFENDANT(S): Carlsbad Community Church et.al. | |
| SHORT TITLE: BOONE VS. CARLSBAD COMMUNITY CHURCH | |
| **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION PROCESS (CRC 3.221)** | CASE NUMBER: 37-2007-00057536-CU-DF-NC |

Judge: Michael B. Orfield

Department: N-28

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution process. Selection of any of these options will not delay any case management time-lines.

- ☐ Court-Referred Mediation Program
- ☐ Private Neutral Evaluation
- ☐ Private Mini-Trial
- ☐ Private Summary Jury Trial
- ☐ Private Settlement Conference with Private Neutral
- ☐ Other (specify): ______
- ☐ Court-Ordered Nonbinding Arbitration
- ☐ Court-Ordered Binding Arbitration (Stipulated)
- ☐ Private Reference to General Referee
- ☐ Private Reference to Judge
- ☐ Private Binding Arbitration

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) ______

Alternate: (mediation & arbitration only) ______

Date: ______ Date: ______

______ Name of Plaintiff

______ Signature

______ Name of Plaintiff's Attorney

______ Signature

______ Name of Defendant

______ Signature

______ Name of Defendant's Attorney

______ Signature

(Attach another sheet if additional names are necessary). It is the duty of the parties to notify the court of any settlement pursuant to California Rules of Court, 3.1385. Upon notification of the settlement the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court and all un-served, non-appearing or actions by names parties are dismissed.

IT IS SO ORDERED.

Dated: 10/29/2007

______ JUDGE OF THE SUPERIOR COURT

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CASE NUMBER: 37-2007-00057536-CU-DF-NC CASE TITLE: Boone vs. Carlsbad Community Church

## NOTICE TO LITIGANTS/ADR INFORMATION PACKAGE

You are required to serve a copy of this Notice to Litigants/ADR Information Package and a copy of the blank Stipulation to Alternative Dispute Resolution Process (received from the Civil Business Office at the time of filing) with a copy of the Summons and Complaint on all defendants in accordance with San Diego Superior Court Rule 2.1.5, Division II and CRC Rule 201.9.

## ADR POLICY

It is the policy of the San Diego Superior Court to strongly support the use of Alternative Dispute Resolution ("ADR") in all general civil cases. The court has long recognized the value of early case management intervention and the use of alternative dispute resolution options for amenable and eligible cases. The use of ADR will be discussed at all Case Management Conferences. It is the court's expectation that litigants will utilize some form of ADR – i.e. the court's mediation or arbitration programs or other available private ADR options as a mechanism for case settlement before trial

## ADR OPTIONS

**1) CIVIL MEDIATION PROGRAM:** The San Diego Superior Court Civil Mediation Program is designed to assist parties with the early resolution of their dispute. All general civil independent calendar cases, including construction defect, complex and eminent domain cases are eligible to participant in the program. Limited civil collection cases are not eligible at this time. San Diego Superior Court Local Rule 2.31, Division II addresses this program specifically. Mediation is a non- binding process in which a trained mediator 1) facilitates communication between disputants, and 2) assists parties in reaching a mutually acceptable resolution of all or part of their dispute. In this process, the mediator carefully explores not only the relevant evidence and law, but also the parties' underlying interests, needs and priorities. The mediator is not the decision-maker and will not resolve the dispute – the parties do. Mediation is a flexible, informal and confidential process that is less stressful than a formalized trial. It can also save time and money, allow for greater client participation and allow for more flexibility in creating a resolution.

**Assignment to Mediation, Cost and Timelines:** Parties may stipulate to mediation at any time up to the CMC or may stipulate to mediation at the CMC. Mediator fees and expenses are split equally by the parties, unless otherwise agreed. Mediators on the court's approved panel have agreed to the court's payment schedule for county-referred mediation: $150.00 per hour for each of the first two hours and their individual rate per hour thereafter. Parties may select any mediator, however, the court maintains a panel of court-approved mediators who have satisfied panel requirements and who must adhere to ethical standards. All court-approved mediator fees and other policies are listed in the Mediator Directory at each court location to assist parties with selection. **Discovery:** Parties do not need to conduct full discovery in the case before mediation is considered, utilized or referred. **Attendance at Mediation:** Trial counsel, parties and all persons with full authority to settle the case must personally attend the mediation, unless excused by the court for good cause.

**2) JUDICIAL ARBITRATION:** Judicial Arbitration is a binding or non-binding process where an arbitrator applies the law to the facts of the case and issues an award. The goal of judicial arbitration is to provide parties with an adjudication that is earlier, faster, less formal and less expensive than trial. The arbitrator's award may either become the judgment in the case if all parties accept or if no trial de novo is requested within the required time. Either party may reject the award and request a trial de novo before the assigned judge if the arbitration was non-binding. If a trial de novo is requested, the trial will usually be scheduled within a year of the filing date.

**Assignment to Arbitration, Cost and Timelines:** Parties may stipulate to binding or non-binding judicial arbitration or the judge may order the matter to arbitration at the case management conference, held approximately 150 days after filing, if a case is valued at under $50,000 and is "at issue". The court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. In addition, if parties select an arbitrator from the court's panel, the court will pay the arbitrator's fees. Superior Court

**3) SETTLEMENT CONFERENCES:** The goal of a settlement conference is to assist the parties in their efforts to negotiate a settlement of all or part of the dispute. Parties may, at any time, request a settlement conference before the judge assigned to their case; request another assigned judge or a pro tem to act as settlement officer; or may privately utilize the services of a retired judge. The court may also order a case to a mandatory settlement conference prior to trial before the court's assigned Settlement Conference judge.

**4) OTHER VOLUNTARY ADR:** Parties may voluntarily stipulate to private ADR options outside the court system including private binding arbitration, private early neutral evaluation or private judging at any time by completing the "Stipulation to Alternative Dispute Resolution Process" which is included in this ADR package. Parties may also utilize mediation services offered by programs that are partially funded by the county's Dispute Resolution Programs Act. These services are available at no cost or on a sliding scale based on need. For a list of approved DRPA providers, please contact the County's DRPA program office at (760) 726-4900.

**ADDITIONAL ADR INFORMATION:** For more information about the Civil Mediation Program, please contact the Civil Mediation Department at (619) 515-8908. For more information about the Judicial Arbitration Program, please contact the Arbitration Office at (619) 531-3818. For more information about Settlement Conferences, please contact the Independent Calendar department to which your case is assigned. Please note that staff can only discuss ADR options and cannot give legal advice.

FILED
NORTH COUNTY DIVISION
2007 OCT 29 AM 10:43
CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA.

STUTZ ARTIANO SHINOFF & HOLTZ
*A Professional Corporation*
Daniel R. Shinoff, Esq. (State Bar No. 99129)
Gil Abed, Esq. (State Bar No. 195771)
Ryan L. Church, Esq. (State Bar No. 249484)
2488 Historic Decatur Road, Suite 200
San Diego, CA 92106-6113
Tel: (619) 232-3122
Fax: (619) 232-3264

Attorneys for Plaintiff SONDRA BOONE

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SAN DIEGO - NORTH COUNTY BRANCH**

SONDRA BOONE,

Plaintiff,

v.

CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA and DOES 1-20,

Defendants.

Case No. 37-2007-00057536-CU-OE-NC

ICJ:
DEPT:
DATE:
TIME:

**PLAINTIFF'S COMPLAINT FOR DAMAGES FOR WRONGFUL TERMINATION; RETALIATION; AGE DISCRIMINATION AND HARASSMENT; GENDER DISCRIMINATION AND HARASSMENT; DEFAMATION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

COMPLAINT FILED:
TRIAL DATE: Not Set

Plaintiff, SONDRA BOONE, hereinafter complains and alleges as follows:

**PARTIES**

1. At all times herein mentioned, Plaintiff, SONDRA BOONE ("Plaintiff" or "Sandy Boone") was and is a resident of the County of San Diego, State of California.

2. Plaintiff is informed and believes, and thereon alleges, that Defendant Carlsbad Community Church ("Church") was and is an entity operating in the County of San Diego at 3175 Harding Street, Carlsbad, California 92008.

3. Plaintiff is informed and believes, and thereon alleges, that Defendants Tom

*A Professional Corporation*

11/08/2007 16:32 FAX 619 2323263 STUTZ ARTIANO 005/019

Wood, Dick Lee, and Francisco Mesquita were, at all times, agents, co-conspirators, aiders, abettors, fiduciaries, representatives or employees of the Church and in doing the things alleged, were acting in concert with, under the direction of, and within the course and scope of the agency, conspiracy, or employment relationship.

4. Plaintiff is informed and believes that said individuals, Tom Wood, Dick Lee, and Francisco Mesquita were acting in their official and individual capacity at all times mentioned herein.

5. Plaintiff sues DOES 1-20, inclusive, under fictitious names. Their true names and capacities are unknown to the Plaintiff. When their true names and capacities are ascertained, Plaintiff will amend this Complaint by inserting their true names and capacities herein. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the harm suffered the Plaintiff.

6. Each of the defendants DOES 1-20 were the agents, co-conspirators, aiders, abettors, fiduciaries, representatives or employees of the Church and in doing the things alleged, were acting in concert with, under the direction of, and within the course and scope of the agency, conspiracy, or employment relationship.

## VENUE

7. Venue in this matter is proper within the Superior Court, County of San Diego, as a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred within the County of San Diego, State of California. The injuries and damages sustained by Plaintiff, as more fully set forth herein, occurred in the County of San Diego, State of California. The conduct of the Defendants, and each of them, occurred and directly impacted the Plaintiff within the County of San Diego, State of California.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. On or about August 14, 2007, Plaintiff filed a Complaint against Defendants alleging harassment, retaliation, and discrimination with the Department of Fair Employment and Housing ("DFEH"). Plaintiff received a Right-to-Sue letter from DFEH dated August 23,

2

Plaintiff's Complaint for Damages for Wrongful Termination; Retaliation; Age Discrimination and Harassment; Gender Discrimination and Harassment; Defamation; Intentional Infliction of Emotional Distress

STUTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

2007. A true and correct copy of the Right-to-Sue letter is attached herewith as Exhibit "A."

## GENERAL ALLEGATIONS

9. Plaintiff, who is now 61 years of age, began her employment with the Church in September of 1987.

10. Plaintiff was initially hired by the Church as a Data Base Specialist and later was promoted to the Administrative Assistant to the Senior Pastor.

11. Throughout her employment with the Church, Plaintiff has only served in the Administrative capacity and has never held any position that was germane to the religious functioning of the Church.

12. Plaintiff hereby alleges that on many occasions during the course of her employment, a supervisor, Douglas Bosler, subjected Plaintiff and other female Church employees to abusive and threatening verbal and physical behavior.

13. Plaintiff alleges that during her employment at the Church, she was consistently subjected to discriminatory treatment based on her age. Those who subjected Plaintiff to the discriminatory treatment were Church employees and/or agents, including but not limited Defendants Tom Wood, Dick Lee, Francisco Mesquita, and DOES 1-20.

14. Plaintiff alleges that during her employment at the Church, she was consistently subjected to discriminatory treatment based on her sex. Those who subjected Plaintiff to the discriminatory treatment were Church employees and/or agents, including but not limited Defendants Tom Wood, Dick Lee, Francisco Mesquita, and DOES 1-20.

15. At or around September 1, 2006, Plaintiff and four other female Church employees were left alone in the Church office for the day.

16. Plaintiff and the other female Church employees felt unsafe working in the office because indigent visitors often came to the office seeking assistance.

17. On or about September 4, 2006, Plaintiff and four other female Church employees submitted a written complaint to Senior Pastor Charles Youngkin and to the Board of Elders regarding their safety concerns. In addition, the female employee's complained of their

STUTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

11/08/2007 16:33 FAX 619 2323263 STUTZ ARTIANO 007/019

supervisor, Supervisor Douglas Bosler, long history of abusive and inappropriate behavior towards females in the office, including the Plaintiff.

18. Plaintiff and the other female employees requested that their employer or any supervisor on behalf of their employer not subject them to any of the conditions that they were complaining of, or any retaliation due to their filing of a complaint.

19. On or about September 8, 2006, Supervisor Bosler entered Plaintiff's office and verbally threatened, physically intimidated, and harassed the Plaintiff regarding her filing of the September 4, 2006 complaint concerning, among other things, discrimination, harassment, and workplace safety.

20. As a result of the September 8, 2006 confrontation with Supervisor Bosler, Plaintiff's fear of her safety at her workplace had increased.

21. On or about September 8, 2006, Plaintiff filed a complaint with the Church regarding Supervisor Bosler's verbal threats, physical intimidation, harassment, and retaliation.

22. The Church took no immediate actions to remedy any concerns raised by the Plaintiff, and Plaintiff remained in fear of her safety.

23. On or about January of 2007, Francisco Mesquita was hired as the Church's Pastor of Administration.

24. In the course and scope of Plaintiff's employment at the Church, Plaintiff had rightful access to a Church database ("Database") that details the Church finances.

25. During the course of her employment, Plaintiff became aware of potential improper financial activity by Francisco Mesquita and Church Treasure Dick Lee as they relate to Church funds. The financial improprieties included, but were not limited to, Mesquita and Lee's unauthorized and excessive use of Church funds.

26. On or about March 19, 2007, a Church Administration Ministry Team Member requested an investigation into possible financial improprieties within the Church.

27. In or around March and April of 2007, Plaintiff openly supported the Church Administration Ministry Team Member's request to initiate an investigation into potential misuse

4

Plaintiff's Complaint for Damages for Wrongful Termination; Retaliation; Age Discrimination and Harassment; Gender Discrimination and Harassment; Defamation; Intentional Infliction of Emotional Distress

STUTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

@PFDesktop\::ODMA/WORLDOX/O:/DATA/3138/1/PL/S7020739.WPD

11/08/2007 16:33 FAX 619 2323263 STUTZ ARTIANO 008/019

of Church funds. Plaintiff was aware of possible improper financial activity by Francisco Mesquita and Church Treasure Dick Lee and wished to discuss this with investigators.

28. In or around April of 2007, Plaintiff had a meeting with her supervisor, Charlie Younkin, regarding the investigation. Plaintiff expressed support of the investigation, and expressed her desire to discuss the possible improper financial accounting with the investigators. Younkin became irrate over her support and desire to share information with investigators. During the course of the meeting, Mr. Younkin stated that an investigation would only occur "over my dead body."

29. Plaintiff was intimidated and fearful of her safety following the meeting she had with Charlie Younkin on or around April of 2007.

30. On or about April 22, 2007, the Church Board of Elders initiated an official investigation into financial improprieties as they relate to Church funds and personnel issues.

31. As part of the investigation, the investigative team made it clear that they intended to interview all administrative staff members, including the Plaintiff.

32. The investigative team assured all employees that they would not suffer any form of retaliation or harassment after speaking with the investigators.

33. On or about April 23, 2007, prior to the Church Administration Ministry's interview with Plaintiff, Francisco Mesquita and Tom Wood terminated the Plaintiff.

34. Plaintiff is informed and believes that on or about April 25, 2007, Francisco Mesquita falsely informed Church employees that she (Plaintiff) broke into the Church after being terminated and destroyed her former work computer.

35. Plaintiff is informed and believes that after April 25, 2007, Francisco Mesquita continued to tell employees that Plaintiff illegally entered the Church and destroyed her computer following her April 23, 2007 termination.

36. Plaintiff is informed and believes that on or about August 26, 2007, an email was sent from Dick Lee to Paula Padilla, a member of the community, stating that Sandy Boone (Plaintiff) was terminated because she "Had done things that were evil and absolutely

5

Plaintiff's Complaint for Damages for Wrongful Termination; Retaliation; Age Discrimination and Harassment; Gender Discrimination and Harassment; Defamation; Intentional Infliction of Emotional Distress

STUTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

ODMA/WORLDOX/G:/DATA/3138/1/PL/S7020759.WPD

11/08/2007 16:34 FAX 619 2323263 STUTZ ARTIANO ☑009/019

despicable."

37. Plaintiff is informed and believes that on or about September 1, 2007, Tom Wood called Carol Nave, a member of the community, and stated that Sandy Boone was fired because she did "grievous acts."

38. Plaintiff is informed and believes that on or about September 3, 2007, Tom Wood stated to Clyde Cobb, a member of the community, that Plaintiff was terminated because she had done "Evil things."

39. Plaintiff is informed and believes that Defendants continue to make slanderous and defamatory statements against her to third parties.

## FIRST CAUSE OF ACTION

**Wrongful Termination in Violation of Public Policy**
**[As Against Defendant Church and DOES 1-20 inclusive]**

40. Plaintiff realleges and incorporate herein by reference the allegations of paragraphs 1 through 39, inclusive.

41. At all times herein mentioned, Plaintiff was an employee of the Defendant Carlsbad Community Church.

42. The Constitution of the State of California, Article 1, section 8; Government Code section 12940 et seq., Labor Code section 1102.5, and Labor Code section 6400 et seq. prohibit, among other things, harassing, retaliating, defaming or discriminating against an employee based on her age, sex, or complaints of unsafe working conditions. These provisions set forth a fundamental public policy. The Fair Employment and Housing Act applies to this action notwithstanding subparagraph (j)(4)(B) of section 12940 of the Government Code, because of the operation of subparagraph (f)(2) of section 12926.2 of the Government Code, and the secular nature of Plaintiff's employment.

43. At all times herein mentioned, the aforementioned provisions were in full force and effect and delineated fundamental, substantial, and well-established policies that benefit the public at large rather than private interests and were binding on the Defendants at the time of Plaintiff's termination.

6

Plaintiff's Complaint for Damages for Wrongful Termination; Retaliation; Age Discrimination and Harassment; Gender Discrimination and Harassment; Defamation; Intentional Infliction of Emotional Distress

STUTZ ARTIANO SHINOFF & HOLTZ A Professional Corporation

ODMA/WORLDOX/G:/DATA/3138/1/PL/S7020739.WPD

44. Plaintiff is a member of the class entitled to protection under the aforementioned code sections.

45. Plaintiff is informed and believes that she was terminated due to her age, sex, and because of her complaints of workplace safety.

46. Plaintiff is informed and believes that she was terminated as an act of retaliation for her demand to work in a workplace free and clear of discrimination and harassment based on gender and age in violation of Government Code section 12940, or free and clear of intimidation for her request to provide a safe and healthy workplace.

47. As a direct and proximate result of the violation of public policy and retaliation, Plaintiff sustained and continues to suffer: (1) loss of past and future income and other valuable employee benefits; (2) loss of employment-related opportunities for growth; (3) damage to her professional reputation; and (4) emotional distress, anxiety and injury to her psyche, all to her damage according to proof at trial. Plaintiff claims such amounts as damages together with prejudgment interest pursuant to Civil Code sections 3287 and 3288, and/or any other provision of law providing for prejudgment interest.

48. Plaintiff seeks an award of attorneys fees on this cause of action pursuant to Government Code section 12965 and Code of Civil Procedure section 1021.5.

## SECOND CAUSE OF ACTION

**Retaliation in violation of Labor Code sections 1102.5 and 6310 et seq.**
**[As Against All Defendants]**

49. Plaintiff realleges and incorporate herein by reference the allegations of paragraphs 1 through 48, inclusive.

50. Plaintiff's termination on April 23, 2007, was in retaliation for (1) her filing of the September 4, 2006, internal complaint regarding Supervisor Bosler's treatment of her and other female employees; (2) her filing of the September 4, 2006, internal complaint regarding the safety of her and other female employees; and (3) her expressed support of an internal financial audit of the Church in connection with accusations of financial improprieties.

51. As a result of Defendants' retaliation in terminating Plaintiff's employment,

A Professional Corporation

11/08/2007 16:35 FAX 619 2323263 STUTZ ARTIANO 011/019

Plaintiff has suffered and continues to suffer substantial loss and damage, including lost salary, bonuses, lost retirement benefits, medical expenses and related harm, in an amount within the jurisdictional limits of this court which will be proven according to proof at the time of trial.

52. Defendant's conduct has caused Plaintiff embarrassment, humiliation, anger, mental anguish and emotional upset in an amount within the jurisdictional limits of this court, which will be proven according to proof at the time of trial.

53. Defendant committed said retaliation against Plaintiff maliciously, fraudulently and oppressively with the wrongful intent of injuring Plaintiff for an improper and evil motive which constitutes a malicious and conscious disregard of Plaintiff's rights. Plaintiff is thereby entitled to punitive damages from defendant according to proof at the time of trial.

**THIRD CAUSE OF ACTION**

**Retaliation in violation of Labor Code sections 6400 et seq.**
**[As Against All Defendants]**

54. Plaintiff realleges and incorporate herein by reference the allegations of paragraphs 1 through 53, inclusive.

55. Pursuant to Labor Code section 6400 et seq., Defendants have a statutory duty to furnish employment and a place of employment that his safe and healthful for the employees therein.

56. On or before September 4, 2006, Plaintiff reasonably believed that her work environment was unsafe and unhealthful.

57. On or about September 4, 2006, Plaintiff complained to her supervisors of an unsafe work environment.

58. Following Plaintiff's September 4, 2006 complaint, Defendants failed to furnish the Plaintiff with a place of employment that is safe and healthful. Instead, following the Plaintiff's filing of a complaint, Defendants allowed for Supervisor Bosler to physically and verbally retaliate against Plaintiff.

59. As a direct and proximate result of the violation of Labor Code section 6400 et seq., Plaintiff sustained and continues to suffer: (1) loss of past and future income and other

8

Plaintiff's Complaint for Damages for Wrongful Termination; Retaliation; Age Discrimination and Harassment; Gender Discrimination and Harassment; Defamation; Intentional Infliction of Emotional Distress

STUTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

@PFDesktop\::ODMA/WORLDOX/G:/DATA/3158/1/PL/57020739.WPD

valuable employee benefits; (2) loss of employment-related opportunities for growth; (3) damage to her professional reputation; and (4) emotional distress, anxiety and injury to her psyche, all to her damage according to proof at trial. Plaintiff claims such amounts as damages together with prejudgment interest pursuant to Civil Code sections 3287 and 3288, and/or any other provision of law providing for prejudgment interest.

60. Plaintiff seeks an award of attorneys fees on this cause of action pursuant to Government Code section 12965 and Code of Civil Procedure section 1021.5.

**FOURTH CAUSE OF ACTION**

**Age Discrimination and Harassment in violation of The California Constitution and Government Code section 12940 et seq.**
**[As Against All Defendants]**

61. Plaintiff refers to, re-alleges, and incorporates herein by this reference all allegations set forth in paragraphs 1 through 60, inclusive.

62. The Constitution of the State of California, Article 1, section 8, prohibits, among other things, harassing, retaliating, defaming or discriminating against an employee based on her age, sex, or complaints of unsafe working conditions.

63. The foregoing conduct violates the California Fair Employment and Housing Act ("FEHA"), Government Code § 12940, et seq., which prohibits discrimination and harassment based on age. At all times mentioned in this complaint, FEHA was in full force and effect, and was binding on Defendants. This section requires Defendants, *inter alia*, to refrain from discriminating and harassing Plaintiff on the basis of age. These provisions set forth a fundamental public policy.

64. Plaintiff is a member of the class entitled to protection under the aforementioned section of the California Constitution and FEHA sections.

65. Plaintiff was terminated from the Church and otherwise unfairly and unjustly treated, and discharged on the on the basis of her age, 61, by Defendants and their agents, as described above.

66. Defendant engaged in outrageous acts and abuses against Plaintiff intentionally,

STUTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

willfully and wantonly for the purpose of depriving Plaintiff of her rights and to cause her to suffer humiliation, mental anguish, emotional and mental distress, highly unpleasant mental reaction, including anxiety, grief, shame, embarrassment, anger, chagrin, disappointment and worry.

67. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, the exact amount of which have not yet been fully ascertained but are within the jurisdictional limits of this Court. Plaintiff is entitled to damages, general and special, in an amount which will be shown at the time of trial.

68. Plaintiff is informed, believes, and thereon alleges that Defendant acted fraudulently, maliciously, and oppressively with a conscious, reckless, willful and callous disregard of the probable detrimental and economic consequences to Plaintiff, and entitling Plaintiff to punitive damages under California Civil Code section 3294, in an amount sufficient to punish or set an example of Defendants.

69. Plaintiff seeks an award of attorneys fees on this cause of action pursuant to Government Code section 12965 and Code of Civil Procedure section 1021.5.

## FIFTH CAUSE OF ACTION

**Gender Discrimination and Harassment in violation of The California Constitution and Government Code section 12940 et seq.**
**[As Against All Defendants]**

70. Plaintiff realleges and incorporate herein by reference the allegations of paragraphs 1 through 69, inclusive.

71. The Constitution of the State of California, Article 1, section 8, prohibits, among other things, harassing, retaliating, defaming or discriminating against an employee based on her age, sex, or complaints of unsafe working conditions.

72. The foregoing conduct violates the California Fair Employment and Housing Act ("FEHA"), Government Code § 12940, et seq., which prohibits discrimination and harassment based on sex. At all times mentioned in this complaint, FEHA was in full force and effect, and was binding on Defendants. This section requires Defendants, *inter alia*, to refrain from

discriminating and harassing Plaintiff on the basis of sex

73. Plaintiff is a member of the class entitled to protection under the aforementioned section of the California Constitution and FEHA sections.

74. Plaintiff was terminated from the Church and otherwise unfairly and unjustly treated, and discharged on the basis of her sex, female, by Defendants and their agents, as described above.

75. Defendant engaged in outrageous acts and abuses against Plaintiff intentionally, willfully and wantonly for the purpose of depriving Plaintiff of her rights and to cause her to suffer humiliation, mental anguish, emotional and mental distress, highly unpleasant mental reaction, including anxiety, grief, shame, embarrassment, anger, chagrin, disappointment and worry.

76. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, the exact amount of which have not yet been fully ascertained but are within the jurisdictional limits of this Court. Plaintiff is entitled to damages, general and special, in an amount which will be shown at the time of trial.

77. Plaintiff is informed, believes, and thereon alleges that Defendant acted fraudulently, maliciously, and oppressively with a conscious, reckless, willful and callous disregard of the probable detrimental and economic consequences to Plaintiff, and entitling Plaintiff to punitive damages under California Civil Code section 3294, in an amount sufficient to punish or set an example of Defendant.

**SIXTH CAUSE OF ACTION**

**Defamation - [As Against All Defendants]**

78. Plaintiff refers to, re-alleges, and incorporates herein by this reference all allegations set forth in paragraphs 1 through 77, inclusive, as though set forth in full.

79. Beginning on our about April 25, 2007, and continuing to the date of this complaint, Defendants Francisco Mesquita, Dick Lee, and Tom Wood began making defamatory and slanderous statements about the Plaintiff.

STUTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

80. Defendants Francisco Mesquita, Dick Lee, and Tom Wood made disparaging statements about Plaintiff publicly, through written email, and through use of other channels of communication to third parties. These statements were false, entirely improper and opportunistic, and were disseminated throughout the Plaintiff's community. Plaintiff's career and professional reputation were severely damaged as a result of these statements. Numerous statements were made by Defendants, including but not limited to:

(a) On or about April 25, 2007, Defendant Francisco Mesquita falsely informed Church employees that Sandy Boone (Plaintiff) broke into the Church after being terminated and destroyed her computer. After April 25, 2007, Mesquita continued to tell employees that Plaintiff illegally entered the Church and destroyed her computer.

(b) On or about August 26, 2007, an email was sent from Defendant Dick Lee to Paula Padilla, a member of the community, stating that Sandy Boone (Plaintiff) was terminated because she "Had done things that were evil and absolutely despicable."

(c) On or about September 1, 2007, Defendant Tom Wood called Carol Nave, a member of the community, and stated that Sandy Boone was fired because she committed "grievous acts."

(d) On or about September 3, 2007, Defendant Tom Wood stated to Clyde Cobb, a member of the community, that Plaintiff was terminated because she had done "Evil things."

81. The foregoing publications were false, outrageous, negligent, reckless, intentional, and maliciously published by Defendants, and each of them. Plaintiff is informed and believes that the negligent, reckless, and intentional publications by Defendants, and each of them, were published by Defendants, their agents and employees. Plaintiff hereby seeks damages for these Defendant publications and all foreseeable re-publications discovered up to the time of trial.

82. The defamatory publications consisted of oral and written, knowingly false and unprivileged communications, tending directly to injure Plaintiff and Plaintiff's personal, business, and professional reputation. These and similar statements published by Defendants, and each of them, expressly and impliedly asserted that Plaintiff engaged in criminal behavior,

STUTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

committed grievous acts, did evil things, and acted despicably.

83. The defamatory meaning of all of the above-described false and defamatory statements and their reference to Plaintiff, were understood by these above-referenced third person recipients and other members of the community who are known to Defendants.

84. None of Defendants' defamatory publications against Plaintiff referenced above are true. The above defamatory statements were understood as assertions of fact, and not as opinion. Plaintiff is informed and believes this defamation will continue to be negligently, recklessly, and intentionally published and foreseeably republished by Defendants, and each of them, and foreseeably republished by recipients of Defendants' publications, thereby causing additional injury and damages for which Plaintiff seeks redress by this action.

85. Each of these false defamatory *per se* publications were negligently, recklessly, and intentionally published in a manner equaling malice and abuse of any alleged conditional privilege, which Plaintiff denies existed, since the publications, and each of them, were made with hatred, ill will, and an intent to vex, harass, annoy, and injure Plaintiff in order to justify the illegal and cruel actions of Defendants, and each of them, to cause further damage to Plaintiff's professional and personal reputation.

86. As a proximate result of the publication and republication of these defamatory statements by Defendants, and each of them, Plaintiff has suffered injury to her personal, business and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, and general damage in an amount according to proof.

87. All actions of Defendants, and each of them, their agents and employees, herein alleged were known, ratified and approved by the Defendants, and each of them. Plaintiff thus is entitled to recover punitive and exemplary damages from Defendants Francisco Mesquita, Dick Lee, Tom Wood, the Church, and DOES 1-20.

88. In addition to the aforementioned damages, Plaintiff seeks an award of attorney

STUTZ ARTIANO SHINOFF & HOLTZ A Professional Corporation

fees on this cause of action pursuant to Code of Civil Procedure section 1021.5.

## SEVENTH CAUSE OF ACTION

**Intentional Infliction of Emotional Distress - [As Against All Defendants]**

89. Plaintiff refers to, re-alleges, and incorporates herein by this reference all allegations set forth in paragraphs 1 through 88, inclusive.

90. Defendants Francisco Mesquita, Dick Lee, and Tom Wood, who are employed by and/or are agents of the Church, engaged in unprivileged conduct when they defamed Plaintiff and caused her embarrassment and humiliation. This conduct was outrageous in that the Defendant Church knew and condoned the conduct of its agent.

91. Defendants' conduct was done with reckless disregard of the probability of causing Plaintiff emotional distress or with the intent of causing Plaintiff to suffer emotional distress.

92. Plaintiff did in fact suffer severe emotional distress. Plaintiff's emotional distress was a direct and proximate result of the outrageous conduct of Defendants.

93. Defendants' conduct was oppressive, fraudulent, malicious, despicable, and was carried on by Defendants with willful disregard of the rights or safety of Plaintiff. Defendants, therefore, subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights.

94. As a further proximate result of Defendants' actions against Plaintiff, as alleged above, Plaintiff has been harmed in that Plaintiff has suffered humiliation, mental anguish, emotional and physical distress, anxiety, and has been injured in the mind and body. Plaintiff is thereby entitled to general and compensatory damages in an amount to be proven at trial.

95. Plaintiff is further informed and believes that each business or employer, through its officers, directors and managing agents, and each individual Defendant had advance knowledge of the wrongful conduct set forth above and sanctioned said wrongful conduct, thereby ratifying it, with a conscious disregard of the rights and safety of Plaintiff and for the deleterious consequences of Defendants' actions, and after becoming aware of their wrongful conduct, each Defendant, by and through its agents, and each individual Defendant, authorized

STUTZ ARTIANO SHINOFF & HOLTZ A Professional Corporation

11/08/2007 16:31 FAX 619 2323263 STUTZ ARTIANO 003/019

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Daniel R. Shinoff, Esq. (SBN 99129)
Stutz Artiano Shinoff & Holtz
2488 Historic Decatur Road
Suite 200
San Diego, CA 92106
TELEPHONE NO.: 619/232-3122 FAX NO.: 619/232-3264
ATTORNEY FOR (Name): Sondra Boone

FOR COURT USE ONLY

FILED
NORTH COUNTY DIVISION
2007 OCT 29 AM 10:42
CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 325 S. Melrose
MAILING ADDRESS: Same
CITY AND ZIP CODE: Vista, CA
BRANCH NAME: North County

CASE NAME: Boone v. Carlsbad Community Church

CIVIL CASE COVER SHEET
[X] Unlimited (Amount demanded exceeds $25,000)
[ ] Limited (Amount demanded is $25,000 or less)

Complex Case Designation
[ ] Counter [ ] Joinder
Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: 37-2007-00067536-CU-DF-NC
JUDGE:
DEPT:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [X] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [X] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. [X] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [X] punitive
4. Number of causes of action *(specify)*: Seven (7)
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: October 29, 2007
Ryan C. Church
(TYPE OR PRINT NAME)

(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
CIVIL CASE COVER SHEET
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
SD-CV51

GJF

A Professional Corporation
2488 Historic Decatur Road, Suite 200
San Diego, California 92106-6113
(619) 232-3122
Fax (619) 232-3264

**FACSIMILE TRANSMISSION COVER SHEET**

**DATE:** **November 8, 2007**

| RECIPIENT | COMPANY | FAX NUMBER |
|---|---|---|
| Golnar J. Fozi, Esq. | Daley & Heft | 858-755-7870 |

**SENDER:** **Ryan L. Church, Esq.**

**RE:** **Boone v. Carlsbad Community Church**

**CASE/CODE:** **3138-1**

**COMMENTS:**

Please see attached correspondence along with Summons and Complaint in the Above referenced case. Please sign the Notice and Acknowledgment of Receipt which is also attached, and return it to our offices. Thank you.

YOU SHOULD RECEIVE _19___ PAGE(S), INCLUDING THIS COVER SHEET. IF THERE ARE ANY PROBLEMS WITH THIS TRANSMISSION, PLEASE CONTACT US AT (619) 232-3122.

The information contained in this communication is intended only for the use of the addressee and may be confidential, may be attorney-client privileged, and may constitute inside information. Unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify us at (619) 232-3122.

07 DEC 26 PM 3:47
CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

DALEY & HEFT, ATTORNEYS AT LAW
ROBERT W. BROCKMAN, ESQ. (SBN 123546)
GOLNAR J. FOZI, ESQ. (SBN 167674)
462 STEVENS AVENUE, SUITE 201
SOLANA BEACH, CA 92075
TELEPHONE: (858) 755-5666
FACSIMILE: (858) 755-7870

Attorneys for Defendants
CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE and FRANCISCO MESQUITA

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO, NORTH COUNTY DIVISION**

| | |
|---|---|
| SONDRA BOONE,<br><br>Plaintiff,<br><br>v.<br><br>CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA and DOES 1-20,<br><br>Defendants. | Case No. 37-2007-00057536-CU-DF-NC<br><br>**DEFENDANTS CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**DEPT** : 28<br>**ICJ** : Michael B. Orfield<br>**T/D** : Not Set |

**TO: PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 14, 2008 at 1:30 p.m. or as soon thereafter as the matter may be heard in Department 28 of the above-entitled court, located at 325 S. Melrose Drive, Vista, California, defendants CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA's Demurrer to Plaintiff's Complaint will be heard.

This demurrer is based on the grounds that the First through Fifth causes of action in plaintiff's complaint fail to state facts sufficient to constitute causes of action.

///

///

///

This demurrer will be based on this Notice, the demurrer, the Memorandum of Points and Authorities, all the pleadings, documents and files herein, and upon such oral and documentary evidence as the court may receive at the hearing on this demurrer.

Dated: December 17, 2007

DALEY & HEFT, LLP

By: ________________________
ROBERT W. BROCKMAN
GOLNAR J. FOZI
Attorneys for Defendants CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE and FRANCISCO MESQUITA

2

DEFENDANTS CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF'S COMPLAINT

FILED
Clerk of the Superior Court
DEC 2 6 2007

DALEY & HEFT, ATTORNEYS AT LAW
ROBERT W. BROCKMAN, ESQ. (SBN 123546)
GOLNAR J. FOZI, ESQ. (SBN 167674)
462 STEVENS AVENUE, SUITE 201
SOLANA BEACH, CA 92075
TELEPHONE: (858) 755-5666
FACSIMILE: (858) 755-7870

Attorneys for Defendants
CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE and FRANCISCO MESQUITA

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO, NORTH COUNTY DIVISION**

| | |
|---|---|
| SONDRA BOONE,<br><br>Plaintiff,<br><br>v.<br><br>CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA and DOES 1-20,<br><br>Defendants. | Case No. 37-2007-00057536-CU-DF-NC<br><br>**DEFENDANTS CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA'S DEMURRER TO PLAINTIFF'S COMPLAINT**<br><br>**DEPT : 28**<br>**ICJ : Michael B. Orfield**<br>**T/D : Not Set** |

Defendants CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, and FRANCISCO MESQUITA hereby demur to the following causes of action in plaintiff's complaint and ask that the demurrer be sustained on the following grounds:

**AS TO THE FIRST CAUSE OF ACTION**

The First Cause of Action for Wrongful Termination in Violation of the California Fair Employment and Housing Act, Government Code Section 12940, fails to state facts sufficient to constitute a cause of action against the CARLSBAD COMMUNITY CHURCH because nonprofit religious entities are exempt from liability under the FEHA.

///

///

///

**AS TO THE THIRD CAUSE OF ACTION**

The Third Cause of Action for Violation of Labor Code Sections 6400 et seq. fails to state facts sufficient to constitute a cause of action against the individual defendants WOOD, LEE and MESQUITA as the cause of action can only be alleged against an "employer".

**AS TO THE FOURTH CAUSE OF ACTION**

The Fourth Cause of Action for Age Discrimination and Harassment in Violation of the California Fair Employment and Housing Act, Government Code Section 12940 et seq., fails to state facts sufficient to constitute a cause of action against all defendants because nonprofit religious entities and their employees are exempt from liability under the FEHA.

**AS TO THE FIFTH CAUSE OF ACTION**

The Fifth Cause of Action for Gender Discrimination and Harassment in Violation of the California Fair Employment and Housing Act, Government Code Section 12940 et seq., fails to state facts sufficient to constitute a cause of action against all defendants because nonprofit religious entities and their employees are exempt from liability under the FEHA.

This demurrer will be based on this notice and the accompanying motion, the memorandum of points and authorities filed herewith, the documents which are the subject of the request for judicial notice, and the pleadings and papers filed herein.

Dated: December 7, 2007

DALEY & HEFT, LLP

By: ______________________
ROBERT W. BROCKMAN
GOLNAR J. FOZI
Attorneys for Defendants CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE and FRANCISCO MESQUITA

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
DALEY & HEFT, LLP, ATTORNEYS AT LAW
ROBERT W. BROCKMAN, ESQ., SBN 123546
GOLNAR J. FOZI, ESQ., Esq., SBN 167674
462 STEVENS AVENUE, SUITE 201
SOLANA BEACH, CA 92075
TELEPHONE NO: 858-755-5666 FAX NO.: 858-755-7870
ATTORNEY FOR (Name): Defendants CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA

NORTH COUNTY DIVISION
07 DEC 26 PM 3:47
CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

_ COUNTY COURTHOUSE, 220 W. BROADWAY, SAN DIEGO, CA 92101-3814
_ HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101-3827
_ FAMILY COURT, 1501 6TH AVE., SAN DIEGO, CA 92101-3296
_ MADGE BRADLEY BLDG., 1409 4TH AVE., SAN DIEGO, CA 92101-3105
_ KEARNY MESA BRANCH, 8950 CLAREMONT MESA BLVD., SAN DIEGO, CA 92123-1187
X NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92083-6643
_ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020-3941
_ RAMONA BRANCH, 1428 MONTECITO RD., RAMONA, CA 92065-5200
_ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910-5649

**PLAINTIFF: SONDRA BOONE**

**DEFENDANTS: CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA and DOES 1-20**

**PROOF OF SERVICE BY FIRST-CLASS MAIL – CIVIL**

CASE NUMBER:
**37-2007-00057536-CU-DF-NC**

I am over 18 years of age and **not a party to this action.** I am a resident of or employed in the county where the mailing took place.

My residence or business address is: 462 Stevens Avenue, Suite 201, Solana Beach, California 92075.
On the date indicated below, I mailed from (city and state): Solana Beach, California the following **documents** *(specify)*:

**DEFENDANTS CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, AND FRANCISCO MESQUITA'S NOTICE OF MOTION AND MOTION TO STRIKE ALLEGATIONS AND CLAIMS IN PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, AND FRANCISCO MESQUITA'S MOTION TO STRIKE ALLEGATIONS AND CLAIMS IN PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA'S DEMURRER TO PLAINTIFF'S COMPLAINT; DEFENDANTS CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES; DEFENDANTS CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA'S DEMURRER TO PLAINTIFF'S COMPLAINT**

[ ] The documents are listed in the Attachment to Proof of Service by First-Class Mail - Civil (Document Served)

4. I served the documents by enclosing them in an envelope and (check one):

a. [ ] **depositing** the sealed envelope with the United States Postal Service with the postage fully prepaid.

b. [x] **placing** the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

5. The envelope was addressed and mailed as follows: **SEE ATTACHED MAILING LIST**

[x] The name and address of each person to whom I mailed the documents is listed in the Attachment to Proof of Service by First-Class Mail - Civil (Persons Served)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: December 18, 2007

Chiai Chon

SERVICE LIST

| | |
|---|---|
| STUTZ ARTIANO SHINOFF & HOLTZ<br>A Professional Corporation<br>Daniel R. Shinoff, Esq.<br>Gil Abed, Esq.<br>Ryan L. Church, Esq.<br>2488 Historic Decatur Road, Suite 200<br>San Diego, CA 92106-6113<br>Tel.: (619) 232-3122<br>Fax: (619) 232-3264<br>**Attorneys for Plaintiff SONDRA BOONE** | |

07 DEC 25 PM 3:47
CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

DALEY & HEFT, ATTORNEYS AT LAW
ROBERT W. BROCKMAN, ESQ. (SBN 123546)
GOLNAR J. FOZI, ESQ. (SBN 167674)
462 STEVENS AVENUE, SUITE 201
SOLANA BEACH, CA 92075
TELEPHONE: (858) 755-5666
FACSIMILE: (858) 755-7870

Attorneys for Defendants
CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE and FRANCISCO MESQUITA

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO, NORTH COUNTY DIVISION**

| | |
|---|---|
| SONDRA BOONE,<br><br>Plaintiff,<br><br>v.<br><br>CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA and DOES 1-20,<br><br>Defendants. | Case No. 37-2007-00057536-CU-DF-NC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA'S DEMURRER TO PLAINTIFF'S COMPLAINT**<br><br>**DEPT : 28**<br>**ICJ : Michael B. Orfield**<br>**T/D : Not Set** |

Defendants CARLSBAD COMMUNITY CHURCH ("Church"), TOM WOOD, DICK LEE, and FRANCISCO MESQUITA hereby submit the following points and authorities in support of their demurrer to plaintiffs' complaint.

**1.**

**INTRODUCTION**

Plaintiff SONDRA BOONE claims her termination from the Church was due to her age, gender and internal complaints to the Church that it was unsafe to leave female staff members alone in the Church during work hours. She alleges various claims based on violation of the California Fair Employment and Housing Act ("FEHA").

Nonprofit religious corporations such as the Church are not "employers" within the meaning of the FEHA, and cannot be liable for discrimination or harassment under the FEHA.

Similarly, their employees are exempt from liability under the FEHA. The FEHA-based causes of action against the defendants must be dismissed without leave to amend.

Furthermore, individual supervisors are not proper parties to a cause of action under Labor Code Section 6400. Therefore, defendants WOOD, LEE and MESQUITA must be dismissed without leave to amend from the third cause of action.

**2.**

**FACTS ALLEGED IN THE COMPLAINT**

Defendant CARLSBAD COMMUNITY CHURCH is a church and a religious corporation situated in Carlsbad, California. (Complaint, paragraph 2; See Request for Judicial Notice and Exhibit A.) Defendants WOOD, DICK, and MESQUITA are agents or employees of the Church, and at all times relevant were acting within the scope of their employment for the Church. (Complaint, paragraph 3.) Plaintiff is a 61-year-old female who was employed with the Church ever since 1987. (Complaint, paragraph 9.) Plaintiff was terminated from her employment at the Church on or about April 23, 2007. (Complaint, paragraph 33.)

**3.**

**AUTHORITY**

A demurrer is treated as admitting all material facts properly pleaded but not contentions, deductions or conclusion of a fact or law. (Michaelian v. State Comp. Insurance Fund (1996) 50 Cal.App.4th 1093.) A demurrer tests the legal sufficiency of the complaint raising issues of law, not fact regarding the form or content of the complaint. (Code of Civ. Proc., §§ 422.10 and 589.) A demurrer can be used only to challenge defects that appear on the face of the pleading under attack or for matters outside the pleading that are judicially noticeable. (Blank v. Kirwan (1985) 39 Cal.3d 311, 318; Harboring Villas Homeowners Association v. Superior Court (1998) 63 Cal.App.4th 426, 429.)

///

///

///

///

4.

**A NON-PROFIT, RELIGIOUS CORPORATION IS EXEMPT FROM THE APPLICATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

Plaintiff's **first cause of action** alleges wrongful termination in violation of the FEHA, Government Code Section 12940 et seq., and alleges that the Church fired plaintiff due to her gender and age. The **fourth cause of action** alleges Age Discrimination and Harassment in violation of the FEHA.[1] The **fifth cause of action** alleges Gender Discrimination and Harassment in violation of the FEHA. All three causes of action are legally untenable against the Church and must be dismissed without leave to amend.

**A. The Church Is Not an "Employer" Under the FEHA for Purposes of Wrongful Termination or Discrimination Claims**

Government Code Section 12940(a) provides that it is unlawful for ***an employer*** to discriminate against an employee on several enumerated bases, including age and gender. Section 12926(d) provides that "in connection with unlawful practices", the term "employer" refers to anyone employing five or more persons. However, the term "employer" does not include a religious association or corporation not organized for private profit. (Section 12926(d).) Section 12926.2(a) defines a religious corporation as any corporation "formed primarily or exclusively for religious purposes under the laws of any other state to administer the affairs of an organized religious group."

The religious entity exemption of FEHA does not depend on the nature of the plaintiff's duties for the religious corporation. The California Supreme Court in Kelly v. Methodist Hospital of Southern California (2000) 22 Cal.4th 1108, 1116, held the religious entity exemption is not conditioned upon the nature of the employee's job position. "The exemption renders qualified

---

1 In the First and Fourth Causes of Action (paragraphs 42 and 62), plaintiff alleges in alternative that age discrimination is proscribed by Article I, Section 8 of the State Constitution. This is in error. Article I, Section proscribes discrimination on the following grounds only: sex, race, creed, color, or national or ethnic origin. As the California Supreme Court has clarified, "There is presently no law of this state other than the FEHA which proscribes discrimination on the basis of age." (Jennings v. Marralle (1994) 8 Cal.4th 121, 132.) The prohibition against age discrimination is statutory and not constitutional, and does not give rise to a common law claim for violation of a fundamental public policy. (Id. at 135.)

religious entities exempt from FEHA ***in its entirety***. The nature of the employee's work is not relevant; the nature of the entity that employs him or her is determinative." (Id.) (Emphasis added.) The Supreme Court based its holding on the legislative history of the FEHA, and the fact that in 1977, the Legislature rejected proposed language exempting from the FEHA only those religious corporation employing in so far as the employee was involved in carrying out the religious purposes of the religious association or corporation." (Id.)

While it is true that the federal counterpart to the FEHA, Title VII of the Civil Rights Act of 1964, exempts from its scope religious corporations or associations only to the extent the employee performed religious duties, the California Supreme Court has refused to interpret the FEHA religious exemption in reference to Title VII. "Although California courts have frequently looked to title VII jurisprudence to interpret analogous principles of California law, to do so here is inappropriate for several reasons, the most significant being that the language of the federal exemption is significantly different than the language of section 12926. (Kelly, supra, at 1118.) As the California high court pointed out, the federal statute specifically confines the religious entity exemption to work carried out for religious purposes (42 U.S.C. § 2000e-1(a)) while the FEHA simply exempts all non-profit, religious corporations regardless of the nature of the employee's job. (Id.) Thus, a non-profit religious association or corporation "is exempt from FEHA regardless of the nature of the employee's job or the type of discrimination it allegedly practiced." (Id. at 1119) (See also Silo v. CHW Medical Foundation (2002) 27 Cal.4th 1097, 1108, fn. 2) ("FEHA's exemption of religious organizations is broader than title VII's, inasmuch as it insulates qualifying religious employers from not merely religious discrimination liability but all forms of FEHA liability.")

It bears mentioning that plaintiff's complaint at paragraph 42 alleges that the Church is an employer within the meaning of the FEHA "because of the operation of subparagraph (f)(2) of section 12926.2 of the Government Code, and the secular nature of Plaintiff's employment." Defendant has already addressed the "secular nature" argument. With respect to the operation of Section 12926(f)(2), the Court can see that this provision does not apply here. Subdivision (f)(1) of Section 12926.2 provides that "***a nonprofit public benefit corporation*** formed by, or affiliated

with, a particular religion ***and that operates an educational institution as its sole or primary activity***" may restrict employment and promotion to members of a particular religion. Thereafter, Subdivision (f)(2) provides that "employers that are ***nonprofit public benefit corporations specified in paragraph (1)*** shall be subject to the provisions of this part in all other respects, including, but not limited to, the prohibitions against discrimination made unlawful employment practices by this part." Therefore, subdivision (f)(2) of Section 12926.2 expressly pertains to nonprofit public benefit corporations *affiliated with a religion*, that operate schools as their sole or primary activity. Here, plaintiff has not alleged, nor can it so allege, that the Church is a nonprofit, public benefit corporation affiliated with a religion that operates a school as its primary or sole activity. Therefore, Section 12926.2(f)(2) simply is inapplicable here.

Finally, plaintiff dually plead these three causes of action as arising from a violation of a fundamental public policy against age and gender discrimination as enunciated in the FEHA.[2] It is well-established, however, that a cause of action for violation of public policy enunciated in FEHA cannot lie where the FEHA specifically exempts the defendant from statutory liability. (See, e.g. Reno v. Baird (1998) 18 Ca.4th 640, 663-664; Jennings v. Marralle (1994) 8 Cal.4th 121, 135-136; Phillips v. St. Mary's Regional Medical Center (2002) 96 Cal.App.4th 218, 227.) Therefore, to the extent plaintiff claims her termination was in violation of a fundamental public policy enunciated in FEHA, her claims are barred because the FEHA does not apply to the Church.

**B. The Church Is Not an "Employer" within the Meaning of the FEHA for Purposes of Plaintiff's Harassment Claims**

While plaintiff's First Cause of Action is pled as a "wrongful termination" claim, her Fourth and Fifth Causes of Action against the Church are characterized as one for Discrimination and Harassment. In the preceding section, defendants showed that the Church is not an "employer" for purposes of a discrimination claim under the FEHA. Here, defendants show that the Church is also not an "employer" for purposes of a harassment claim.

---

2 The First Cause of Action also erroneously alleges that age and gender discrimination constitute a violation of a public policy enunciated in Labor Code sections 1102.5 and 6400. This is clearly not the case. Neither Section 1102.5 nor Section 6400 even mention age or gender discrimination.

5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA'S DEMURRER TO PLAINTIFF'S COMPLAINT

Government Code Section 12940(j)(1) provides that it is unlawful for an employer or any other person to harass an employee on the bases of enumerated classifications such as age and gender. Subdivision (j) carries its own definition of "employer". It provides that for its purposes, the term "employer" refers to any person regularly employing *one or more persons*. (Section 12940(j)(4)(A).) Importantly, subdivision (j)(4)(B) then goes on to specifically exempt non-profit religious associations or corporations: "Notwithstanding subparagraph (A), for purposes of this subdivision, "employer" does **not** include a religious association or corporation not organized for private profit, except as provided in Section 12926.2." As stated in the previous section, Section 12926.2 defines a non-profit religious corporation or association as one formed primarily for religious purposes.[3]

Therefore, there is no question that the Church is not an "employer" within the meaning of the FEHA, and that its statutory prohibition against harassment does not apply to the Church. Therefore, the First, Fourth and Fifth Causes of Action for Discrimination and Harassment on the bases of age and gender, as proscribed by the FEHA, must be dismissed without leave to amend.

**5.**

**AGENTS AND EMPLOYEES OF THE CHURCH ARE EXEMPT FROM DISCRIMINATION AND HARASSMENT CLAIMS**

The **fourth cause of action** for Age Discrimination and Harassment, and the **fifth cause of action** for Gender Discrimination and Harassment are also alleged against the individuals defendants WOOD, MESQUITA and LEE. Both these causes of action must be dismissed because they may not be maintained against employees of a religious corporation.

///

///

///

3 Section 12926.2 specifically excludes from its ambit those religious corporations operating a health care facility (subdivision (c)), and those operating an educational institution as their sole or primary activity (subdivision (f)). Neither of these conditions apply here.

A. **Individuals Are Not Liable for Discrimination under the FEHA**

Government Code section 12940(a) provides that it is unlawful for an employer to discriminate in the terms or conditions of employment on the basis of age or gender, among other classifications. Claims for employment discrimination under the FEHA may not be maintained against individual employees or supervisors. (Acuna v. Regents of University of California (1997) 56 Cal.App.4th 639 (individual employees cannot be held personally liable for discriminatory practices in the work place).) Since the FEHA does not impose personal liability on supervisors for alleged discrimination in the workplace, a cause of action for discrimination in violation of a public policy enunciated in the FEHA also cannot lie against individual supervisor. (Reno v. Baird (1998) 18 Cal.4th 640.)

Therefore, defendants WOOD, MESQUITA and LEE are not proper defendants to the fourth and fifth causes of action premised in part on discrimination on the basis of age and gender.

B. **Individual Employees Are Not Liable for Harassment in Violation of the FEHA Where the Church Itself Is Exempt from Liability**

As stated above, Government Code section 12940(j) makes clear that a religious association or entity is not subject to the anti-harassment provisions of the FEHA. (Section 12940 (j)(4)(B).) "An employee of a religious association or corporation, therefore, is not an employee of an entity subject to this subdivision and is not covered by the subsection making employees liable for harassment." (Taylor v. Beth Eden Baptist Church (2003) 294 F.Supp.2d 1074, 1084.) "The Legislature did not intend to allow for the imposition of personal liability for harassment on employees of employers that fall under the religious entity exemption contained in subdivision (j)." (Id.)

Here, defendants WOOD, MESQUITA and LEE are not proper defendants to the fourth and fifth causes of action premised in part on harassment because their employer is exempt from the FEHA. Therefore, since plaintiff cannot allege discrimination or harassment against these individuals, these two causes of action must be dismissed without leave to amend against all defendants.

///

6.

**THE THIRD CAUSE OF ACTION MUST BE DISMISSED AS AGAINST THE INDIVIDUAL EMPLOYEES OF THE CHURCH**

Plaintiff's third cause of action is entitled "Retaliation in violation of Labor Code Section 6400 et seq." It is alleged against all defendants, including defendants WOOD, LEE and MESQUITA. The cause of action alleges that plaintiff was terminated from her employment in retaliation for reporting an unsafe working condition to her employer.

Section 6400, however, by its terms imposes an obligation on an ***employer*** to create safe working condition: "Every employer shall furnish employment and a place of employment that is safe and healthful for the employees therein." (Section 6400(a).) Section 6304 provides that the term "employer" shall have the same meaning as in Section 3300. Section 3300 defines an employer as any State agency or public agency, and every person that has a natural person in service. It does not include individual supervisors within the meaning of "employer". In fact, prior to 1971, Section 6304 provided that the term "employer" "shall also include every person having direction, management, control, or custody of any employment, place of employment, or any employee." In 1971, the legislature amended Section 6304 to remove the phrase "every person having direction, management, control or custody of any employment, place of employment, or any employee". (See Historical and Statutory Notes to Section 6304.")

In Reno v. Baird (1998) 18 Cal.4th 640, 663, the California Supreme Court held that a statute imposing obligations and liabilities on an "employer" instead of a "person" foreclosed the imposition of personal liability on individual supervisors. "By limiting the threat of lawsuits to the employer itself, the entity ultimately responsible for discriminatory actions, the Legislature has drawn a balance between the goals of eliminating discrimination in the workplace and minimizing the debilitating burden of litigation on individuals." (Id.) (interpreting the FEHA's imposition of liability on "employers" for discrimination.) In the same vein, a plaintiff alleging discharge in violation of a public policy enunciated in same statute cannot sue the individual supervisor: "Because plaintiff may not sue Baird as an individual supervisor under the FEHA, she may not sue her individually for wrongful discharge in violation of public policy." (Id.)

Similarly here, Labor Code Section 6400 provides that "employer" must provide a safe working condition for employees. In 1971, the Legislature specifically removed the reference to supervisory personnel from the scope of the term "employer". (See Section 6304.) Therefore, there is no question that supervisory personnel are not "employers" within the meaning of Section 6400. Therefore, a cause of action for retaliatory discharge in violation of a public policy enunciated in Section 6400 cannot lie against individual supervisors. Defendants WOOD, LEE and MESQUITA are not proper parties to the Third Cause of Action and must be dismissed.

**7.**

**CONCLUSION**

For the foregoing reasons, defendants respectfully request that the Court grant their demurrer.

Dated: December 17, 2007

DALEY & HEFT, LLP

By: ______________________
ROBERT W. BROCKMAN
GOLNAR J. FOZI
Attorneys for Defendants CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE and FRANCISCO MESQUITA

9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA'S DEMURRER TO PLAINTIFF'S COMPLAINT

DALEY & HEFT, ATTORNEYS AT LAW
ROBERT W. BROCKMAN, ESQ. (SBN 123546)
GOLNAR J. FOZI, ESQ. (SBN 167674)
462 STEVENS AVENUE, SUITE 201
SOLANA BEACH, CA 92075
TELEPHONE: (858) 755-5666
FACSIMILE: (858) 755-7870

Attorneys for Defendants
CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE and FRANCISCO MESQUITA

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO, NORTH COUNTY DIVISION**

| | |
|---|---|
| SONDRA BOONE,<br><br>Plaintiff,<br><br>v.<br><br>CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA and DOES 1-20,<br><br>Defendants. | Case No. 37-2007-00057536-CU-DF-NC<br><br>**DEFENDANTS CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**DEPT** : 28<br>**ICJ** : Michael B. Orfield<br>**T/D** : Not Set |

**TO: PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 14, 2008 at 1:30 p.m. or as soon thereafter as the matter may be heard in Department 28 of the above-entitled court, located at 325 S. Melrose Drive, Vista, California, defendants CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA's Demurrer to Plaintiff's Complaint will be heard.

This demurrer is based on the grounds that the First through Fifth causes of action in plaintiff's complaint fail to state facts sufficient to constitute causes of action.

///

///

///

This demurrer will be based on this Notice, the demurrer, the Memorandum of Points and Authorities, all the pleadings, documents and files herein, and upon such oral and documentary evidence as the court may receive at the hearing on this demurrer.

Dated: December 17, 2007

DALEY & HEFT, LLP

By: ______________________
ROBERT W. BROCKMAN
GOLNAR J. FOZI
Attorneys for Defendants CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE and FRANCISCO MESQUITA

2

DEFENDANTS CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF'S COMPLAINT

DALEY & HEFT, ATTORNEYS AT LAW
ROBERT W. BROCKMAN, ESQ. (SBN 123546)
GOLNAR J. FOZI, ESQ. (SBN 167674)
462 STEVENS AVENUE, SUITE 201
SOLANA BEACH, CA 92075
TELEPHONE: (858) 755-5666
FACSIMILE: (858) 755-7870

Attorneys for Defendants
CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE and FRANCISCO MESQUITA

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO, NORTH COUNTY DIVISION**

| | |
|---|---|
| SONDRA BOONE,<br><br>Plaintiff,<br><br>v.<br><br>CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA and DOES 1-20,<br><br>Defendants. | Case No. 37-2007-00057536-CU-DF-NC<br><br>**DEFENDANTS CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA'S DEMURRER TO PLAINTIFF'S COMPLAINT**<br><br>**DEPT : 28**<br>**ICJ : Michael B. Orfield**<br>**T/D : Not Set** |

Defendants CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, and FRANCISCO MESQUITA hereby demur to the following causes of action in plaintiff's complaint and ask that the demurrer be sustained on the following grounds:

**AS TO THE FIRST CAUSE OF ACTION**

The First Cause of Action for Wrongful Termination in Violation of the California Fair Employment and Housing Act, Government Code Section 12940, fails to state facts sufficient to constitute a cause of action against the CARLSBAD COMMUNITY CHURCH because nonprofit religious entities are exempt from liability under the FEHA.

///

///

///

**AS TO THE THIRD CAUSE OF ACTION**

The Third Cause of Action for Violation of Labor Code Sections 6400 et seq. fails to state facts sufficient to constitute a cause of action against the individual defendants WOOD, LEE and MESQUITA as the cause of action can only be alleged against an "employer".

**AS TO THE FOURTH CAUSE OF ACTION**

The Fourth Cause of Action for Age Discrimination and Harassment in Violation of the California Fair Employment and Housing Act, Government Code Section 12940 et seq., fails to state facts sufficient to constitute a cause of action against all defendants because nonprofit religious entities and their employees are exempt from liability under the FEHA.

**AS TO THE FIFTH CAUSE OF ACTION**

The Fifth Cause of Action for Gender Discrimination and Harassment in Violation of the California Fair Employment and Housing Act, Government Code Section 12940 et seq., fails to state facts sufficient to constitute a cause of action against all defendants because nonprofit religious entities and their employees are exempt from liability under the FEHA.

This demurrer will be based on this notice and the accompanying motion, the memorandum of points and authorities filed herewith, the documents which are the subject of the request for judicial notice, and the pleadings and papers filed herein.

Dated: December 13, 2007

DALEY & HEFT, LLP

By: ______________________
ROBERT W. BROCKMAN
GOLNAR J. FOZI
Attorneys for Defendants CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE and FRANCISCO MESQUITA

DALEY & HEFT, ATTORNEYS AT LAW
ROBERT W. BROCKMAN, ESQ. (SBN 123546)
GOLNAR J. FOZI, ESQ. (SBN 167674)
462 STEVENS AVENUE, SUITE 201
SOLANA BEACH, CA 92075
TELEPHONE: (858) 755-5666
FACSIMILE: (858) 755-7870

Attorneys for Defendants
CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE and FRANCISCO MESQUITA

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO, NORTH COUNTY DIVISION**

| | |
|---|---|
| SONDRA BOONE,<br><br>Plaintiff,<br><br>v.<br><br>CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA and DOES 1-20,<br><br>Defendants. | Case No. 37-2007-00057536-CU-DF-NC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA'S DEMURRER TO PLAINTIFF'S COMPLAINT**<br><br>**DEPT : 28**<br>**ICJ : Michael B. Orfield**<br>**T/D : Not Set** |

Defendants CARLSBAD COMMUNITY CHURCH ("Church"), TOM WOOD, DICK LEE, and FRANCISCO MESQUITA hereby submit the following points and authorities in support of their demurrer to plaintiffs' complaint.

**1.**

**INTRODUCTION**

Plaintiff SONDRA BOONE claims her termination from the Church was due to her age, gender and internal complaints to the Church that it was unsafe to leave female staff members alone in the Church during work hours. She alleges various claims based on violation of the California Fair Employment and Housing Act ("FEHA").

Nonprofit religious corporations such as the Church are not "employers" within the meaning of the FEHA, and cannot be liable for discrimination or harassment under the FEHA.

1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA'S DEMURRER TO PLAINTIFF'S COMPLAINT

Similarly, their employees are exempt from liability under the FEHA. The FEHA-based causes of action against the defendants must be dismissed without leave to amend.

Furthermore, individual supervisors are not proper parties to a cause of action under Labor Code Section 6400. Therefore, defendants WOOD, LEE and MESQUITA must be dismissed without leave to amend from the third cause of action.

2.

**FACTS ALLEGED IN THE COMPLAINT**

Defendant CARLSBAD COMMUNITY CHURCH is a church and a religious corporation situated in Carlsbad, California. (Complaint, paragraph 2; See Request for Judicial Notice and Exhibit A.) Defendants WOOD, DICK, and MESQUITA are agents or employees of the Church, and at all times relevant were acting within the scope of their employment for the Church. (Complaint, paragraph 3.) Plaintiff is a 61-year-old female who was employed with the Church ever since 1987. (Complaint, paragraph 9.) Plaintiff was terminated from her employment at the Church on or about April 23, 2007. (Complaint, paragraph 33.)

3.

**AUTHORITY**

A demurrer is treated as admitting all material facts properly pleaded but not contentions, deductions or conclusion of a fact or law. (Michaelian v. State Comp. Insurance Fund (1996) 50 Cal.App.4th 1093.) A demurrer tests the legal sufficiency of the complaint raising issues of law, not fact regarding the form or content of the complaint. (Code of Civ. Proc., §§ 422.10 and 589.) A demurrer can be used only to challenge defects that appear on the face of the pleading under attack or for matters outside the pleading that are judicially noticeable. (Blank v. Kirwan (1985) 39 Cal.3d 311, 318; Harboring Villas Homeowners Association v. Superior Court (1998) 63 Cal.App.4th 426, 429.)

///

///

///

///

4.

**A NON-PROFIT, RELIGIOUS CORPORATION IS EXEMPT FROM THE APPLICATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

Plaintiff's **first cause of action** alleges wrongful termination in violation of the FEHA, Government Code Section 12940 et seq., and alleges that the Church fired plaintiff due to her gender and age. The **fourth cause of action** alleges Age Discrimination and Harassment in violation of the FEHA.[1] The **fifth cause of action** alleges Gender Discrimination and Harassment in violation of the FEHA. All three causes of action are legally untenable against the Church and must be dismissed without leave to amend.

**A. The Church Is Not an "Employer" Under the FEHA for Purposes of Wrongful Termination or Discrimination Claims**

Government Code Section 12940(a) provides that it is unlawful for ***an employer*** to discriminate against an employee on several enumerated bases, including age and gender. Section 12926(d) provides that "in connection with unlawful practices", the term "employer" refers to anyone employing five or more persons. However, the term "employer" does not include a religious association or corporation not organized for private profit. (Section 12926(d).) Section 12926.2(a) defines a religious corporation as any corporation "formed primarily or exclusively for religious purposes under the laws of any other state to administer the affairs of an organized religious group."

The religious entity exemption of FEHA does not depend on the nature of the plaintiff's duties for the religious corporation. The California Supreme Court in Kelly v. Methodist Hospital of Southern California (2000) 22 Cal.4th 1108, 1116, held the religious entity exemption is not conditioned upon the nature of the employee's job position. "The exemption renders qualified

---

1 In the First and Fourth Causes of Action (paragraphs 42 and 62), plaintiff alleges in alternative that age discrimination is proscribed by Article I, Section 8 of the State Constitution. This is in error. Article I, Section proscribes discrimination on the following grounds only: sex, race, creed, color, or national or ethnic origin. As the California Supreme Court has clarified, "There is presently no law of this state other than the FEHA which proscribes discrimination on the basis of age." (Jennings v. Marralle (1994) 8 Cal.4th 121, 132.) The prohibition against age discrimination is statutory and not constitutional, and does not give rise to a common law claim for violation of a fundamental public policy. (Id. at 135.)

religious entities exempt from FEHA ***in its entirety***. The nature of the employee's work is not relevant; the nature of the entity that employs him or her is determinative." (Id.) (Emphasis added.) The Supreme Court based its holding on the legislative history of the FEHA, and the fact that in 1977, the Legislature rejected proposed language exempting from the FEHA only those religious corporation employing in so far as the employee was involved in carrying out the religious purposes of the religious association or corporation." (Id.)

While it is true that the federal counterpart to the FEHA, Title VII of the Civil Rights Act of 1964, exempts from its scope religious corporations or associations only to the extent the employee performed religious duties, the California Supreme Court has refused to interpret the FEHA religious exemption in reference to Title VII. "Although California courts have frequently looked to title VII jurisprudence to interpret analogous principles of California law, to do so here is inappropriate for several reasons, the most significant being that the language of the federal exemption is significantly different than the language of section 12926. (Kelly, supra, at 1118.) As the California high court pointed out, the federal statute specifically confines the religious entity exemption to work carried out for religious purposes (42 U.S.C. § 2000e-1(a)) while the FEHA simply exempts all non-profit, religious corporations regardless of the nature of the employee's job. (Id.) Thus, a non-profit religious association or corporation "is exempt from FEHA regardless of the nature of the employee's job or the type of discrimination it allegedly practiced." (Id. at 1119) (See also Silo v. CHW Medical Foundation (2002) 27 Cal.4th 1097, 1108, fn. 2) ("FEHA's exemption of religious organizations is broader than title VII's, inasmuch as it insulates qualifying religious employers from not merely religious discrimination liability but all forms of FEHA liability.")

It bears mentioning that plaintiff's complaint at paragraph 42 alleges that the Church is an employer within the meaning of the FEHA "because of the operation of subparagraph (f)(2) of section 12926.2 of the Government Code, and the secular nature of Plaintiff's employment." Defendant has already addressed the "secular nature" argument. With respect to the operation of Section 12926(f)(2), the Court can see that this provision does not apply here. Subdivision (f)(1) of Section 12926.2 provides that "***a nonprofit public benefit corporation*** formed by, or affiliated

4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA'S DEMURRER TO PLAINTIFF'S COMPLAINT

with, a particular religion ***and that operates an educational institution as its sole or primary activity***" may restrict employment and promotion to members of a particular religion. Thereafter, Subdivision (f)(2) provides that "employers that are ***nonprofit public benefit corporations specified in paragraph (1)*** shall be subject to the provisions of this part in all other respects, including, but not limited to, the prohibitions against discrimination made unlawful employment practices by this part." Therefore, subdivision (f)(2) of Section 12926.2 expressly pertains to nonprofit public benefit corporations *affiliated with a religion*, that operate schools as their sole or primary activity. Here, plaintiff has not alleged, nor can it so allege, that the Church is a nonprofit, public benefit corporation affiliated with a religion that operates a school as its primary or sole activity. Therefore, Section 12926.2(f)(2) simply is inapplicable here.

Finally, plaintiff dually plead these three causes of action as arising from a violation of a fundamental public policy against age and gender discrimination as enunciated in the FEHA.[2] It is well-established, however, that a cause of action for violation of public policy enunciated in FEHA cannot lie where the FEHA specifically exempts the defendant from statutory liability. (See, e.g. Reno v. Baird (1998) 18 Ca.4th 640, 663-664; Jennings v. Marralle (1994) 8 Cal.4th 121, 135-136; Phillips v. St. Mary's Regional Medical Center (2002) 96 Cal.App.4th 218, 227.) Therefore, to the extent plaintiff claims her termination was in violation of a fundamental public policy enunciated in FEHA, her claims are barred because the FEHA does not apply to the Church.

**B. The Church Is Not an "Employer" within the Meaning of the FEHA for Purposes of Plaintiff's Harassment Claims**

While plaintiff's First Cause of Action is pled as a "wrongful termination" claim, her Fourth and Fifth Causes of Action against the Church are characterized as one for Discrimination and Harassment. In the preceding section, defendants showed that the Church is not an "employer" for purposes of a discrimination claim under the FEHA. Here, defendants show that the Church is also not an "employer" for purposes of a harassment claim.

---

2 The First Cause of Action also erroneously alleges that age and gender discrimination constitute a violation of a public policy enunciated in Labor Code sections 1102.5 and 6400. This is clearly not the case. Neither Section 1102.5 nor Section 6400 even mention age or gender discrimination.

5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA'S DEMURRER TO PLAINTIFF'S COMPLAINT

Government Code Section 12940(j)(1) provides that it is unlawful for an employer or any other person to harass an employee on the bases of enumerated classifications such as age and gender. Subdivision (j) carries its own definition of "employer". It provides that for its purposes, the term "employer" refers to any person regularly employing *one or more persons*. (Section 12940(j)(4)(A).) Importantly, subdivision (j)(4)(B) then goes on to specifically exempt non-profit religious associations or corporations: "Notwithstanding subparagraph (A), for purposes of this subdivision, "employer" does **not** include a religious association or corporation not organized for private profit, except as provided in Section 12926.2." As stated in the previous section, Section 12926.2 defines a non-profit religious corporation or association as one formed primarily for religious purposes.[3]

Therefore, there is no question that the Church is not an "employer" within the meaning of the FEHA, and that its statutory prohibition against harassment does not apply to the Church. Therefore, the First, Fourth and Fifth Causes of Action for Discrimination and Harassment on the bases of age and gender, as proscribed by the FEHA, must be dismissed without leave to amend.

**5.**

**AGENTS AND EMPLOYEES OF THE CHURCH ARE EXEMPT FROM DISCRIMINATION AND HARASSMENT CLAIMS**

The **fourth cause of action** for Age Discrimination and Harassment, and the **fifth cause of action** for Gender Discrimination and Harassment are also alleged against the individuals defendants WOOD, MESQUITA and LEE. Both these causes of action must be dismissed because they may not be maintained against employees of a religious corporation.

///

///

///

3 Section 12926.2 specifically excludes from its ambit those religious corporations operating a health care facility (subdivision (c)), and those operating an educational institution as their sole or primary activity (subdivision (f)). Neither of these conditions apply here.

6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA'S DEMURRER TO PLAINTIFF'S COMPLAINT

A. Individuals Are Not Liable for Discrimination under the FEHA

Government Code section 12940(a) provides that it is unlawful for an employer to discriminate in the terms or conditions of employment on the basis of age or gender, among other classifications. Claims for employment discrimination under the FEHA may not be maintained against individual employees or supervisors. (Acuna v. Regents of University of California (1997) 56 Cal.App.4th 639 (individual employees cannot be held personally liable for discriminatory practices in the work place).) Since the FEHA does not impose personal liability on supervisors for alleged discrimination in the workplace, a cause of action for discrimination in violation of a public policy enunciated in the FEHA also cannot lie against individual supervisor. (Reno v. Baird (1998) 18 Cal.4th 640.)

Therefore, defendants WOOD, MESQUITA and LEE are not proper defendants to the fourth and fifth causes of action premised in part on discrimination on the basis of age and gender.

B. Individual Employees Are Not Liable for Harassment in Violation of the FEHA Where the Church Itself Is Exempt from Liability

As stated above, Government Code section 12940(j) makes clear that a religious association or entity is not subject to the anti-harassment provisions of the FEHA. (Section 12940 (j)(4)(B).) "An employee of a religious association or corporation, therefore, is not an employee of an entity subject to this subdivision and is not covered by the subsection making employees liable for harassment." (Taylor v. Beth Eden Baptist Church (2003) 294 F.Supp.2d 1074, 1084.) "The Legislature did not intend to allow for the imposition of personal liability for harassment on employees of employers that fall under the religious entity exemption contained in subdivision (j)." (Id.)

Here, defendants WOOD, MESQUITA and LEE are not proper defendants to the fourth and fifth causes of action premised in part on harassment because their employer is exempt from the FEHA. Therefore, since plaintiff cannot allege discrimination or harassment against these individuals, these two causes of action must be dismissed without leave to amend against all defendants.

///

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA'S DEMURRER TO PLAINTIFF'S COMPLAINT

6.

**THE THIRD CAUSE OF ACTION MUST BE DISMISSED AS AGAINST THE INDIVIDUAL EMPLOYEES OF THE CHURCH**

Plaintiff's third cause of action is entitled "Retaliation in violation of Labor Code Section 6400 et seq." It is alleged against all defendants, including defendants WOOD, LEE and MESQUITA. The cause of action alleges that plaintiff was terminated from her employment in retaliation for reporting an unsafe working condition to her employer.

Section 6400, however, by its terms imposes an obligation on an ***employer*** to create safe working condition: "Every employer shall furnish employment and a place of employment that is safe and healthful for the employees therein." (Section 6400(a).) Section 6304 provides that the term "employer" shall have the same meaning as in Section 3300. Section 3300 defines an employer as any State agency or public agency, and every person that has a natural person in service. It does not include individual supervisors within the meaning of "employer". In fact, prior to 1971, Section 6304 provided that the term "employer" "shall also include every person having direction, management, control, or custody of any employment, place of employment, or any employee." In 1971, the legislature amended Section 6304 to remove the phrase "every person having direction, management, control or custody of any employment, place of employment, or any employee". (See Historical and Statutory Notes to Section 6304.")

In Reno v. Baird (1998) 18 Cal.4th 640, 663, the California Supreme Court held that a statute imposing obligations and liabilities on an "employer" instead of a "person" foreclosed the imposition of personal liability on individual supervisors. "By limiting the threat of lawsuits to the employer itself, the entity ultimately responsible for discriminatory actions, the Legislature has drawn a balance between the goals of eliminating discrimination in the workplace and minimizing the debilitating burden of litigation on individuals." (Id.) (interpreting the FEHA's imposition of liability on "employers" for discrimination.) In the same vein, a plaintiff alleging discharge in violation of a public policy enunciated in same statute cannot sue the individual supervisor: "Because plaintiff may not sue Baird as an individual supervisor under the FEHA, she may not sue her individually for wrongful discharge in violation of public policy." (Id.)

Similarly here, Labor Code Section 6400 provides that "employer" must provide a safe working condition for employees. In 1971, the Legislature specifically removed the reference to supervisory personnel from the scope of the term "employer". (See Section 6304.) Therefore, there is no question that supervisory personnel are not "employers" within the meaning of Section 6400. Therefore, a cause of action for retaliatory discharge in violation of a public policy enunciated in Section 6400 cannot lie against individual supervisors. Defendants WOOD, LEE and MESQUITA are not proper parties to the Third Cause of Action and must be dismissed.

7.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court grant their demurrer.

Dated: December 17, 2007

DALEY & HEFT, LLP

By: ______________________
ROBERT W. BROCKMAN
GOLNAR J. FOZI
Attorneys for Defendants CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE and FRANCISCO MESQUITA

9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA'S DEMURRER TO PLAINTIFF'S COMPLAINT

DALEY & HEFT, ATTORNEYS AT LAW
ROBERT W. BROCKMAN, ESQ. (SBN 123546)
GOLNAR J. FOZI, ESQ. (SBN 167674)
462 STEVENS AVENUE, SUITE 201
SOLANA BEACH, CA 92075
TELEPHONE: (858) 755-5666
FACSIMILE: (858) 755-7870

Attorneys for Defendants
CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE and FRANCISCO MESQUITA

F I L E D
Clerk of the Superior Court
DEC 18 2007
BY: WILKINSON

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO, NORTH COUNTY DIVISION**

SONDRA BOONE,

Plaintiff,

v.

CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA and DOES 1-20,

Defendants.

Case No. 37-2007-00057536-CU-DF-NC

**NOTICE OF LODGMENT OF EXHIBITS IN SUPPORT OF DEFENDANTS' DEMURRER**

**DEPT : 28**
**ICJ : Michael B. Orfield**
**T/D : Not Set**

Exhibit A: Secretary of State, Statement of Information (Domestic Nonprofit Corporation) for Carlsbad Community Church.

Exhibit B: Taylor v. Beth Eden Baptist Church (N.D. Cal. 2003) 294 F.Supp.2d 1074.

Dated: December 17, 2007

DALEY & HEFT, LLP

By: [signature]
ROBERT W. BROCKMAN
GOLNAR J. FOZI
Attorneys for Defendants CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE and FRANCISCO MESQUITA

12/18

# Exhibit A



# State of California
## Secretary of State

N

### STATEMENT OF INFORMATION
**(Domestic Nonprofit Corporation)**

**Filing Fee $20.00. If amendment, see instructions.**

**IMPORTANT — READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

1. **CORPORATE NAME** (Please do not alter if name is preprinted.)

C0113669 RE NCD
CARLSBAD COMMUNITY CHURCH
3175 HARDING ST
CARLSBAD CA 92008

P A I D
APR 27 2007

This Space For Filing Use Only

**DUE DATE: 04-30-07**

**COMPLETE PRINCIPAL OFFICE ADDRESS** (Do not abbreviate the name of the city. Item 2 cannot be a P.O. Box.)

| 2. STREET ADDRESS OF PRINCIPAL OFFICE IN CALIFORNIA, IF ANY. | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 3175 Harding Street | Carlsbad, | CA | 92008 |

**NAMES AND COMPLETE ADDRESSES OF THE FOLLOWING OFFICERS** (The corporation must have these three officers. A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| 3. CHIEF EXECUTIVE OFFICER/ R. Thomas Wood | 325 CaRLSBAD Village Dr. #E-2 | Carlsbad, CA | 92008 |
| 4. SECRETARY/ Arville Trostrud | 2226 Cameo Rd. | Carlsbad, CA | 92008 |
| 5. CHIEF FINANCIAL OFFICER/ Richard Lee | 2293 Morgan Rd. | Carlsbad, CA | 92008 |

**AGENT FOR SERVICE OF PROCESS** (If the agent is an individual, the agent must reside in California and Item 7 must be completed with a California address. If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to Corporations Code section 1505 and Item 7 must be left blank.)

6. NAME OF AGENT FOR SERVICE OF PROCESS
Francisco Mesquita

| 7. ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 3175 Harding Street | Carlsbad | CA | 92008 |

**DAVIS-STIRLING COMMON INTEREST DEVELOPMENT ACT** (California Civil Code section 1350, et seq.)

8. ☐ Check here if the corporation is an association formed to manage a common interest development under the Davis-Stirling Common Interest Development Act and proceed to Items 9, 10 and 11.

**NOTE:** Corporations formed to manage a common interest development must also file a Statement by Common Interest Development Association (Form SI-CID) as required by California Civil Code section 1363.6. Please see instructions on the reverse side of this form.

| 9. ADDRESS OF BUSINESS OR CORPORATE OFFICE OF THE ASSOCIATION, IF ANY | CITY | STATE | ZIP CODE |
|---|---|---|---|
| | | | |

| 10. FRONT STREET AND NEAREST CROSS STREET FOR THE PHYSICAL LOCATION OF THE COMMON INTEREST DEVELOPMENT (Complete if the business or corporate office is not on the site of the common interest development.) | 9-DIGIT ZIP CODE |
|---|---|
| | |

| 11. NAME AND ADDRESS OF ASSOCIATION'S MANAGING AGENT, IF ANY | CITY | STATE | ZIP CODE |
|---|---|---|---|
| | | | |

12. THE INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT.

| Francisco Mesquita | [signature] | Pastor Admin. | 4/27/07 |
|---|---|---|---|
| TYPE OR PRINT NAME OF PERSON COMPLETING THE FORM | SIGNATURE | TITLE | DATE |

SI-100 (REV 07/2006) APPROVED BY SECRETARY OF STATE

003900N

19822 19822

Date: 04/27/2007 Amount: 20.00

| 'OICE ;CRIPTION | INVOICE AMOUNT | DIST. ACCOUNT | DIST. AMOUNT |
|---|---|---|---|
| .13669 | 20.00 | | |
| :porate filing Fee | | 562030 | 20.00 |

sforms.com

# Exhibit B

Taylor v. Beth Eden Baptist Church
N.D.Cal.,2003.

United States District Court,N.D. California.
Lori TAYLOR, Plaintiff,
v.
BETH EDEN BAPTIST CHURCH, et al.,
Defendants.
**No. C-03-0685 JCS.**

Aug. 5, 2003.

**Background:** Employee, a youth minister for employer, a church, sued church and pastor who purportedly supervised her, alleging claims of sex discrimination under Title VII and California Fair Employment and Housing Act (FEHA), intentional and negligent infliction of emotional distress, and related statutory and state constitutional claims regarding pastor's alleged sexual advances toward her. Employee filed statement of non-opposition in response to employer's motion to dismiss for failure to state a claim.

**Holdings:** Upon consideration of pastor's motion to dismiss, the District Court, Joseph C. Spero, United States Magistrate Judge, held that:

(1) employee's negligent infliction of emotional distress claim against pastor was not barred by exclusive remedy provision of workers' compensation code, but

(2) under FEHA, pastor could not be held individually liable for sex discrimination, and was exempt from personal liability for sexual harassment and retaliation.

Motion granted in part and denied in part.
West Headnotes
**[1] Workers' Compensation 413 ⚷2093**

413 Workers' Compensation
413XX Effect of Act on Other Statutory or Common-Law Rights of Action and Defenses
413XX(A) Between Employer and Employee
413XX(A)1 Exclusiveness of Remedies Afforded by Acts
413k2093 k. Willful or Deliberate Act or Negligence. Most Cited Cases
Negligent infliction of emotional distress claim of employee, a church youth minister, against church pastor who allegedly made sexual advances toward her when she worked at church, was not barred by exclusive remedy provision of workers' compensation code; employee's receipt of workers' compensation benefits was exclusive remedy only if pastor was acting within scope of his employment when he committed acts alleged, and pastor's alleged acts fell outside scope of his employment. West's Ann.Cal.Labor Code §§ 3601, 3602.

**[2] Workers' Compensation 413 ⚷2168**

413 Workers' Compensation
413XX Effect of Act on Other Statutory or Common-Law Rights of Action and Defenses
413XX(C) Action Against Third Persons in General for Employee's Injury or Death
413XX(C)1 Right of Action of Employee or Representative Generally
413k2160 What Persons Liable as Third Persons
413k2168 k. Co-Employee, or Agent or Officer of Employer of Injured Person. Most Cited Cases
The test for determining whether a fellow employee's conduct is in the scope of employment, for the purposes of the workers' compensation law's exclusive remedy provision, is the same test as is applied to determine whether or not an employer should be held vicariously liable for an employee's conduct under the doctrine of respondeat superior; under this test, conduct is within the scope of employment only if the servant is actuated to some extent by an intent to serve his master. West's Ann.Cal.Labor Code § 3601.

**[3] Civil Rights 78 ⚷1113**

78 Civil Rights
78II Employment Practices
78k1108 Employers and Employees Affected
78k1113 k. Individuals as "Employers". Most Cited Cases

**Civil Rights 78 ⚷1736**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

78 Civil Rights
78V State and Local Remedies
78k1734 Persons Protected, Persons Liable, and Parties
78k1736 k. Employment Practices. Most Cited Cases
Under California Fair Employment and Housing Act (FEHA), pastor who supervised employee, a youth minister who worked for employer, a church, could not be held individually liable for alleged sex discrimination by his sexual advances toward her; pastor was not an employer as defined by applicable code provision, and pastor could not be held individually liable for aiding and abetting employer in concerted wrongful action because conspiracy claim between employer and employee was not cognizable under California law. West's Ann.Cal.Gov.Code §§ 12926(d), 12940(a).

**[4] Civil Rights 78 ⚷1114**

78 Civil Rights
78II Employment Practices
78k1108 Employers and Employees Affected
78k1114 k. Exemptions. Most Cited Cases
Under California Fair Employment and Housing Act (FEHA), church pastor was exempt from personal liability for claim of sexual harassment brought against him by youth minister who worked for church and was accountable to pastor; employer, a church, was exempt as a religious entity, and intent that exemption would apply to an employee of an exempt entity was implied by code language that only allowed imposition of personal liability for harassment on an employee of an entity subject to, rather than exempted from, its provisions. West's Ann.Cal.Gov.Code § 12940(j)(3), (j)(4)(B).

**[5] Civil Rights 78 ⚷1114**

78 Civil Rights
78II Employment Practices
78k1108 Employers and Employees Affected
78k1114 k. Exemptions. Most Cited Cases
California Fair Employment and Housing Act (FEHA) did not allow for imposition of personal liability for retaliation on a supervisor employed by entity that qualified for religious entity exemption, and thus, pastor who worked at church as supervisor of youth minister could not be personally liable to her for retaliation; even though religious entity exemption did not explicitly address employees of such entities, state legislature clearly intended to include employees within scope of religious entity exemption for employers. West's Ann.Cal.Gov.Code §§ 12926(d), 12940(h).

*1076 Pamela Y. Price, A Professional Law Corporation, Oakland, CA, for Plaintiff.
Gary L. Hall, Law Offices of Gary L. Hall, Kevin G. Howard, Roseville, CA, Jerome M. Varanini, Esq., Trimble Sherinian & Varanini, Sacramento, CA, for Defendants.

**ORDER GRANTING MOTION TO DISMISS AS TO DEFENDANT BETH EDEN BAPTIST CHURCH AND GRANTING IN PART AND DENYING IN PART AS TO DEFENDANT GILLETTE JAMES [Docket Nos. 5 and 7]**
SPERO, United States Magistrate Judge.

## I. *INTRODUCTION*

In this action, Plaintiff Lori Taylor brings sex discrimination, harassment and retaliation claims against Defendant Beth Eden Baptist Church ("Beth Eden") and its pastor, Defendant Gillette James. Beth Eden filed a Motion to Dismiss ("the Motion"), and James filed a Notice of Joinder in the Motion. Taylor filed a Statement of Non-Opposition as to Beth Eden but opposed the Motion as to James. The Motion came on for hearing on Friday, August 1, 2003 at 9:30 a.m. The Court GRANTS the Motion as to Beth Eden on the ground that it is unopposed. Accordingly, Claims Four, Six and Nine are dismissed with prejudice as to Beth Eden. As to James, the Court GRANTS the Motion as to Claims Six and Nine, which are dismissed with prejudice, and DENIES the Motion as to Claim Four, for the reasons stated below.[FN1]

FN1. The parties have consented to the jurisdiction of a United States Magistrate judge for all purposes. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 636(e).

## II. *BACKGROUND*

### A. *Facts*

Plaintiff Lori Taylor worked as Beth Eden's Youth and Young Adult Minister from July 2001 to November 2002. First Amended Complaint (hereinafter "FAC") at ¶¶ 3, 8, 10. In addition, Taylor has been a member

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

of Beth Eden and has attended services regularly since January 14, 1990. *Id.* at ¶ 7. At the time of the relevant events, James was employed as the pastor of Beth Eden. *Id.* at ¶ 5. Although Taylor does not allege explicitly in her complaint that James was her supervisor, the job description for Taylor's position that was attached to her original complaint states that the Youth and Young Adult Minister is directly accountable to the Pastor. Exh. A to FAC (Youth and Young Adult Minister's Job Specification).

Taylor alleges that on February 19, 2002, Taylor went to James's "private study for private and personal counseling." *Id.* at ¶ 9. According to Taylor, as she was leaving his study, James "abruptly left his desk, rushed over to her and physically grabbed her" and then "pulled Taylor to him in a very personal and sexually provocative manner." *Id.* Taylor alleges that she "pulled herself from his grasp and ran from his study." *Id.*

***1077** Plaintiff alleges that she was "extremely disturbed" by this incident. *Id.* at ¶ 10. On May 2, 2002, Taylor took a leave of absence at the recommendation of her doctor and filed for Workers Compensation benefits. *Id.* In September 2002, Taylor was approved to receive Workers Compensation benefits. *Id.* Taylor alleges that she "did not abandon her position with the Church." *Id.* at ¶ 11. According to Taylor, she received a letter regarding her employment from Beth Eden's personnel committee on September 27, 2002.[FN2] *Id.* In addition, a letter from the personnel committee to Taylor's doctor dated October 21, 2002 stated that "until Taylor returned as the Youth Minister, the Personnel Chairperson would recommend to the Personnel Committee that an interim person serve in her position." *Id.*

> FN2. Taylor's First Amended Complaint does not allege any specific facts as to the content of this letter.

On "the first Sunday of November 2002, Taylor went to Beth Eden to worship as usual." *Id.* at ¶ 12. According to Taylor, when she returned to her car, she found "a document on her car referring to the Pastor's history of infidelities and predatory exploitation of female petitioners." *Id.* Taylor further alleges that "[a]s a result of [her] complaints about Defendant [James'] inappropriate sexual advances toward her and other female parishioners, Defendant [James] and Beth Eden slandered her reputation, filed and served a request for a Temporary Restraining Order prohibiting her from entering the Church, and subjected her to undue criticism and ridicule from other Church members." *Id.* at ¶ 14.

On March 1, 2002, Taylor filed a claim with the California Department of Fair Housing and Employment (DFEH) with a request for joint filing with the Equal Employment Opportunity Commission (EEOC). *Id.* at ¶ 15. A Notice of Right to Sue was issued by the DFEH on February 12, 2003 and by the EEOC on February 13, 2003. *Id.*

### B. *Procedural Background*

Taylor filed a Complaint on February 18, 2003 and her First Amended Complaint on May 27, 2003. In her First Amended Complaint, Taylor asserts the following claims:

1. *Claim One:* Sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000*et seq.*
2. *Claim Two:* Unlawful retaliation in violation of 42 U.S.C. § 1981(a).
3. *Claim Three:* Intentional infliction of emotional distress.
4. *Claim Four:* Negligent infliction of emotional distress.
5. *Claim Five:* Unlawful denial of employment in violation of California Constitution Article I, Section 8.
6. *Claim Six:* Sex discrimination in violation of California Fair Employment and Housing Act (FEHA), Cal. Gov.Code §§ 12900*et seq.*
7. *Claim Seven:* Sexual harassment in violation of California Civil Code § 51.9.
8. *Claim Eight:* Sexual battery in violation of California Civil Code § 1708.5.
9. *Claim Nine:* Retaliation in violation of California Fair Employment and Housing Act (FEHA), Cal. Gov.Code §§ 12900*et seq.*

Defendant Beth Eden filed a Motion to Dismiss on June 20, 2002. In the Motion, Beth Eden seeks dismissal of Taylor's Fourth, Sixth and Ninth Claims. Beth Eden argues that Claim Four, for negligent***1078** infliction of emotional distress, is barred under California Labor Code § 3602 because Workers Compensation benefits provide the exclusive remedy for Taylor's injury. Beth Eden argues that Claims Six and Nine-for discrimination and retaliation in violation of FEHA-are barred because of FEHA's exemption for religious entities.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

294 F.Supp.2d 1074 Page 4
294 F.Supp.2d 1074
**(Cite as: 294 F.Supp.2d 1074)**

James filed a Notice of Joinder in Beth Eden's Motion and also filed a separate memorandum of points and authorities. James seeks dismissal of the same three claims, and relies on essentially the same legal arguments in support of dismissal of those claims. In addition, he argues that to the extent Plaintiff is asserting a claim for defamation in her First Amended Complaint, that claim should be dismissed for failure to state a claim.

In response to the Motion, Taylor filed a statement of non-opposition as to Beth Eden and a separate opposition brief as to James. In her opposition, Taylor makes the following arguments. With respect to Claim Four, for negligent infliction of emotional distress, Plaintiff argues that the exclusive remedy provision of California Labor Code § 3602 exempts employers from civil liability but does not exempt employees. Similarly, as to Claims Six and Nine, Taylor argues that the exemption for religious entities under FEHA does not extend to individual supervisors, who are not themselves employers. Taylor stipulated that she is not asserting a claim for defamation.

In his Reply, James concedes that California Labor Code § 3602 does not apply to employees, but argues that Claim Four is, nonetheless, barred as to James under California Labor Code § 3601. Section 3601 addresses Workers Compensation exclusivity as to claims against fellow employees. In addition, James argues that all of Taylor's FEHA claims are barred as to James because it would make no sense to exempt religious entities from FEHA without also making employees of such entities exempt.

## III. *ANALYSIS*

### A. *Legal Standard*

A complaint should not be dismissed for failure to state a claim under Fed.R.Civ.P. 12(b)(6)"unless it appears beyond doubt that a plaintiff could prove no set of facts in support of his claim which would entitle him to relief." *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)(quoting *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In ruling on a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Id.* The district court generally may not consider matters outside the pleadings on a motion to dismiss. *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir.1994). However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss. *Id.*

### B. *Claim Four (Negligent Infliction of Emotional Distress)*

[1] Beth Eden argued in its Motion that Taylor's claim for negligent infliction of emotional distress must be dismissed because, under California Labor Code § 3602, the Workers Compensation scheme provides the exclusive remedy for Taylor's injury. James also relied on § 3602 in his memorandum in support of the Motion. However, in his Reply brief, he concedes that § 3602 does not apply to him. Instead, he argues that Claim Four is barred under California Labor Code § 3601. The Court agrees that § 3601 is the relevant provision, but concludes that that provision does not make the Workers Compensation remedy exclusive with respect to Taylor's claim for negligent infliction***1079** of emotional distress against James as currently pled.

Section 3601 provides, in part, as follows:
(a) Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation, pursuant to the provisions of this division is, except as specifically provided in this section, the exclusive remedy for injury or death of an employee against any other employee of the employer acting within the scope of his or her employment, except that an employee, or his or her dependents in the event of his or her death, shall, in addition to the right to compensation against the employer, have a right to bring an action at law for damages against the other employee, as if this division did not apply, in either of the following cases:
(1) When the injury or death is proximately caused by the willful and unprovoked physical act of aggression of the other employee.
(2) When the injury or death is proximately caused by the intoxication of the other employee.

Cal. Labor Code § 3601(a). Thus, under § 3601, the Workers Compensation scheme provides an exclusive remedy vis-a-vis James only if James was acting "within the scope of his ... employment" when he committed the acts alleged in the First Amended Complaint. Based on Plaintiff's allegations, the Court concludes that James was *not* acting within the scope of his employment.[FN3]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN3. It is also likely that the exception contained in subsection (a)(1) applies to Taylor's claim, to the extent that her emotional distress was caused, in part, by an alleged "willful and unprovoked physical act of aggression" on the part of James. The Court does not reach this issue.

[2] The test for determining whether conduct is in the "scope of employment" for the purposes of § 3601 is the same test as is applied to determine whether or not an employer should be held vicariously liable for an employee's conduct under the doctrine of *respondeat superior*. *Hendy v. Losse*, 54 Cal.3d 723, 740, 1 Cal.Rptr.2d 543, 819 P.2d 1 (1991)(holding that "[t]he words 'acting within the scope of his employment' should be construed in light of the purpose of the section, so as not to extend immunity beyond *respondeat superior* situations"). Under this test, conduct is within the scope of employment "only if the servant is actuated to some extent by an intent to serve his master." *Id.* (quoting *Saala v. McFarland*, 63 Cal.2d 124, 45 Cal.Rptr. 144, 403 P.2d 400 (1965)). In the context of vicarious liability, California courts have held under a variety of circumstances that sexual misconduct falls outside of the scope of employment. *See, e.g. Farmers Ins. Group v. County of Santa Clara*, 11 Cal.4th 992, 47 Cal.Rptr.2d 478, 906 P.2d 440 (1995)(holding that the County could not be held vicariously liable for sexual harassment by a deputy sheriff who worked at jail, even though harassment occurred during work hours at the jail, because the misconduct was "motivated for strictly personal reasons unrelated to the guarding of inmates or the performance of any other duty"); *Jeffrey E. v. Central Baptist Church*, 197 Cal.App.3d 718, 243 Cal.Rptr. 128 (1988) (holding that church could not be held vicariously liable for sexual molestation of child by Sunday school teacher because the acts were "neither required, incidental to his duties, nor foreseeable"); Rita *M. v. Roman Catholic Archbishop of Los Angeles*, 187 Cal.App.3d 1453, 232 Cal.Rptr. 685 (1986) (holding that church could not be held vicariously liable for sexual molestation of child by priests).

A closely related line of cases addressing California Labor Code § 3602 supports the ***1080** conclusion that acts of discrimination and harassment fall outside of the scope of employment. In particular, California courts have held that exclusivity under § 3602 applies only to conduct that is a normal risk of the employment relationship. *See Livitsanos v. Superior Court*, 2 Cal.4th 744, 756, 7 Cal.Rptr.2d 808, 828 P.2d 1195 (1992). Based on this rule, a number of California courts have found that discrimination and harassment are not part of the normal risks of employment and therefore, exclusivity does not apply to claims against employers that are based on such conduct. *See Yanowitz v. L'Oreal USA, Inc.*, 131 Cal.Rptr.2d 575 (2003) (holding that exclusivity did not apply to claim for negligent infliction of emotional distress against employer based on allegation that employer had retaliated against plaintiff for refusing to fire female sales associate who plaintiff's supervisor thought was unattractive); *Fretland v. County of Humboldt*, 69 Cal.App.4th 1478, 1491-92, 82 Cal.Rptr.2d 359 (1999) (holding that work-related injury discrimination is not a normal risk of the compensation bargain and therefore, claims for negligent and intentional infliction of emotional distress against employer were not barred by exclusivity rule); *Accardi v. The Superior Court*, 17 Cal.App.4th 341, 21 Cal.Rptr.2d 292 (1993)(holding that claim for intentional infliction of emotional distress against employer based on alleged harassment was not barred by the exclusivity rule because sexual harassment was "outside the normal employment environment").

The cases discussed above support the conclusion that Taylor has alleged facts which, if true, would establish that James was acting outside the course and scope of employment for the purposes of § 3601. Therefore, the Court concludes that Taylor's claim for negligent infliction of emotional distress is sufficient to survive the Motion as to James.

**C. *Claims Six and Nine (Discrimination, Harassment and Retaliation under FEHA)***

Plaintiff alleges two claims against James under FEHA: 1) Claim Six, which, although labeled as a claim for discrimination, includes allegations of both discrimination and harassment; [FN4] and 2) Claim Nine, for retaliation. James challenges these claims, arguing that because FEHA exempts Beth Eden from liability, he too must be exempt from liability. Below, the Court addresses each of the three theories of liability alleged-discrimination, harassment, and retaliation-to determine whether any of them can give rise to individual liability on the part of Defendant James. The Court concludes that they cannot.

FN4. Both FEHA and case law interpreting that statute have drawn a distinction between

discrimination claims and harassment claims. *See* Janken v. GM Hughes Electronics, 46 Cal.App.4th 55, 62, 53 Cal.Rptr.2d 741 (1996). As the Court explained in *Janken,* "the Legislature's differential treatment of harassment and discrimination is based on the fundamental distinction between harassment as a type of conduct not necessary to a supervisor's job performance, and business or personnel management decisions-which might later be considered discriminatory-as inherently necessary to performance of a supervisor's job." *Id.* Accordingly, the Court addresses discrimination and harassment separately in this Order.

**1. Discrimination**

[3] Under FEHA, liability for discrimination is addressed in § 12940(a). Section 12940(a) provides that is unlawful:

For an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, ***1081** sex, age, or sexual orientation of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

Cal. Gov.Code § 12940(a). In addition, § 12940(i) makes it unlawful for "any person ... to aid, abet, incite, compel or coerce the doing of any acts forbidden" by FEHA. Cal. Gov.Code § 12940(i). California courts have held that neither section allows a supervisor to be held *individually* liable for discrimination. *See* Reno v. Baird, 18 Cal.4th 640, 76 Cal.Rptr.2d 499, 957 P.2d 1333 (1998).

In *Reno v. Baird,* Plaintiff Kimberly Reno alleged that her former employer terminated her because of her medical condition. *Id.* at 643-644, 76 Cal.Rptr.2d 499, 957 P.2d 1333. Based on this allegation, Reno brought FEHA claims alleging discrimination against both the employer and the supervisors who made the decision to terminate Reno. *Id.* She argued that the supervisors were individually liable under FEHA because they were acting as agents of the employer, and therefore could be considered "an employer" for the purposes of § 12940(a). *Id.* The California Supreme Court rejected that argument, holding that the legislature did not intend to make individual supervisors liable for discriminatory acts. *Id.* at 663, 76 Cal.Rptr.2d 499, 957 P.2d 1333. The court explained, "[b]y limiting the threat of lawsuits to the employer itself, the entity ultimately responsible for discriminatory actions, the Legislature has drawn a balance between the goals of eliminating discrimination in the workplace and minimizing the debilitating burden of litigation on individuals." *Id.*

In reaching the conclusion that supervisors may not be held individually liable for discriminatory acts under FEHA, the court in *Reno v. Baird* adopted the reasoning of the court of appeal in *Janken v. GM Hughes Electronics,* 46 Cal.App.4th 55, 53 Cal.Rptr.2d 741 (1996). In *Janken,* the plaintiffs were former employees who alleged that they were terminated because they were over forty years old. *Id.* at 61, 53 Cal.Rptr.2d 741. The plaintiffs brought age discrimination claims under FEHA against both the employer and the supervisors who made the decision to terminate them. *Id.* The court addressed whether or not the supervisors could be sued individually. The court addressed two possible grounds for finding supervisors liable under FEHA. First, it addressed whether a supervisor could be considered an "employer" under FEHA by virtue of the fact that a supervisor acts as an agent of an employer in making personnel decisions. Second, the court addressed whether the FEHA provision prohibiting "any person" from "aiding and abetting" discrimination could give rise to individual liability on the part of supervisors. The court rejected both arguments for individual liability.

In addressing the first argument, the court in *Janken* focused on the definition of the word "employer" contained in Cal. Gov.Code § 12926(d). That section defines an employer as follows:

(d) "Employer" includes any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly, the state or any political or civil subdivision of the state, and cities, except as follows:

"Employer" does not include a religious association or corporation not organized for private profit.

Cal. Gov.Code § 12926(d). The court reasoned that the Legislature could not have intended to exempt small employers-that ***1082** is, those employing fewer than five employees-and yet hold individual

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

supervisors who were not themselves employers liable. 46 Cal.App.4th at 72, 53 Cal.Rptr.2d 741. "To so construe the statute would be 'incongruous' and would 'upset the balance' struck by the Legislature." *Id.* (citations omitted). In support of this conclusion, the court noted that allowing supervisors to be sued individually for discrimination would not "enhance the ability of victims of discrimination to recover monetary damages, while it can reasonably be expected to severely impair the exercise of supervisory judgment." *Id.*

The court in *Janken* also rejected the argument that supervisors could be held individually liable for discrimination under the provision of FEHA that prohibits "any person" from "aiding or abetting" discrimination. *Id.* at 77-79, 53 Cal.Rptr.2d 741. The court framed the issue as follows:

Aiding and abetting occurs when one helps another commit a prohibited act.... The concept of aiding and abetting involves two separate persons, one helping the other. Here we deal with individual employees of a corporate employer. A corporation can act only through its individual employees.... Our question is whether it can properly be said that a corporate employee is "aiding and abetting" his or her corporate employer when the corporate employee acts on behalf of the corporation by making a personnel decision or, more precisely, whether this is the meaning intended by the Legislature.

*Id.* at 77, 53 Cal.Rptr.2d 741. The court concluded the Legislature did not intend such a result. *Id.* The court reasoned that "aiding and abetting," like conspiracy, requires "concerted wrongful action." *Id.* at 78, 53 Cal.Rptr.2d 741. Under the law of conspiracy, it is established that there can be no claim of conspiracy between a corporate employer and a corporate employee. *Id.* Thus, applying similar reasoning, the court held that the legislature could not have intended, in enacting the "aiding and abetting" provision, to impose individual liability for discriminatory acts on supervisors. *Id.*

Based on the cases discussed above, it is clear that Defendant James cannot be sued individually for any acts of discrimination alleged by Taylor. James is not "an employer" for the purposes of § 12940(a). Nor can he be held individually liable for "aiding and abetting" Beth Eden in any alleged discriminatory acts. Therefore, to the extent that Claim Six is based on a theory of discrimination, Taylor's First Amended Complaint fails to state a claim as to James and should be dismissed.

**2. Harassment**

[4] In Claim Six, Taylor alleges that her FEHA claim is based not only on discrimination, but also on harassment. James argues that he is exempt from a claim of harassment because his employer is exempt as a religious entity under FEHA. The Court agrees.

Harassment is prohibited under FEHA in § 12940(j). That section provides that it is unlawful:

For an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, or any other person, because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, or sexual orientation, to harass an employee, an applicant, or a person providing services pursuant to a contract. Harassment of an employee, an applicant, or a person providing services pursuant to a contract by an employee other than an agent or supervisor shall be unlawful if the entity, or its agents or ***1083** supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. An entity shall take all reasonable steps to prevent harassment from occurring. Loss of tangible job benefits shall not be necessary in order to establish harassment.

Cal. Gov.Code § 12940(j). In contrast to subsection (a), discussed above, subsection (j) explicitly provides for individual liability on the part of employees under some circumstances. In particular, subsection (j)(3) provides as follows: An employee of an entity subject to this subdivision is personally liable for any harassment prohibited by this section that is perpetrated by the employee, regardless of whether the employer or covered entity knows or should have known of the conduct and fails to take immediate and appropriate corrective action.

Cal. Gov.Code § 12940(j)(3).[FN5] In addition, subsection (j)(4) carries its own definition of the word "employer," which provides in relevant part as follows:

FN5. Subdivision (j) was enacted in 1999 and legislatively overturned *Carrisales v. Department of Corrections,* 21 Cal.4th 1132, 90 Cal.Rptr.2d 804, 988 P.2d 1083 (1999),

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

which limited personal liability for harassment to supervisors, and exempted other employees.

(4)(A)For purposes of this subdivision only, "employer" means any person regularly employing one or more persons or regularly receiving the services of one or more persons providing services pursuant to a contract, or any person acting as an agent of an employer, directly or indirectly, the state, or any political or civil subdivision of the state, and cities. The definition of "employer" in subdivision (d) of Section 12926 applies to all provisions of this section other than this subdivision.
(B) Notwithstanding subparagraph (A), for purposes of this subdivision, "employer" does not include a religious association or corporation not organized for private profit.

Cal. Gov.Code § 12940(j)(4). The question here is whether the exemption for employers that are religious entities found in § 12940(j)(4) also applies to *employees* of such entities.

The Court has found no cases-California or otherwise-in which a court has addressed in any meaningful way the question of whether the religious entity exemption for employers extends to *employees* of such an entity.[FN6] James cites to *Pieszak v. Glendale Adventist Medical Center,* 112 F.Supp.2d 970 (C.D.Cal.2000) as holding that the exemption for religious entities also applies to employees of such entities. In *Pieszak,* a medical resident sued a medical center and two doctors in charge of the hospital's residency program for discrimination, harassment and retaliation under FEHA. *Id.* at 973. The medical center argued that it was exempt as a religious entity, and the court agreed. *Id.* In reaching this conclusion, the court rejected the plaintiff's argument that the religious entity exemption violates the State and Federal Constitutions' Establishment Clauses. *Id.* at 996. The court concluded that it does not and went on to dismiss the FEHA claims against both the medical center and the doctors. However, the ***1084** court did not provide any reasoning in support of its conclusion that the doctors, like the medical center, fell under the religious entity exemption. Nor did the court address the distinction between discrimination and harassment claims. Thus, *Pieszak* provides little guidance on this issue.

FN6. The Court notes that FEHA contains two religious entity exemptions, both of which use the same words. The first is contained in the general definition of "employer" found in Cal. Gov.Code § 12926(d), which provides, in relevant part, that " '[e]mployer' does not include a religious association or corporation not organized for private profit." This definition of "employer" applies to claims of discrimination and retaliation. The other exemption, which applies to harassment claims, is found in § 12940(j)(4), quoted above.

James also cites to the California Supreme Court's decision in *Kelly v. Methodist Hospital of Southern California,* 22 Cal.4th 1108, 95 Cal.Rptr.2d 514, 997 P.2d 1169 (2000). That case, however, provides even less guidance on the issue than *Pieszak.* In *Kelly,* a nurse alleged that her employer had discriminated against her on the basis of age, in violation of California's fundamental public policy against age discrimination, as embodied in FEHA. *Id.* at 1112, 95 Cal.Rptr.2d 514, 997 P.2d 1169. The hospital brought a motion for summary judgment on the basis that it was a religious entity, which was granted by the trial court and, ultimately, affirmed by the California Supreme Court. *Id.* The issue in the case was whether a medical hospital affiliated with a church fell under the religious entity exemption of FEHA. *Id.* Although the plaintiff apparently sued her supervisor as well as her employer, there is no mention of the claims against the supervisor in the court's decision. Indeed, it is not even clear whether the plaintiff brought any FEHA claims against her supervisor. Therefore, *Kelly* provides little insight with regard to the issue here, that is, whether the religious entity exemption applies to employees of exempt employers.

In deciding the reach of this statute, the Court looks to its language. With respect to harassment, the Court finds particularly significant the fact that in enacting subdivision (j), the Legislature allowed the imposition of personal liability for harassment only on an employee "of an entity subject to this subdivision." Cal. Gov.Code § 12940(j)(3). Subsection (j)(4)(B), in turn, makes clear that a "religious association or corporation not organized for private profit" is *not* subject to subdivision (j). An employee of a "religious association or corporation," therefore, is not an employee of "an entity subject to this subdivision" and is not covered by the subsection making employees liable for harassment. Accordingly, the Court concludes that the Legislature did not intend to allow

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

for the imposition of personal liability for harassment on employees of employers that fall under the religious entity exemption contained in subdivision (j).

### 3. Retaliation

[5] Finally, the Court must address whether FEHA allows for the imposition of personal liability for retaliation on a supervisor, where the supervisor is employed by an employer that falls under the religious entity exemption. While this is a close question, the Court concludes that it does not.

Retaliation is addressed in subdivision (h), which provides that it is unlawful:
For any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part.

Cal. Gov.Code § 12940(h). Courts have held that because this provision includes not only employers but "any person," supervisors may be held personally liable for retaliation. *See* Winarto v. Toshiba America Electronics Components, Inc., 274 F.3d 1276, 1288 (holding that under FEHA, supervisor could be held personally liable for retaliation); Walrath v. Sprinkel, 99 Cal.App.4th 1237, 1241, 121 Cal.Rptr.2d 806 (2002) (same). However, this Court has found no cases which addresses whether ***1085** subdivision (h) allows for the imposition of personal liability on an employee who is employed by an employer that falls under the religious entity exemption.

As noted above, the religious entity exemption applicable to retaliation is found in § 12926(d), which provides, in relevant part, that the term " '[e]mployer' does not include a religious association or corporation not organized for private profit." While § 12926(d) does not explicitly address employees of such entities, the Court concludes that, with respect to retaliation claims at least, the Legislature intended to include employees within the scope of the religious entity exemption for employers. In the words of the *Janken* court, it would "upset the balance struck by the Legislature" if the Court were to construe the statute as allowing for the imposition of individual liability for retaliation on employees of religious entities. *See* Janken, 46 Cal.App.4th at 71, 53 Cal.Rptr.2d 741. First, it would be incongruous to impose liability on individual employees of such entities for retaliation when their employers are exempt. Given that a FEHA claim for retaliation requires that a plaintiff establish an adverse employment action, *see* Akers v. County of San Diego, 95 Cal.App.4th 1441, 1453, 116 Cal.Rptr.2d 602 (2002), and that that action is, typically, taken on behalf of the employer, *see* Janken, 46 Cal.App.4th at 77-78, 53 Cal.Rptr.2d 741, it is inconceivable that the Legislature could have intended to exempt religious entity employers from retaliation claims while leaving the employees of such entities liable for retaliation.

Indeed, if all employees of exempt religious entities were held to the standard of FEHA's retaliation provisions, it would have the effect of forbidding retaliation by the exempt religious entity itself. Corporations and other entities only act through their employees. If the employees are forbidden from committing certain acts, the entity is effectively barred as well. Accordingly, if the Court were to conclude that employees of exempt religious entities were subject to retaliation suits under FEHA, it would undermine the statute's exemption for the entities.

Second, the Court finds support for this conclusion in the fact that the Legislature has exempted employees of religious entities from liability for harassment and has exempted *all* supervisors from liability for discrimination. The Court simply finds no basis on which to conclude that the Legislature intended to carve out retaliation claims as the one type of FEHA claim for which employees of religious entities are to be held individually liable. Accordingly, the Court concludes that Taylor's claim for retaliation against James fails to state a claim under Fed.R.Civ.P. 12(b)(6).

## IV. *CONCLUSION*

For the reasons stated above, Defendant Beth Eden's Motion is GRANTED. Defendant James' Motion is GRANTED as to Claims Six and Nine, which are dismissed with prejudice, and DENIED as to Claim Four.

IT IS SO ORDERED.

N.D.Cal.,2003.
Taylor v. Beth Eden Baptist Church
294 F.Supp.2d 1074

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

294 F.Supp.2d 1074
294 F.Supp.2d 1074
**(Cite as: 294 F.Supp.2d 1074)**
Page 10

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
DALEY & HEFT, LLP, ATTORNEYS AT LAW
ROBERT W. BROCKMAN, ESQ., SBN 123546
GOLNAR J. FOZI, ESQ., Esq., SBN 167674
462 STEVENS AVENUE, SUITE 201
SOLANA BEACH, CA 92075
TELEPHONE NO: 858-755-5666 FAX NO.: 858-755-7870
ATTORNEY FOR (Name): Defendants CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA

FILED
Clerk of the Superior Court
DEC 18 2007
BY: WILKINSON

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

_ COUNTY COURTHOUSE, 220 W. BROADWAY, SAN DIEGO, CA 92101-3814
_ HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101-3827
_ FAMILY COURT, 1501 6TH AVE., SAN DIEGO, CA 92101-3296
_ MADGE BRADLEY BLDG., 1409 4TH AVE., SAN DIEGO, CA 92101-3105
_ KEARNY MESA BRANCH, 8950 CLAREMONT MESA BLVD., SAN DIEGO, CA 92123-1187
X NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92083-6643
_ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020-3941
_ RAMONA BRANCH, 1428 MONTECITO RD., RAMONA, CA 92065-5200
_ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910-5649

**PLAINTIFF: SONDRA BOONE**

**DEFENDANTS: CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA and DOES 1-20**

**PROOF OF SERVICE BY FIRST-CLASS MAIL – CIVIL**

CASE NUMBER:
**37-2007-00057536-CU-DF-NC**

I am over 18 years of age and **not a party to this action.** I am a resident of or employed in the county where the mailing took place.

My residence or business address is: 462 Stevens Avenue, Suite 201, Solana Beach, California 92075.
On the date indicated below, I mailed from (city and state): Solana Beach, California the following **documents** *(specify)*:

**NOTICE OF LODGMENT OF EXHIBITS IN SUPPORT OF DEFENDANTS' DEMURRER; REQUEST FOR JUDICIAL NOTICE**

[ ] The documents are listed in the Attachment to Proof of Service by First-Class Mail - Civil (Document Served)

4. I served the documents by enclosing them in an envelope and (check one):

a. [ ] **depositing** the sealed envelope with the United States Postal Service with the postage fully prepaid.

b. [x ] **placing** the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

5. The envelope was addressed and mailed as follows: **SEE ATTACHED MAILING LIST**

[x] The name and address of each person to whom I mailed the documents is listed in the Attachment to Proof of Service by First-Class Mail - Civil (Persons Served)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: December 18, 2007

Chiai Chon

POS-030 [New January 1, 2005 **PROOF OF SERVICE BY MAIL** Code of Civil Procedure, §§ 1013, 1013a

SERVICE LIST

| | |
|---|---|
| STUTZ ARTIANO SHINOFF & HOLTZ<br>A Professional Corporation<br>Daniel R. Shinoff, Esq.<br>Gil Abed, Esq.<br>Ryan L. Church, Esq.<br>2488 Historic Decatur Road, Suite 200<br>San Diego, CA  92106-6113<br>Tel.: (619) 232-3122<br>Fax: (619) 232-3264<br>**Attorneys for Plaintiff SONDRA BOONE** | |

DALEY & HEFT, ATTORNEYS AT LAW
ROBERT W. BROCKMAN, ESQ. (SBN 123546)
GOLNAR J. FOZI, ESQ. (SBN 167674)
462 STEVENS AVENUE, SUITE 201
SOLANA BEACH, CA 92075
TELEPHONE: (858) 755-5666
FACSIMILE: (858) 755-7870

FILED
Clerk of the Superior Court
DEC 18 2007
BY: WILKINSON

Attorneys for Defendants
CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE and FRANCISCO MESQUITA

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO, NORTH COUNTY DIVISION**

SONDRA BOONE,

Plaintiff,

v.

CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA and DOES 1-20,

Defendants.

Case No. 37-2007-00057536-CU-DF-NC

**REQUEST FOR JUDICIAL NOTICE**

**DEPT : 28**
**ICJ : Michael B. Orfield**
**T/D : Not Set**

Defendants CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, and FRANCISCO MESQUITA hereby request that the Court take judicial notice pursuant to Evidence Code Section 452(c), which allows the court to take judicial notice of records and files of state administrative agencies. (See e.g. Fowler v. Howell (1996) 42 Cal.App.4th 1746, 1750; Elmore v. Oak Valley Hospital District (1988) 204 Cal.App.3d 716, 722 (court may take judicial notice of a statement of identity filed by the defendant with the Secretary of State.) Defendants request that the Court take judicial notice of the following:

///

///

///

///

12/7

1. Secretary of State, Statement of Information (Domestic Nonprofit Corporation) for Carlsbad Community Church, attached as Exhibit A.

Dated: December 7, 2007

DALEY & HEFT, LLP

By: [signature]

ROBERT W. BROCKMAN
GOLNAR J. FOZI
Attorneys for Defendants CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE and FRANCISCO MESQUITA

EXHIBIT C

DALEY & HEFT, ATTORNEYS AT LAW
ROBERT W. BROCKMAN, ESQ. (SBN 123546)
GOLNAR J. FOZI, ESQ. (SBN 167674)
462 STEVENS AVENUE, SUITE 201
SOLANA BEACH, CA 92075
TELEPHONE: (858) 755-5666
FACSIMILE: (858) 755-7870

Attorneys for Defendants
CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE and FRANCISCO MESQUITA

07 DEC 25 PM 3:46
CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO, NORTH COUNTY DIVISION**

SONDRA BOONE,

Plaintiff,

v.

CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA and DOES 1-20,

Defendants.

Case No. 37-2007-00057536-CU-DF-NC

**DEFENDANTS CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, AND FRANCISCO MESQUITA'S NOTICE OF MOTION AND MOTION TO STRIKE ALLEGATIONS AND CLAIMS IN PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**DEPT : 28**
**ICJ : Michael B. Orfield**
**T/D : Not Set**

**NOTICE IS HEREBY GIVEN** that on March 14, 2008, at 1:30 p.m., in Department 28 of the above-referenced court, located at 325 S. Melrose Drive, Vista, California, defendants CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, and FRANCISCO MESQUITA will move this court pursuant to California Code of Civil Procedure section 435 for an order striking the following portions of plaintiff's complaint on the grounds that the challenged portions are improper.

1. Paragraphs 53, 68, 77, 87, and prayer for relief 3 (punitive damages against CARLSBAD COMMUNITY CHURCH);

2. Page 7, line 19, irrelevant and improper allegations regarding Labor Code Section 1102.5;

1

DEFENDANTS CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, AND FRANCISCO MESQUITA'S NOTICE OF MOTION AND MOTION TO STRIKE ALLEGATIONS AND CLAIMS IN PLAINTIFF'S COMPLAINT

3. Paragraphs 88 and 96 (prayer for attorneys fees pursuant to CCP Section 1021.5.)

This motion will be based on this written Notice, the accompanying Memorandum of Points and Authorities, and on pleadings and documents on file herein and upon such oral or documentary evidence as the court may receive at the hearing on this motion to strike.

Dated: December 17, 2007

DALEY & HEFT, LLP

By: [signature]
ROBERT W. BROCKMAN
GOLNAR J. FOZI
Attorneys for Defendants CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE and FRANCISCO MESQUITA

2

DEFENDANTS CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, AND FRANCISCO MESQUITA'S NOTICE OF MOTION AND MOTION TO STRIKE ALLEGATIONS AND CLAIMS IN PLAINTIFF'S COMPLAINT

**STUTZ ARTIANO SHINOFF & HOLTZ**
*A Professional Corporation*
Daniel R. Shinoff, Esq. (State Bar No. 99129)
Gil Abed, Esq. (State Bar No. 195771)
Ryan L. Church, Esq. (State Bar No. 249484)
2488 Historic Decatur Road, Suite 200
San Diego, CA 92106-6113
Tel: (619) 232-3122
Fax: (619) 232-3264

Attorneys for Plaintiff SONDRA BOONE

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SAN DIEGO - NORTH COUNTY BRANCH**

SONDRA BOONE,

Plaintiff,

v.

CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA and DOES 1-20,

Defendants.

Case No.

IC J: Michael J. Orfield
DEPT: 29
DATE: May 9, 2008
TIME: 1:30 p.m.

**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES FOR: WRONGFUL TERMINATION; RETALIATION; AGE DISCRIMINATION AND HARASSMENT; GENDER DISCRIMINATION AND HARASSMENT; DEFAMATION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

COMPLAINT FILED: 10/29/07
TRIAL DATE: Not Set

Plaintiff, SONDRA BOONE, hereinafter complains and alleges as follows:

**I.**

**PARTIES**

1. At all times herein mentioned, Plaintiff, SONDRA BOONE ("Plaintiff" or "Sandy Boone") was and is a resident of the County of San Diego, State of California.

///

///

///

STUTZ ARTIANO SHINOFF & HOLTZ
*A Professional Corporation*

2. Plaintiff is informed and believes, and thereon alleges, that Defendant Carlsbad Community Church ("Church") was and is an entity operating in the County of San Diego at 3175 Harding Street, Carlsbad, California 92008.

3. Plaintiff is informed and believes, and thereon alleges, that Defendants Tom Wood, Dick Lee, and Francisco Mesquita were, at all times, agents, managers, co-conspirators, aiders, abettors, fiduciaries, representatives or employees of the Church and in doing the things alleged, were acting in concert with, under the direction of, and within the course and scope of the agency, conspiracy, or employment relationship.

4. Plaintiff is informed and believes that said individuals, Tom Wood, Dick Lee, and Francisco Mesquita were acting in their official and individual capacity at all times mentioned herein.

5. Plaintiff sues DOES 1-20, inclusive, under fictitious names. Their true names and capacities are unknown to the Plaintiff. When their true names and capacities are ascertained, Plaintiff will amend this Complaint by inserting their true names and capacities herein. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the harm suffered the Plaintiff.

6. Each of the defendants DOES 1-20 were the agents, co-conspirators, aiders, abettors, fiduciaries, representatives or employees of the Church and in doing the things alleged, were acting in concert with, under the direction of, and within the course and scope of the agency, conspiracy, or employment relationship.

## II.

## VENUE

7. Venue in this matter is proper within the Superior Court, County of San Diego, as a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred within the County of San Diego, State of California. The injuries and damages sustained by Plaintiff, as more fully set forth herein, occurred in the County of San Diego, State of California. The conduct of the Defendants, and each of them, occurred and directly impacted the Plaintiff within the County of San Diego, State of California.

STUTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

## III.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. On or about August 14, 2007, Plaintiff filed a Complaint against Defendants alleging harassment, retaliation, and discrimination with the Department of Fair Employment and Housing ("DFEH"). Plaintiff received a Right-to-Sue letter from DFEH dated August 23, 2007. A true and correct copy of the FEHA Right-to-Sue letter is attached herewith as Exhibit "A." Plaintiff also filed a Complaint against Defendants alleging harassment, retaliation, and discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). Plaintiff received a Right-to-Sue letter from EEOC dated December 27, 2007. A true and correct copy of the EEOC Right-to-Sue letter is attached herewith as Exhibit "B."

## IV.

## GENERAL ALLEGATIONS

9. Plaintiff, who is now 61 years of age, began her employment with the Church in September of 1987.

10. Plaintiff was initially hired by the Church as a Data Base Specialist and later was promoted to the Administrative Assistant to the Senior Pastor.

11. Throughout her employment with the Church, Plaintiff has only served in the Administrative capacity and has never held any position that was germane to the religious functioning of the Church.

12. Plaintiff hereby alleges that on many occasions during the course of her employment, a supervisor, Douglas Bosler, subjected Plaintiff and other female Church employees to abusive and threatening verbal and physical behavior.

13. Plaintiff alleges that during her employment at the Church, she was consistently subjected to discriminatory treatment based on her age. Those who subjected Plaintiff to the discriminatory treatment were Church employees and/or agents, including but not limited Defendants Tom Wood, Dick Lee, Francisco Mesquita, and DOES 1-20.

14. Plaintiff alleges that during her employment at the Church, she was consistently subjected to discriminatory treatment based on her sex. Those who subjected Plaintiff to the

STUTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

discriminatory treatment were Church employees and/or agents, including but not limited Defendants Tom Wood, Dick Lee, Francisco Mesquita, and DOES 1-20.

15. At or around September 1, 2006, Plaintiff and four other female Church employees were left alone in the Church office for the day.

16. Plaintiff and the other female Church employees felt unsafe working in the office because indigent visitors often came to the office seeking assistance.

17. On or about September 4, 2006, Plaintiff and four other female Church employees submitted a written complaint to Senior Pastor Charles Youngkin and to the Board of Elders regarding their health and safety concerns.

18. Plaintiff and the other female employees requested that their employer or any supervisor on behalf of their employer not subject them to any of the conditions that they were complaining of, or any retaliation due to their filing of a complaint.

19. On or about September 8, 2006, Supervisor Bosler entered Plaintiff's office and verbally threatened, physically intimidated, and harassed the Plaintiff regarding her filing of the September 4, 2006 complaint.

20. As a result of the September 8, 2006 confrontation with Supervisor Bosler, Plaintiff's fear of her safety at her workplace had increased.

21. On or about September 8, 2006, Plaintiff filed one of a series of complaints with the Church regarding Supervisor Bosler's verbal threats, physical intimidation, harassment, and retaliation.

22. The Church took no immediate actions to remedy any concerns raised by the Plaintiff, and Plaintiff remained in fear of her safety.

23. On or about January of 2007, Francisco Mesquita was hired as the Church's Pastor of Administration.

24. In the course and scope of Plaintiff's employment at the Church, Plaintiff had rightful access to a Church database ("Database") that details the Church finances.

25. During the course of her employment, Plaintiff became aware of potential improper financial activity by Francisco Mesquita and Church Treasure Dick Lee as they relate

to Church funds. The financial improprieties included, but were not limited to, Mesquita and Lee's unauthorized and excessive use of Church funds.

26. On or about March 19, 2007, a Church Administration Ministry Team Member requested an investigation into possible financial improprieties within the Church.

27. In or around March and April of 2007, Plaintiff openly supported the Church Administration Ministry Team Member's request to initiate an investigation into potential misuse of Church funds. Plaintiff was aware of possible improper financial activity by Francisco Mesquita and Church Treasure Dick Lee and wished to discuss this with investigators.

28. In or around April of 2007, Plaintiff had a meeting with her supervisor, Charlie Younkin, regarding the investigation. Plaintiff expressed support of the investigation, and expressed her desire to discuss the possible improper financial accounting with the investigators. Younkin became irrate over her support and desire to share information with investigators. During the course of the meeting, Mr. Younkin stated that an investigation would only occur "over my dead body."

29. Plaintiff was intimidated and fearful of her safety following the meeting she had with Charlie Younkin on or around April of 2007.

30. On or about April 22, 2007, an official investigation into financial improprieties as they relate to Church funds and personnel issues commenced.

31. As part of the investigation, the investigative team made it clear that they intended to interview all administrative staff members, including the Plaintiff.

32. The investigative team assured all employees that they would not suffer any form of retaliation or harassment after speaking with the investigators.

33. On or about April 23, 2007, prior to the Church Administration Ministry's interview with Plaintiff, Francisco Mesquita and Tom Wood terminated the Plaintiff.

34. Plaintiff is informed and believes that on or about April 25, 2007, Francisco Mesquita falsely informed Church employees that she (Plaintiff) broke into the Church after being terminated and destroyed her former work computer.

35. Plaintiff is informed and believes that after April 25, 2007, Francisco Mesquita

STUTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

continued to tell employees that Plaintiff illegally entered the Church and destroyed her computer following her April 23, 2007 termination.

36. Plaintiff is informed and believes that on or about August 26, 2007, an email was sent from Dick Lee to Paula Padilla, a member of the community, stating that Sandy Boone (Plaintiff) was terminated because she "Had done things that were evil and absolutely despicable."

37. Plaintiff is informed and believes that on or about September 1, 2007, Tom Wood called Carol Nave, a member of the community, and stated that Sandy Boone was fired because she did "grievous acts."

38. Plaintiff is informed and believes that on or about September 3, 2007, Tom Wood stated to Clyde Cobb, a member of the community, that Plaintiff was terminated because she had done "Evil things."

39. Plaintiff is informed and believes that Defendants continue to make slanderous and defamatory statements against her to third parties.

## V.

## FIRST CAUSE OF ACTION

**Wrongful Termination of Employment Based on Gender, in Violation of Public Policy, Government Code section 12940 et seq., Title VII of the Civil Rights Act, and 42 U.S.C. § 2000e, et seq.**

**[AS AGAINST DEFENDANT CHURCH AND DOES 1-20 INCLUSIVE]**

40. Plaintiff realleges and incorporate herein by reference the allegations of paragraphs 1 through 39, inclusive.

41. At all times herein mentioned, Plaintiff was an employee of the Defendant Carlsbad Community Church.

42. The Constitution of the State of California, Article 1, section 8; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), Government Code section 12940 et seq., prohibit, among other things, discharging, harassing, retaliating, defaming or discriminating against an employee based on her sex. These provisions set forth a fundamental public policy. The Fair Employment and Housing Act applies to this action notwithstanding subparagraph

6

Plaintiff's FAC for Damages for Wrongful Termination; Retaliation; Age Discrimination and Harassment; Gender Discrimination and Harassment; Defamation; Intentional Infliction of Emotional Distress

@PFDesktop\::ODMA/WORLDOX/G:/DATA/3138/1/PL/S7032232.WPD

STUTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

(j)(4)(B) of section 12940 of the Government Code, because of the operation of subparagraph (f)(2) of section 12926.2 of the Government Code, and the secular nature of Plaintiff's employment.

43. At all times herein mentioned, the aforementioned provisions were in full force and effect and delineated fundamental, substantial, and well-established policies that benefit the public at large rather than private interests and were binding on the Defendants at the time of Plaintiff's termination.

44. Plaintiff is a member of the class entitled to protection under the aforementioned code sections.

45. Plaintiff is informed and believes that she was terminated due to her gender–female.

46. Plaintiff is informed and believes that she was terminated as an act of retaliation for her demand to work in a workplace free and clear of discrimination and harassment based on gender in violation of Government Code section 12940, Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 2000e-2(a)(1), or free and clear of intimidation for her request to provide a safe and healthy workplace.

47. As a direct and proximate result of the violation of the aforementioned federal and state laws, Plaintiff sustained and continues to suffer: (1) loss of past and future income and other valuable employee benefits; (2) loss of employment-related opportunities for growth; (3) damage to her professional reputation; and (4) emotional distress, anxiety and injury to her psyche, all to her damage according to proof at trial. Plaintiff claims such amounts as damages together with prejudgment interest pursuant to Civil Code sections 3287 and 3288, and/or any other provision of law providing for prejudgment interest.

48. Defendants committed said wrongful termination against Plaintiff maliciously, fraudulently and oppressively with the wrongful intent of injuring Plaintiff for an improper and evil motive which constitutes a malicious and conscious disregard of Plaintiff's rights. Plaintiff is thereby entitled to punitive damages pursuant to California Civil Code section 3294 from all defendants according to proof at the time of trial.

7

Plaintiff's FAC for Damages for Wrongful Termination; Retaliation; Age Discrimination and Harassment; Gender Discrimination and Harassment; Defamation; Intentional Infliction of Emotional Distress

@PFDesktop\::ODMA/WORLDOX/G:/DATA/3138/1/PL/S7032232.WPD

STUTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

49. Plaintiff seeks an award of attorneys fees on this cause of action pursuant to 42 U.S.C. § 2000e-5(k), Government Code section 12965, and Code of Civil Procedure section 1021.5.

VI.

**SECOND CAUSE OF ACTION**

**Wrongful Termination of Employment Based on Age, in Violation of Government Code section 12940 et seq., and Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.**

**[AS AGAINST DEFENDANT CHURCH AND DOES 1-20 INCLUSIVE]**

50. Plaintiff realleges and incorporate herein by reference the allegations of paragraphs 1 through 49, inclusive.

51. At all times herein mentioned, Plaintiff was an employee of the Defendant Carlsbad Community Church.

52. 29 U.S.C. § 621 et seq., including 29 U.S.C. § 623(a)(1) and Government Code section 12940 et seq., prohibit, among other things, discharging, harassing, retaliating, defaming or discriminating against an employee based on her age. The Fair Employment and Housing Act applies to this action notwithstanding subparagraph (j)(4)(B) of section 12940 of the Government Code, because of the operation of subparagraph (f)(2) of section 12926.2 of the Government Code, and the secular nature of Plaintiff's employment.

53. At all times herein mentioned, the aforementioned provisions were in full force and effect and delineated fundamental, substantial, and well-established policies that benefit the public at large rather than private interests and were binding on the Defendants at the time of Plaintiff's termination.

54. Plaintiff is a member of the class entitled to protection under the aforementioned code sections.

55. Plaintiff is informed and believes that she was terminated due to her age–61.

///

///

///

8

Plaintiff's FAC for Damages for Wrongful Termination; Retaliation; Age Discrimination and Harassment; Gender Discrimination and Harassment; Defamation; Intentional Infliction of Emotional Distress

@PFDesktop\::ODMA/WORLDOX/G:/DATA/3138/1/PL/S7032232.WPD

STUTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

56. Plaintiff is informed and believes that she was terminated as an act of retaliation for her demand to work in a workplace free and clear of discrimination and harassment based on age in violation of Government Code section 12940, 29 U.S.C. § 621 et seq., or free and clear of intimidation for her request to provide a safe and healthy workplace.

57. As a direct and proximate result of the violation of the aforementioned federal and state laws, Plaintiff sustained and continues to suffer: (1) loss of past and future income and other valuable employee benefits; (2) loss of employment-related opportunities for growth; (3) damage to her professional reputation; and (4) emotional distress, anxiety and injury to her psyche, all to her damage according to proof at trial. Plaintiff claims such amounts as damages together with prejudgment interest pursuant to Civil Code sections 3287 and 3288, and/or any other provision of law providing for prejudgment interest.

58. Defendants committed said wrongful termination against Plaintiff maliciously, fraudulently and oppressively with the wrongful intent of injuring Plaintiff for an improper and evil motive which constitutes a malicious and conscious disregard of Plaintiff's rights. Plaintiff is thereby entitled to punitive damages pursuant to California Civil Code section 3294 from all defendants according to proof at the time of trial.

59. Plaintiff seeks an award of attorneys fees on this cause of action pursuant to 29 U.S.C. § 626; Government Code section 12965, and Code of Civil Procedure section 1021.5.

## VII.

## THIRD CAUSE OF ACTION

## Wrongful Termination of Employment in Violation of Labor Code §§ 1102.5 and 6400

## [AS AGAINST DEFENDANT CHURCH AND DOES 1-20 INCLUSIVE]

60. Plaintiff realleges and incorporate herein by reference the allegations of paragraphs 1 through 59, inclusive.

61. At all times herein mentioned, Plaintiff was an employee of the Defendant Carlsbad Community Church.

62. Labor Code sections 1102.5 and 6400 et seq. prohibit, among other things, discharging, harassing, retaliating, defaming or discriminating against an employee based the

STUTZ ARTIANO SHINOFF & HOLTZ
*A Professional Corporation*

employee's complaints of unsafe working conditions and disclosing actions which are prohibited under the law.

63. At all times herein mentioned, the aforementioned provisions were in full force and effect and delineated fundamental, substantial, and well-established policies that benefit the public at large rather than private interests and were binding on the Defendants at the time of Plaintiff's termination.

64. Plaintiff is a member of the class entitled to protection under the aforementioned code sections.

65. Plaintiff's termination on April 23, 2007, was in retaliation for (1) her filing of a series of the September 4, 2006, internal complaint regarding the safety of her and other female employees; (2) her filing of a series of complaints starting on September 8, 2006, regarding Supervisor Bosler's harassment, retaliation, and improper treatment towards her; and (3) her expressed support of an internal financial audit of the Church in connection with accusations of financial improprieties.

66. Plaintiff is also informed and believes that she was terminated as an act of retaliation for her demand to work in a workplace free and clear of discrimination and harassment based on gender in violation of Government Code section 12940, Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 2000e-2(a)(1), or free and clear of intimidation for her request to provide a safe and healthy workplace.

67. As a direct and proximate result of the violation of the aforementioned federal and state laws, Plaintiff sustained and continues to suffer: (1) loss of past and future income and other valuable employee benefits; (2) loss of employment-related opportunities for growth; (3) damage to her professional reputation; and (4) emotional distress, anxiety and injury to her psyche, all to her damage according to proof at trial. Plaintiff claims such amounts as damages together with prejudgment interest pursuant to Civil Code sections 3287 and 3288, and/or any other provision of law providing for prejudgment interest.

68. Defendants committed said wrongful termination against Plaintiff maliciously, fraudulently and oppressively with the wrongful intent of injuring Plaintiff for an improper and

10

Plaintiff's FAC for Damages for Wrongful Termination; Retaliation; Age Discrimination and Harassment; Gender Discrimination and Harassment; Defamation; Intentional Infliction of Emotional Distress

@PFDesktop\::ODMA/WORLDOX/G:/DATA/3138/1/PL/S7032232.WPD

STUTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

evil motive which constitutes a malicious and conscious disregard of Plaintiff's rights. Plaintiff is thereby entitled to punitive damages pursuant to California Civil Code section 3294 from all defendants according to proof at the time of trial.

69. Plaintiff seeks an award of attorneys fees on this cause of action pursuant to Government Code section 12965 and Code of Civil Procedure section 1021.5.

**VIII.**

**FOURTH CAUSE OF ACTION**

**Retaliation in violation of Labor Code sections 1102.5 and 6310 et seq.**

**[As Against All Defendants]**

70. Plaintiff realleges and incorporate herein by reference the allegations of paragraphs 1 through 69, inclusive.

71. Plaintiff's termination on April 23, 2007, was in retaliation for (1) her filing of a series of the September 4, 2006, internal complaint regarding the safety of her and other female employees; (2) her filing of a series of complaints starting on September 8, 2006, regarding Supervisor Bosler's harassment, retaliation, and improper treatment towards her; and (3) her expressed support of an internal financial audit of the Church in connection with accusations of financial improprieties.

72. As a result of Defendants' retaliation in terminating Plaintiff's employment, Plaintiff has suffered and continues to suffer substantial loss and damage, including lost salary, bonuses, lost retirement benefits, medical expenses and related harm, in an amount within the jurisdictional limits of this court which will be proven according to proof at the time of trial.

73. Defendant's conduct has caused Plaintiff embarrassment, humiliation, anger, mental anguish and emotional upset in an amount within the jurisdictional limits of this court, which will be proven according to proof at the time of trial.

74. Defendants committed said retaliation against Plaintiff maliciously, fraudulently and oppressively with the wrongful intent of injuring Plaintiff for an improper and evil motive which constitutes a malicious and conscious disregard of Plaintiff's rights. Defendants engaged in retaliation against Plaintiff while acting in their official capacity as managers, agents,

11

Plaintiff's FAC for Damages for Wrongful Termination; Retaliation; Age Discrimination and Harassment; Gender Discrimination and Harassment; Defamation; Intentional Infliction of Emotional Distress

@PFDesktop\::ODMA/WORLDOX/G:/DATA/3138/1/PL/S7032232.WPD

STUTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

directors, and supervisors of the Church. Plaintiff is thereby entitled to punitive damages pursuant to California Civil Code section 3294 from all defendants according to proof at the time of trial.

**IX.**

**FIFTH CAUSE OF ACTION**

**Retaliation in violation of Labor Code sections 6400 et seq.**

**[AS AGAINST ALL DEFENDANTS]**

75. Plaintiff realleges and incorporate herein by reference the allegations of paragraphs 1 through 74, inclusive.

76. Pursuant to Labor Code section 6400 et seq., Defendants have a statutory duty to furnish employment and a place of employment that his safe and healthful for the employees therein.

77. On or before September 4, 2006, Plaintiff reasonably believed that her work environment was unsafe and unhealthful.

78. On or about September 4, 2006, Plaintiff complained to her supervisors of an unsafe work environment.

79. Following Plaintiff's September 4, 2006 complaint, Defendants failed to furnish the Plaintiff with a place of employment that is safe and healthful. Instead, following the Plaintiff's filing of a complaint, Defendants allowed for Supervisor Bosler to physically and verbally retaliate against Plaintiff.

80. As a direct and proximate result of the violation of Labor Code section 6400 et seq., Plaintiff sustained and continues to suffer: (1) loss of past and future income and other valuable employee benefits; (2) loss of employment-related opportunities for growth; (3) damage to her professional reputation; and (4) emotional distress, anxiety and injury to her psyche, all to her damage according to proof at trial. Plaintiff claims such amounts as damages together with prejudgment interest pursuant to Civil Code sections 3287 and 3288, and/or any other provision of law providing for prejudgment interest.

81. Defendants committed said retaliation against Plaintiff maliciously, fraudulently

12

Plaintiff's FAC for Damages for Wrongful Termination; Retaliation; Age Discrimination and Harassment; Gender Discrimination and Harassment; Defamation; Intentional Infliction of Emotional Distress

@PFDesktop\::ODMA/WORLDOX/G:/DATA/3138/1/PL/S7032232.WPD

STUTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

and oppressively with the wrongful intent of injuring Plaintiff for an improper and evil motive which constitutes a malicious and conscious disregard of Plaintiff's rights. Defendants engaged in retaliation against Plaintiff while acting in their official capacity as managers, agents, directors, and supervisors of the Church. Plaintiff is thereby entitled to punitive damages pursuant to California Civil Code section 3294 from all defendants according to proof at the time of trial.

82. Plaintiff seeks an award of attorneys fees on this cause of action pursuant to Government Code section 12965 and Code of Civil Procedure section 1021.5.

**X.**

**SIXTH CAUSE OF ACTION**

**Retaliation in violation of 42 U.S.C. §2000e-3(a)**

**[AS AGAINST ALL DEFENDANTS]**

83. Plaintiff realleges and incorporate herein by reference the allegations of paragraphs 1 through 82, inclusive.

84. On or about September 4, 2006, Plaintiff and four other female Church employees submitted a written complaint to Senior Pastor Charles Youngkin and to the Board of Elders regarding their health and safety concerns while at the workplace.

85. Following Plaintiff's September 4, 2006 complaint, Defendants failed to furnish the Plaintiff with a place of employment that is safe. Instead, following the Plaintiff's filing of a complaint, Defendants allowed for Supervisor Bosler to physically and verbally retaliate against Plaintiff.

86. As a direct and proximate result of the violation of 42 U.S.C. §2000e-3(a), Plaintiff sustained and continues to suffer: (1) loss of past and future income and other valuable employee benefits; (2) loss of employment-related opportunities for growth; (3) damage to her professional reputation; and (4) emotional distress, anxiety and injury to her psyche, all to her damage according to proof at trial. Plaintiff claims such amounts as damages together with prejudgment interest pursuant to Civil Code sections 3287 and 3288, and/or any other provision of law providing for prejudgment interest.

13

Plaintiff's FAC for Damages for Wrongful Termination; Retaliation; Age Discrimination and Harassment; Gender Discrimination and Harassment; Defamation; Intentional Infliction of Emotional Distress

@PFDesktop\::ODMA/WORLDOX/G:/DATA/3138/1/PL/S7032232.WPD

STUTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

87. Defendants committed said retaliation against Plaintiff maliciously, fraudulently and oppressively with the wrongful intent of injuring Plaintiff for an improper and evil motive which constitutes a malicious and conscious disregard of Plaintiff's rights. Defendants engaged in retaliation against Plaintiff while acting in their official capacity as managers, agents, directors, and supervisors of the Church. Plaintiff is thereby entitled to punitive damages pursuant to California Civil Code section 3294 from all defendants according to proof at the time of trial.

88. Plaintiff seeks an award of attorneys fees on this cause of action pursuant to 42 U.S.C. § 2000e-5(k) and Code of Civil Procedure section 1021.5.

**XI.**

**SEVENTH CAUSE OF ACTION**

**Age Discrimination and Harassment in violation of Government Code section 12940 et seq., The Age Discrimination in Employment Act, and 29 U.S.C. § 621 et seq.**

**[AS AGAINST ALL DEFENDANTS]**

89. Plaintiff refers to, re-alleges, and incorporates herein by this reference all allegations set forth in paragraphs 1 through 88, inclusive.

90. Government Code section 12940 et. seq. and the Age Discrimination in Employment Act, and 29 U.S.C. § 621 et seq. prohibits, among other things, the discrimination against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

91. At all times mentioned in this complaint, the Age Discrimination in Employment Act, and 29 U.S.C. § 621 et seq., and FEHA was in full force and effect, and was binding on Defendants. This section requires Defendants, *inter alia*, to refrain from discriminating and harassing Plaintiff on the basis of age. These provisions set forth a fundamental public policy.

92. Plaintiff is a member of the class entitled to protection under the Age Discrimination in Employment Act, and 29 U.S.C. § 621 et seq., and FEHA.

///

///

STUTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

93. Plaintiff was terminated from the Church and otherwise unfairly and unjustly treated, discriminated against, and discharged on the on the basis of her age, 61, by Defendants and their agents, as described above.

94. Defendant engaged in outrageous acts and abuses against Plaintiff intentionally, willfully and wantonly for the purpose of depriving Plaintiff of her rights and to cause her to suffer humiliation, mental anguish, emotional and mental distress, highly unpleasant mental reaction, including anxiety, grief, shame, embarrassment, anger, chagrin, disappointment and worry.

95. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, the exact amount of which have not yet been fully ascertained but are within the jurisdictional limits of this Court. Plaintiff is entitled to damages, general and special, in an amount which will be shown at the time of trial.

96. Defendants committed said discrimination and harassment against Plaintiff maliciously, fraudulently and oppressively with the wrongful intent of injuring Plaintiff for an improper and evil motive which constitutes a malicious and conscious disregard of Plaintiff's rights. Defendants engaged in said discrimination and harassment against Plaintiff while acting in their official capacity as managers, agents, directors, and supervisors of the Church. Plaintiff is thereby entitled to punitive damages pursuant to California Civil Code section 3294 from all defendants according to proof at the time of trial.

97. Plaintiff seeks an award of attorneys fees on this cause of action pursuant to 29 U.S.C. § 626, Government Code section 12965, and Code of Civil Procedure section 1021.5.

**XII.**

**EIGHTH CAUSE OF ACTION**

**Gender Discrimination and Harassment in violation of The California Constitution, Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq. and Government Code section 12940 et seq.**

**[AS AGAINST ALL DEFENDANTS]**

98. Plaintiff realleges and incorporate herein by reference the allegations of paragraphs 1 through 97, inclusive.

STUTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

99. The Constitution of the State of California, Article 1, section 8, Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq., prohibit, among other things, harassing, retaliating, defaming or discriminating against an employee based on her age, sex, or complaints of unsafe working conditions.

100. At all times mentioned in this complaint, Constitution of the State of California, Article 1, section 8, Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq., and FEHA were in full force and effect, and were binding on Defendants. These all requires Defendants, *inter alia*, to refrain from discriminating and harassing Plaintiff on the basis of sex.

101. Plaintiff is a member of the class entitled to protection under the aforementioned section of the California Constitution, Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq., and FEHA sections.

102. Plaintiff was terminated from the Church and otherwise unfairly and unjustly treated, discriminated against, and discharged on the basis of her sex, female, by Defendants and their agents, as described above.

103. Defendant engaged in outrageous acts and abuses against Plaintiff intentionally, willfully and wantonly for the purpose of depriving Plaintiff of her rights and to cause her to suffer humiliation, mental anguish, emotional and mental distress, highly unpleasant mental reaction, including anxiety, grief, shame, embarrassment, anger, chagrin, disappointment and worry.

104. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, the exact amount of which have not yet been fully ascertained but are within the jurisdictional limits of this Court. Plaintiff is entitled to damages, general and special, in an amount which will be shown at the time of trial.

105. Defendants committed said discrimination and harassment against Plaintiff maliciously, fraudulently and oppressively with the wrongful intent of injuring Plaintiff for an improper and evil motive which constitutes a malicious and conscious disregard of Plaintiff's rights. Defendants engaged in said discrimination and harassment against Plaintiff while acting in their official capacity as managers, agents, directors, and supervisors of the Church. Plaintiff

is thereby entitled to punitive damages pursuant to California Civil Code section 3294 from all defendants according to proof at the time of trial.

106. Plaintiff seeks an award of attorneys fees on this cause of action pursuant to 42 U.S.C. § 2000e-5(k), Government Code section 12965, and Code of Civil Procedure section 1021.5.

## XIII.

## NINTH CAUSE OF ACTION

### Defamation

### [AS AGAINST ALL DEFENDANTS]

107. Plaintiff refers to, re-alleges, and incorporates herein by this reference all allegations set forth in paragraphs 1 through 106, inclusive, as though set forth in full.

108. Beginning on our about April 25, 2007, and continuing to the date of this complaint, Defendants Francisco Mesquita, Dick Lee, and Tom Wood began making defamatory and slanderous statements about the Plaintiff.

109. Defendants Francisco Mesquita, Dick Lee, and Tom Wood made disparaging statements about Plaintiff publicly, through written email, and through use of other channels of communication to third parties. These statements were false, entirely improper and opportunistic, and were disseminated throughout the Plaintiff's community. Plaintiff's career and professional reputation were severely damaged as a result of these statements. Numerous statements were made by Defendants, including but not limited to:

(1) On or about April 25, 2007, Defendant Francisco Mesquita falsely informed Church employees that Sandy Boone (Plaintiff) broke into the Church after being terminated and destroyed her computer. After April 25, 2007, Mesquita continued to tell employees that Plaintiff illegally entered the Church and destroyed her computer.

(2) On or about August 26, 2007, an email was sent from Defendant Dick Lee to Paula Padilla, a member of the community, stating that Sandy Boone (Plaintiff) was terminated because she "Had done things that were evil and absolutely despicable."

(3) On or about September 1, 2007, Defendant Tom Wood called Carol Nave, a

STUTZ ARTIANO SHINOFF & HOLTZ
*A Professional Corporation*

member of the community, and stated that Sandy Boone was fired because she committed "grievous acts."

(4) On or about September 3, 2007, Defendant Tom Wood stated to Clyde Cobb, a member of the community, that Plaintiff was terminated because she had done "Evil things."

(5) On September 6, 2007, an email was sent from Defendant Dick Lee to Laura Breen, a member of the community, stating that the Plaintiff is "a sinner," and "her sins got her into trouble."

110. The foregoing publications were false, outrageous, negligent, reckless, intentional, and maliciously published by Defendants, and each of them. Plaintiff is informed and believes that the negligent, reckless, and intentional publications by Defendants, and each of them, were published by Defendants while acting in their official capacity as managers, directors, or supervisors of the Church. Plaintiff hereby seeks damages for these Defendant publications and all foreseeable re-publications discovered up to the time of trial.

111. The defamatory publications consisted of oral and written, knowingly false and unprivileged communications, tending directly to injure Plaintiff and Plaintiff's personal, business, and professional reputation. These and similar statements published by Defendants, and each of them, expressly and impliedly asserted that Plaintiff engaged in, among other things, criminal behavior, committed grievous acts, did evil things, and acted despicably.

112. The defamatory meaning of all of the above-described false and defamatory statements and their reference to Plaintiff, were understood by these above-referenced third person recipients and other members of the community who are known to Defendants.

113. None of Defendants' defamatory publications against Plaintiff referenced above are true. The above defamatory statements were understood as assertions of fact, and not as opinion. Plaintiff is informed and believes this defamation will continue to be negligently, recklessly, and intentionally published and foreseeably republished by Defendants, and each of them, and foreseeably republished by recipients of Defendants' publications, thereby causing additional injury and damages for which Plaintiff seeks redress by this action.

///

STUTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

18

Plaintiff's FAC for Damages for Wrongful Termination; Retaliation; Age Discrimination and Harassment; Gender Discrimination and Harassment; Defamation; Intentional Infliction of Emotional Distress

@PFDesktop\::ODMA/WORLDOX/G:/DATA/3138/1/PL/S7032232.WPD

114. Each of these false defamatory *per se* publications were negligently, recklessly, and intentionally published in a manner equaling malice and abuse of any alleged conditional privilege, which Plaintiff denies existed, since the publications, and each of them, were made with hatred, ill will, and an intent to vex, harass, annoy, and injure Plaintiff in order to justify the illegal and cruel actions of Defendants, and each of them, to cause further damage to Plaintiff's professional and personal reputation.

115. As a proximate result of the publication and republication of these defamatory statements by Defendants, and each of them, Plaintiff has suffered injury to her personal, business and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, and general damage in an amount according to proof.

116. Defendants engaged in said defamation against Plaintiff maliciously, fraudulently and oppressively with the wrongful intent of injuring Plaintiff for an improper and evil motive which constitutes a malicious and conscious disregard of Plaintiff's rights. Defendants committed said defamation against Plaintiff while acting in their official capacity as managers, agents, directors, and supervisors of the Church. Plaintiff is thereby entitled to punitive damages pursuant to California Civil Code section 3294 from all defendants according to proof at the time of trial.

117. In addition to the aforementioned damages, Plaintiff seeks an award of attorney fees on this cause of action pursuant to Code of Civil Procedure section 1021.5.

## XIV.

## TENTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### [AS AGAINST ALL DEFENDANTS]

118. Plaintiff refers to, re-alleges, and incorporates herein by this reference all allegations set forth in paragraphs 1 through 117, inclusive.

///

19

Plaintiff's FAC for Damages for Wrongful Termination; Retaliation; Age Discrimination and Harassment; Gender Discrimination and Harassment; Defamation; Intentional Infliction of Emotional Distress

@PFDesktop\::ODMA/WORLDOX/G:/DATA/3138/1/PL/S7032232.WPD

STUTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

119. Defendants Francisco Mesquita, Dick Lee, and Tom Wood, who are employed by, acted as managers, and/or are agents of the Church, engaged in unprivileged conduct when they defamed Plaintiff and caused her embarrassment and humiliation. This conduct was outrageous in that the Defendant Church knew and condoned the conduct of its agent.

120. Defendants' conduct was done with reckless disregard of the probability of causing Plaintiff emotional distress or with the intent of causing Plaintiff to suffer emotional distress.

121. Plaintiff did in fact suffer severe emotional distress. Plaintiff's emotional distress was a direct and proximate result of the outrageous conduct of Defendants.

122. Defendants' conduct was oppressive, fraudulent, malicious, despicable, and was carried on by Defendants with willful disregard of the rights or safety of Plaintiff. Defendants, therefore, subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights.

123. As a further proximate result of Defendants' actions against Plaintiff, as alleged above, Plaintiff has been harmed in that Plaintiff has suffered humiliation, mental anguish, emotional and physical distress, anxiety, and has been injured in the mind and body. Plaintiff is thereby entitled to general and compensatory damages in an amount to be proven at trial.

124. Plaintiff is further informed and believes that each business or employer, through its officers, directors and managing agents, and each individual Defendant had advance knowledge of the wrongful conduct set forth above and sanctioned said wrongful conduct, thereby ratifying it, with a conscious disregard of the rights and safety of Plaintiff and for the deleterious consequences of Defendants' actions, and after becoming aware of their wrongful conduct, each Defendant, by and through its agents, and each individual Defendant, authorized and ratified the wrongful conduct herein alleged.

125. Plaintiff seeks an award of attorney fees on this cause of action pursuant to Code of Civil Procedure section 1021.5.

///

///

///

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, as follows:

1. For economic damages, including, but not limited to, past and future loss of earnings and benefits, and loss of earning capacity, according to proof;

2. For damages for physical and mental pain and anguish and emotional distress according to proof;

3. For punitive damages against all Defendants according to proof;

4. For costs of suit and pre-judgment interest at the legal prevailing rate;

5. Reasonable attorney's fees; and

6. For such other and further relief as the Court may deem just and proper.

DATED: March 12, 2008

STUTZ ARTIANO SHINOFF & HOLTZ
*A Professional Corporation*

By: ______________________
Daniel R. Shinoff
Gil Abed
Ryan L. Church
Attorneys for Plaintiff SONDRA BOONE

STUTZ ARTIANO SHINOFF & HOLTZ
*A Professional Corporation*

21

Plaintiff's FAC for Damages for Wrongful Termination; Retaliation; Age Discrimination and Harassment; Gender Discrimination and Harassment; Defamation; Intentional Infliction of Emotional Distress

@PFDesktop\::ODMA/WORLDOX/G:/DATA/3138/1/PL/S7032232.WPD

# EXHIBIT A

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1350 Front Street, Suite 3005 San Diego, CA 92101
(619) 645-2681 TTY (800) 700-2320 Fax (619) 645-2683
www.dfeh.ca.gov

August 23, 2007

SONDRA BOONE
2042 Cordoba Place
Carlsbad, CA 92008

RE: E200708D0201-00-arsc
BOONE/CARLSBAD COMMUNITY CHURCH

Dear SONDRA BOONE:

**NOTICE OF CASE CLOSURE**

This letter informs that the above-referenced complaint that was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective August 14, 2007 because an immediate right-to-sue notice was requested. DFEH will take no further action on the complaint.

This letter is also the Right-To-Sue Notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged discriminatory act, whichever is earlier.

EXHIBIT A-1

Notice of Case Closure
Page Two

DFEH does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

Belinda LeDoux

Belinda LeDoux
District Administrator

cc: Case File

Director
Human Resources/Personnel
CARLSBAD COMMUNITY CHURCH
3175 Harding Street
Carlsbad, CA 92008

EXHIBIT A-2

# EXHIBIT B

EEOC Form 161 (10/96)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

To: Mrs. Sondra Boone
2042 Cordoba PL
Carlsbad, CA 92008

From: United States Equal Employment Opportunity Commission
401 "B" Street, Suite 510
San Diego, California 92101

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 488-2007-00753 | Richard L. Williams | 619-557-7280 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] We cannot investigate your charge because it was not filed within the time limit required by law.

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You had 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ X ] Other *(briefly state)* After factoring in resource considerations, assuring that the Charging Party has been provided a fair opportunity to present his/her case and to elect a course of action in pursuing all allegations therein; sufficient information has been received to conclude that this charge should be dismissed.

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS from your receipt of this Notice**; otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Raul Green, Acting Director, San Diego Local Office

12/27/2007
*(Date Mailed)*

Enclosure(s)

cc: Daniel R. Shinoff, Esq
STUTZ ARTIANO SHINOFF & HOLTZ
2488 Historic Decatur Rd., Suite 200
San Diego, CA 92106

EXHIBIT B-1

Enclosure with EEOC
Form 161 (3/98)

# INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits and other provisions of State law may be shorter or more limited than those described below.)*

## PRIVATE SUIT RIGHTS -- Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), or the Age Discrimination in Employment Act (ADEA):

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS -- Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/00 to 12/1/00, you should file suit before 7/1/02 – *not* 12/1/02 -- in order to recover unpaid wages due for July 2000. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION -- Title VII and the ADA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE -- All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

EXHIBIT B-2

**STUTZ ARTIANO SHINOFF & HOLTZ**, A.P.C.
Daniel R. Shinoff, Esq. (State Bar No. 099129)
Ryan L. Church, Esq. (State Bar No. 249484)
2488 Historic Decatur Road, Ste. 200
San Diego, California 92106
Telephone: (619) 232-3122
Facsimile: (619) 232-3264
Attorneys for: Plaintiff SONDRA BOONE

***Boone v. Carlsbad Community Church, et al.***
**San Diego Superior Court, Case No.: 37-2007-00057536-CU-DF-NC**
**Hon.: Michael B. Orfield**

HEARING DATE: TIME: DEPT.: N-28 T/D:

**DECLARATION OF PROOF OF SERVICE**
**(CCP 1013a(1) & (3) & 2015.5**
**Local Rules, Div. II, Rule 6, 7; Cal. Rules of Court, Rule 2008(e))**

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO:

I am employed in the county of San Diego, State of California. I am over the age of 18 and not a party to the within action; my business address is: 2488 Historic Decatur Road, Suite 200, San Diego, California 92106. On March 12, 2008, I served the foregoing document described as **PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES FOR: WRONGFUL TERMINATION; RETALIATION; AGE DISCRIMINATION AND HARASSMENT; GENDER DISCRIMINATION AND HARASSMENT; DEFAMATION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;** on all interested persons in this action by placing true copies thereof enclosed in sealed envelopes addressed as shown below:

| Golnar J. Fozi, Esq.<br>DALEY & HEFT<br>462 Stevens Avenue, #201<br>Solana Beach, CA 92075<br>Tel: (858) 755-5666<br>Fax: (858) 755-7870 | Counsel for Defendants |
|---|---|

_√_ BY MAIL - I am "readily familiar" with the firm's practice of collection and processing documents for mailing. Under that practice it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid at San Diego, California in the ordinary course of a business day. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on March 12, 2008, at San Diego, California.

Linda L. Moore

EXHIBIT E

**STUTZ ARTIANO SHINOFF & HOLTZ**
*A Professional Corporation*
Daniel R. Shinoff, Esq. (State Bar No. 99129)
Gil Abed, Esq. (State Bar No. 195771)
Ryan L. Church, Esq. (State Bar No. 249484)
2488 Historic Decatur Road, Suite 200
San Diego, CA 92106-6113
Tel: (619) 232-3122
Fax: (619) 232-3264

Attorneys for Plaintiff SONDRA BOONE

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SAN DIEGO - NORTH COUNTY BRANCH**

SONDRA BOONE,

Plaintiff,

v.

CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA and DOES 1-20,

Defendants.

Case No. 37-2007-00057536-CU-DF-NC

ICJ: Michael B. Orfield

NOTICE OF MOTION AND MOTION FOR PLAINTIFF'S HEARING TO SEEK PUNITIVE DAMAGES AGAINST DEFENDANT CARLSBAD COMMUNITY CHURCH PURSUANT TO C.C.P. § 425.14

DATE: May 9, 2008
TIME: 1:30 p.m.
DEPT: N-29

COMPLAINT FILED: 10/29/07
TRIAL DATE: Not Set

**TO: ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 9, 2008 at 1:30 p.m. or as soon thereafter as counsel may be heard in Department N-29 of the above Court, located at 325 South Melrose Drive, Vista, California 92081, Plaintiff SONDRA BOONE, will move the Court for an Order allowing her to seek punitive damages against the Defendant Carlsbad Community Church, pursuant to C.C.P. § 425.14.

This Motion is based on the grounds that the individual Defendants were managers, agents, Board members, and Officers of the Church who acted on behalf of or at the direction

the Church at all times when the oppressive and malicious acts against the Plaintiff were committed. This Motion is based on this Notice of Motion, the Attached Memorandum of Points and Authorities, the Declaration of Sondra Boone, Declaration of Ryan L. Church, Notice of Lodgement, a copy of the First Amended Complaint, and upon all other pleadings, papers, records and other documentary material on file herein.

DATED: March 12, 2008

STUTZ ARTIANO SHINOFF & HOLTZ
*A Professional Corporation*

By: ______________________
Daniel R. Shinoff
Gil Abed
Ryan Church
Attorneys for Plaintiff SONDRA BOONE

STUTZ ARTIANO SHINOFF & HOLTZ
*A Professional Corporation*

**STUTZ ARTIANO SHINOFF & HOLTZ**, A.P.C.
Daniel R. Shinoff, Esq. (State Bar No. 099129)
Ryan L. Church, Esq. (State Bar No. 249484)
2488 Historic Decatur Road, Ste. 200
San Diego, California 92106
Telephone: (619) 232-3122
Facsimile: (619) 232-3264
Attorneys for: Plaintiff SONDRA BOONE

***Boone v. Carlsbad Community Church, et al.***
**San Diego Superior Court, Case No.: 37-2007-00057536-CU-DF-NC**
**Hon.: Michael B. Orfield**

HEARING DATE: 5/9/08 TIME: 1:30 p.m. DEPT.: N-28 T/D: None set

**DECLARATION OF PROOF OF SERVICE**
**(CCP 1013a(1) & (3) & 2015.5**
**Local Rules, Div. II, Rule 6, 7; Cal. Rules of Court, Rule 2008(e))**

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO:

I am employed in the county of San Diego, State of California. I am over the age of 18 and not a party to the within action; my business address is: 2488 Historic Decatur Road, Suite 200, San Diego, California 92106. On March 12, 2008, I served the foregoing document described as **NOTICE OF MOTION AND MOTION FOR PLAINTIFF'S HEARING TO SEEK PUNITIVE DAMAGES AGAINST DEFENDANT CARLSBAD COMMUNITY CHURCH PURSUANT TO C.C.P. § 425.14** on all interested persons in this action by placing true copies thereof enclosed in sealed envelopes addressed as shown below:

| Golnar J. Fozi, Esq.<br>DALEY & HEFT<br>462 Stevens Avenue, #201<br>Solana Beach, CA 92075<br>Tel: (858) 755-5666<br>Fax: (858) 755-7870 | Counsel for Defendants |
|---|---|

_X_ BY MAIL - I am "readily familiar" with the firm's practice of collection and processing documents for mailing. Under that practice it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid at San Diego, California in the ordinary course of a business day. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on March 12, 2008, at San Diego, California.

LINDA L. MOORE

**STUTZ ARTIANO SHINOFF & HOLTZ**
*A Professional Corporation*
Daniel R. Shinoff, Esq. (State Bar No. 99129)
Gil Abed, Esq. (State Bar No. 195771)
Ryan L. Church, Esq. (State Bar No. 249484)
2488 Historic Decatur Road, Suite 200
San Diego, CA 92106-6113
Tel: (619) 232-3122
Fax: (619) 232-3264

Attorneys for Plaintiff SONDRA BOONE

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SAN DIEGO - NORTH COUNTY BRANCH**

SONDRA BOONE,

Plaintiff,

v.

CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA and DOES 1-20,

Defendants.

Case No. 37-2007-00057536-CU-DF-NC

ICJ: Michael B. Orfield
DEPT: N-29

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO SEEK PUNITIVE DAMAGES AGAINST CARLSBAD COMMUNITY CHURCH

DATE: May 9, 2008
TIME: 1:30 p.m.

COMPLAINT FILED: 10/29/07
TRIAL DATE: Not Set

**I.**

**INTRODUCTION**

This matter arises in connection with an employment relationship between the Plaintiff, Sondra Boone (hereinafter, "Ms. Boone," or "Plaintiff"), and the Carlsbad Community Church (hereinafter, "Church"). Prior to her termination, Ms. Boone was a twenty-year employee of the Church. Throughout her tenure, Ms. Boone earned a number of promotions and received exemplary employment reviews. (*See* Declaration of Sondra Boone, p. 1.) The last position she held at the Church was as the Administrative Assistant to the Senior Pastor, Charles Youngkin.

STUTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

On September 4, 2006, Plaintiff and four other female employees filed an internal complaint with the Church regarding their health and welfare while at the workplace. (*See* Exhibit 1.) One of the primary concerns noted in the complaint involved the safety of female Church employees who were left alone with indigent intakes. (*Id.*) In essence, the female employees were expected to remain alone with the homeless intakes, and this posed a serious threat to their health, safety, and well-being.

Pastor Douglas Bosler, a supervisor, was outraged the employees filed the complaint. On September 8, after learning of the complaint, he entered Ms. Boone's office and verbally threatened, physically intimidated, and harassed her. (*See* Exhibit 2.) Following Bosler's outburst, Ms. Boone was in fear of her safety as she felt Bosler would likely engage in further harsh and threatening reprisals. As such, she immediately filed a series of grievances with the Church starting on or around September 8, 2006. (*See* Exhibit 3.) The Church failed to take immediate action and Ms. Boone remained in fear of her supervisor, Douglas Bosler until his resignation on October 30, 2006.

In February of 2007, through the regular course and scope of her employment, Boone discovered potential financial improprieties by high ranking Church mangers. (*See* Declaration of Sondra Boone, p. 3.) At or around the same time, Mrs. Boone was informed of a internal investigation regarding this possible financial abuse of Church funds. Pastor Youngkin, Defendant Dick Lee, and Defendant Tom Wood were vehemently opposed to the investigation, but Mrs. Boone openly expressed her support for it. (*Id.* at pp. 2-3) The investigation was set to begin on April 23, 2007, and one of the first employees scheduled to be interviewed was the Plaintiff, Sandy Boone. On April 23, 2007, Francisco Mesquita and Tom Wood entered Mrs. Boone's office and fired her without cause prior to her being interviewed as part of the investigation. (*Id.* at p. 3.)

After her termination, Ms. Boone learned of a series of personal attacks made against her by Defendants Wood, Lee, and Mesquita. To name a few:

///

- On April 25, 2007, Defendant Francisco Mesquita falsely informed Church employees that Ms. Boone broke into the Church after being terminated and destroyed her computer.
- On August 26, 2007, an email was sent from Defendant Dick Lee to Paula Padilla, a member of the community, stating that Sandy Boone was terminated because she "Had done things that were evil and absolutely despicable." (*See* Exhibit 4.)
- On September 1, 2007, Tom Wood called Carol Nave, a member of the community, and stated that Sandy Boone was fired because she did "grievous acts."
- On September 3, 2007, Tom Wood stated to Clyde Cobb, a member of the community, that Plaintiff was terminated because she had done "Evil things."
- On September 6, 2007, an email was sent from Defendant Dick Lee to Laura Breen, a member of the community, stating that Sandy Boone is "a sinner," and "her sins got her into trouble." (*See* Exhibit 5.)

Ms. Boone believes the defendants continue to disseminate defamatory statements about her.

## II.

## THE CORPORATE STRUCTURE OF THE CHURCH

Carlsbad Community Church is a 503 (c)(3) non-profit corporation. The Church, like most corporations, has individuals who serve as "Officers," "Board Members," and "Staff." (*See* Exhibit 6.) At all times herein mentioned, Defendants Wood, Lee, and Mesquita served as either Board Members or Officers of the Church. Each and every action they took against Sondra Boone was done while acting in their official capacity of Board Member or Officer of the Church. In fact, Defendant Lee even expressly notes that the April 23, 2007, firing of Sandy Boone was done at the direction of the entire Board. (*See* Exhibit 5, stating, "Sandy was not fired by Pastor Francisco...he was the messenger acting at the direction of all the members of the Board of Elders.")

As noted in the By-laws, the Board of Elders (hereinafter "Board of Elders," or "Directors," or "Board") shall serve as the Church Corporation Board of Directors. (*See* Exhibit 6.) Among other things, the Board is charged with the formulation and control of Church policy. (*Id.*) In addition, as noted in the Church By-laws,

STUTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

"The Board of Elders shall oversee the Personnel Committee to ensure that fair and equitable personnel policies are established and are set forth in appropriate personnel manuals. When grievances are referred to the Board by the Personnel Committee they will serve principally as negotiators between the aggrieved personnel and supervisor." (*See* Exhibit 6.)

**A. Defendant Wood Serves as the Chairman of the Board**

At all times herein mentioned, Defendant Tom Wood served as the Chairman of the Board of the Church. According to the Church By-laws, the Chairperson shall "preside over the regular and special business meetings of the congregation and of the Board of Elders and serve as the Church Corporate President." (*See* Exhibit 6.)

**B. Defendant Dick Lee Serves as the Treasurer**

At all times herein mentioned, Defendant Dick Lee served as the Treasurer of the Church. The Treasurer, according to the Church By-laws, is a "General Officer." The Treasurer is elected to his position and is, among other things, "the custodian of all the funds of the Church."

**C. Defendant Francisco Mesquita Serves as the Director of Administration**

At all times herein mentioned, Defendant Francisco Lee served as the Director of Administration of the Church. The role of the Director of Administration includes, "[being responsible] for the administrative and property staff of the Church and [conducting] the business affairs of the Church, working within the established policy guidelines of the Church." (*See* Exhibit 6.)

## III.

## LEGAL ARGUMENT

**A. This Court Has Proper Authority to Enter an Order Allowing the Plaintiff to Seek Punitive Damages**

A party can seek punitive damages against a religious corporation upon the finding the "plaintiff has established evidence which substantiates that plaintiff will meet the clear and convincing standard of proof under Section 3294 of the Civil Code." (C.C.P. § 425.14.) A party seeking to comply with requirements for asserting punitive damages against religious organization should be able to do so at any time that there is sufficient evidence available to

make the required prima facie showing. (*Rowe v. Superior Court* (1993) 15 Cal.App.4th 1711.)

**B. The Court Need Not Make a Factual Determination or Weigh Evidence To Determine If the Plaintiff Can Proceed with Her Punitive Claims**

Code of Civil Procedure section 425.14 requires that a plaintiff demonstrate the existence of sufficient evidence to establish a prima facie right to recover punitive damages against a religious organization. The Court has likened this to the same standard applied when deciding Motions for Summary Judgment. (*Rowe, supra,* at 1724.) While 425.14 requires a plaintiff to meet a clear and convincing standard of proof, the court need not make any factual determinations. To be sure, the *Rowe* court expressly notes,

> "The trial court is not required to make any factual determination or to become involved in any weighing process beyond that necessarily involved in deciding whether a prima facie case for punitive damages exists. Once the court concludes that such a case can be presented at trial it must permit the proposed amended pleading to be filed." (*Rowe*, *supra*, at 1723.)

**C. Defendants Lee, Wood, and Mesquita Were at All Times Managing Agents of the Church**

An act of oppression, fraud or malice, by officer, director or managing agent is sufficient to impose liability on corporate employer for punitive damages, without any additional showing of ratification by employer. (*Kelly-Zurian v. Wohl Shoe Co.* (1994) 22 Cal.App.4th 397.) "Managing agents" are employees who exercise substantial discretionary authority over decisions that ultimately determine "corporate policy," which consists of the general principles which guide a corporation, or rules intended to be followed consistently over time in corporate operations. (*Cruz v. HomeBase* (2000) 83 Cal.App.4th 160.) In addition, a punitive award may be made against an individual employer who directed or ratified a wrongful act, or a corporation whose superior officials directed or ratified the improper acts of other employees. (*See* Civ. Code § 3294(b).)

In the present matter, each and every oppressive act against Ms. Boone was done by, or at the direction of managing agents of the Church. Defendant Wood is the Chairman of the Board, Defendant Lee is the Treasurer, and Defendant Mesquita is the Director of Administration of the Church. (*See*, *supra*, section II.) Certainly, as the Chairman, Treasure, and

Director of Administration, the Defendants are high level managers who exercise substantial discretionary authority over decisions that ultimately determine "corporate policy." One need not look further than the respective job descriptions in Church By-laws to discover this. (*See*, *supra*, Section II; *See* also Exhibit 6.) Defendants also admittedly acted at the direction of the Board. Notably, Defendant Lee expressly states that the termination of Sondra Boone was done "at the direction of all of the Board of Elders." (See Exhibit 5.)

Because all of the oppressive acts against Ms. Boone were committed by, or at the direction of, managing agents of the Church, the Church should be subject to punitive liability. (*Kelly*, *supra*, at 469.)

**D. The Motion Sets Forth a Prima Facie Showing of Retaliation, Harassment, Discrimination, Wrongful Termination, and Defamation**

*1. Retaliation and Wrongful Termination*

To establish a *prima facie* case of retaliation, a plaintiff must show that (1) she engaged in a protected activity, (2) she suffered an adverse employment decision, and (3) there was a causal link between the protected activity and the adverse employment decision. Wrighten v. Metropolitan Hospitals, 726 F.2d 1346, 1354 (9th Cir. 1984).

Starting in early September 2006, Plaintiff filed a series of complaints–all of which requested that she be able to work in a safe and healthy work environment as required under the law. (See e.g., Labor Code § 6400.) Morever, Ms. Boone sought to be shielded from retaliation, discrimination, and abuse from her supervisor. (See Exhibit 3.) Ms. Boone had a protected legal right to make these complaints and not face retaliation. (*California Fair Employment & Housing Com. v. Gemini Aluminum Corp.*, (2004) 122 Cal.App.4th 1004.) Notwithstanding this, Ms. Boone was subjected to harsh reprisal, and was eventually fired without cause.

In addition, Ms. Boone expressed support of an internal investigation into alleged financial improprieties of among other individuals, Defendants Francisco Mesquita and Dick Lee. Curiously , on or around the day Ms. Boone was scheduled to be interviewed by investigators, she was terminated after twenty years of service to the Church.

2. *Defamation and Slander*

"Defamation is an invasion of the interest in reputation. The tort involves the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage." (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 27.) On more than one occasion Defendants, acting at the direction of or during their official capacity as Board members and Officers, engaged in an smear campaign against Ms. Boone. As previously noted, managing agents of the Church systematically disseminated false and outrageous comments about Sandy Boone following her termination. (See Exhibits 4 and 5; *See* Declaration of Sandy Boone, pp. 4-5.) Comments included, but were not limited to falsely accusing Ms. Boone of criminal activity, being a "sinner," and doing "evil things." None of these comments are true nor are they privileged. (See generally Civ. Code § 47.) Each and every comment, though, has a natural tendency to injure the Plaintiff and cause significant damage to her reputation in the community. Some of the comments carry particularly harsh connotation within the Church community. Perhaps the most notable would include Tom Wood informing a member of the community, through email, that Boone was terminated because she "Had done things that were evil and absolutely despicable." (*See* Exhibit 4.)

3. *Age and Gender Discrimination and Harassment*

In order to establish a *prima facie* case of discrimination, the plaintiff must show that that she belongs to a protected class (age 40 or above; female), that her job performance was sufficient to meet the employer's legitimate expectations, that she was discharged or faced an adverse employment decision in spite of her performance; and that the employer sought a replacement for her. *Palmer v. United States*, 794 F.2d 534 (9th Cir.1986).

Moreover, it is an unlawful employment practice for an employer to harass an employee based on his or her sex or age. (See, e.g., *Jones v. R.J. Correctional Facility* (2007) 152 Cal.App.4th 1367.) An employer is required to take all reasonable steps to prevent harassment from occurring in the workplace and to take immediate and appropriate action when it is or should be aware that harassment has occurred. (*Carrisales v. Department of Corrections* (1999)

21 Cal.4th 1132, 1139, superseded by statute on other grounds as noted in *Chapman v. Enos* (2004) 116 Cal.App.4th 920, 928, fn. 7.) An employer is strictly liable for harassment committed by its agents or supervisors. (*Carrisales*, at pp. 1134-1140.)

At the time of her termination, Ms. Boone was a 61-year old female and is therefore a member of two protected classes (age and gender). Throughout her tenure, she only received exemplary employment reviews (See Declaration of Sandy Boone, p. 1.) Defendants, who are managing agents of the Church, made disparaging remarks regarding the Defendant's age (61) and sex (female) throughout the scope of her employment. (*See* Declaration of Sandy Boone, pp. 3-4.) The Plaintiff made complaints of such treatment, and she was eventually fired.

Moreover, the plaintiff faced harassment based on age and gender when she was subjected to the September 4, 2006 outburst by Douglas Bosler, a supervisor. Thereafter, the Defendants refused to remedy her requests to work in a place of employment free and clear of harassment and discrimination and ultimately fired her.

**IV.**

**CONCLUSION**

Based on the foregoing, the Plaintiff respectfully request this Court enter an Order allowing the Plaintiff to seek punitive damages against the Defendant Church.

DATED: 3/12/08

STUTZ ARTIANO SHINOFF & HOLTZ
*A Professional Corporation*

By: [signature]
Daniel R. Shinoff
Gil Abed
Ryan Church
Attorneys for Plaintiff SONDRA BOONE

**STUTZ ARTIANO SHINOFF & HOLTZ**, A.P.C.
Daniel R. Shinoff, Esq. (State Bar No. 099129)
Ryan L. Church, Esq. (State Bar No. 249484)
2488 Historic Decatur Road, Ste. 200
San Diego, California 92106
Telephone: (619) 232-3122
Facsimile: (619) 232-3264
Attorneys for: Plaintiff SONDRA BOONE

***Boone v. Carlsbad Community Church, et al.***
**San Diego Superior Court, Case No.: 37-2007-00057536-CU-DF-NC**
**Hon.: Michael B. Orfield**

HEARING DATE: 5/9/08 TIME: 1:30 p.m. DEPT.: N-28 T/D:

**DECLARATION OF PROOF OF SERVICE**
**(CCP 1013a(1) & (3) & 2015.5**
**Local Rules, Div. II, Rule 6, 7; Cal. Rules of Court, Rule 2008(e))**

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO:

I am employed in the county of San Diego, State of California. I am over the age of 18 and not a party to the within action; my business address is: 2488 Historic Decatur Road, Suite 200, San Diego, California 92106. On March 12, 2008, I served the foregoing document described as **Plaintiff's Points and Authorities in Support of Motion to Seek Punitive Damages Against Carlsbad Community Church** on all interested persons in this action by placing true copies thereof enclosed in sealed envelopes addressed as shown below:

| | |
|---|---|
| Golnar J. Fozi, Esq.<br>DALEY & HEFT<br>462 Stevens Avenue, #201<br>Solana Beach, CA 92075<br>Tel: (858) 755-5666<br>Fax: (858) 755-7870 | Counsel for Defendants |

_X_ BY MAIL - I am "readily familiar" with the firm's practice of collection and processing documents for mailing. Under that practice it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid at San Diego, California in the ordinary course of a business day. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing.

Executed on March 12, 2008, at San Diego, California.

LINDA L. MOORE

STUTZ ARTIANO SHINOFF & HOLTZ
*A Professional Corporation*
Daniel R. Shinoff, Esq. (State Bar No. 99129)
Gil Abed, Esq. (State Bar No. 195771)
Ryan L. Church, Esq. (State Bar No. 249484)
2488 Historic Decatur Road, Suite 200
San Diego, CA 92106-6113
Tel: (619) 232-3122
Fax: (619) 232-3264

Attorneys for Plaintiff SONDRA BOONE

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SAN DIEGO - NORTH COUNTY BRANCH**

SONDRA BOONE,

Plaintiff,

v.

CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA and DOES 1-20,

Defendants.

Case No. 37-2007-00057536-CU-DF-NC

ICJ: Michael B. Orfield
DEPT: N-29

NOTICE OF LODGMENT IN SUPPORT OF CCP 425.14 MOTION

DATE: May 9, 2008
TIME: 1:30 p.m.

COMPLAINT FILED: 10/29/07
TRIAL DATE: Not Set

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiff SONDRA BOONE hereby lodges true and correct copies of the following exhibits in support of her Motion To Seek Punitive Damages Against the Defendant Carlsbad Community Church.

EXHIBIT "1": A true and correct copy of Plaintiff's internal complaint regarding the health and safety of female employees, dated September 4, 2006.

EXHIBIT "2": A true and correct copy of a letter from Barbara Sundby to the Defendant Church, dated October 23, 2006;

STUTZ ARTIANO SHINOFF & HOLTZ
*A Professional Corporation*

EXHIBIT "3": True and correct copies of emails between the Plaintiff and Defendant Church regarding Supervisor Bosler's treatment of Plaintiff on September 8.

EXHIBIT "4": A true and correct copy of an email from Defendant Dick Lee to Paula Padilla; dated August 26, 2007;

EXHIBIT "5": A true and correct copy of an email from Defendant Dick Lee to Laura Breen; dated September 6, 2007;

EXHIBIT "6": A true and correct copy of Defendant Carlsbad Community Church's Constitution and By-laws.

DATED: March 12, 2008

STUTZ ARTIANO SHINOFF & HOLTZ
*A Professional Corporation*

By: ______________________
Daniel R. Shinoff
Gil Abed
Ryan L. Church
Attorneys for Plaintiff SONDRA BOONE

STUTZ ARTIANO SHINOFF & HOLTZ
*A Professional Corporation*

2

Notice of Lodgment in Support of CCP 425.14 Motion

@PFDesktop\::ODMA/WORLDOX/G:/DATA/3138/1/PL/S7033146.WPD

Sept. 6, 2006

Dear Pastor Charlie,

Please note we are forwarding a copy of this memo to the Elder Board.

We, the Ladies of the office staff, after great contemplation have decided to formally share with you our grave concerns about Pastor Bosler.

For the past two years we have endured many questionable behaviors by Pastor Bosler without raising our concerns on a formal basis. However, the events of Friday, September 1, 2006 were the proverbial last straw.

Pastor Charlie, as we have already communicated to you, Pastor Bosler had responsibility for being Pastor of the Day (POD) on Friday, September 1, 2006. As you are aware, you, Pastor Max and usually Pastor Phil are off on Fridays. Additionally on the day in question Russ Nelson was very ill and was not able to be in the office, all of this was known by Pastor Bosler.

Pastor Bosler called in and left a voice mail to the affect that he would be "running errands" and that he would not be in until noon. He instructed that if "we were concerned that we should just lock the front door"!! Additionally, he indicated that Pastor Phil "might" be in and to ask him to handle things. When Pastor Bosler did show up at noon he was dressed in tennis attire (shorts and polo shirt), he stayed for about 2.5 hours then simply left without a word to anyone.

Pastor Charlie, if this were one of a very few incidents, we would not say anything. However, as you are well aware, it is simply the latest in a long line of issues. The Office and the Church as a whole rely heavily on the Pastor of the Day, especially when Russ Nelson is not present. The POD does far more then provide for our safety, quite honestly we all know how to dial 911 if there is an issue! The POD assists people, members and non-members of CCC who are in need and if necessary can makes important daily operational decisions, additionally, if someone with POD duty cannot fulfill their obligations they are expected to personally arrange for a replacement. POD duty has always been a priority at CCC, so much so that the Pastors often times call on the elders to assist in this role!

We as a body of employee's, most of which are long term members, have voted informally and we are expressing a complete lack of confidence in, or respect for, Pastor Bosler. Quite honestly, this issue cannot and will not be resolved with another apology. Pastor Charlie, we urge you to take swift and decisive action to permanently correct these issues.

Pastor Charlie, you and or the Elders could call a meeting of all us Ladies in an effort to intimidate or mollify us and that meeting would appear to be successful because as Ladies we have a tendency to be timid in such directly confrontational situations. However, such an attempt would only serve to amplify the issue, not solve it.

Thank you for your attention.

The Carlsbad Community Church office Staff

Signed (alpha sort)

Sandy Boone

Sandy Boone

Sandy Janke

Sandra Janke

Shirley Johnson

Shirley Johnson

~~Jessica Jones~~

Barbara Sundby

Barbara Sundby

Carlsbad Community Church

October 23, 2006

It has come to my attention that certain members of the Elder board have claimed that they have approached me to discuss the situations that transpired with Douglas Bosler during the month of September. I was never approached in any fashion by any of the Elders to discuss this matter. Being unaware until recently how serious the situation has become, I feel it is imperative that I share with you what I both experienced and witnessed relevant to the episodes.

On Friday September 8th D. Bosler summoned me to come to his office, I told him that the phone was on and was inappropriate at that time. Apparently very upset by my response, Douglas cornered me at my desk and proceeded to insist that we talk about the letter that had been signed by most of the Women in the office. Douglas was behaving in an intimidating fashion, I was so nervous that I simply agreed to whatever he wanted me to say and he then left, I was genuinely scared and felt threatened by his behavior.

Shortly after my encounter with Douglas he re-appeared, going past my desk and appeared very angry. Within moments I heard Douglas's raised voice, then heard it continue to increase in volume and intensity. The tone was very angry but I could not make out what he was saying. Being concerned I left my desk to investigate and discovered Douglas had blocked himself in Sandy's doorway and was yelling at her. Sandy was out of her seat and was trying to get past Douglas and leave her office but Douglas refused to let her pass.

I don't remember much more about this episode other then it lasted for about 10 minutes and that I was quite upset for the rest of the day.

I truly wish that the Elders had spoken with me as claimed, I feel that much grief and aggravation could have been avoided had I been given the chance to share this information with you prior to now.

Barbara Sundby

Barbara Sundby

3175 Harding St. Carlsbad, CA 92008 • Phone: (760) 729-2331 • Fax: (760) 729-2492 • Email: rnelson@3c.org • Website: www.3c.org

Senior Pastor Charles Youngkin



Print - Close Window

| | |
|---|---|
| From: | "Dick Lee" <LeeRCA@aol.com> |
| To: | "'R Thomas Wood Attorney'" <tomwoodcarlsbad@yahoo.com> |
| CC: | "'Dick Lee'" <LeeRCA@aol.com> |
| Subject: | email from Sandy ... and me |
| Date: | Sun, 30 Dec 2007 19:44:47 -0800 |

---

**From:** Dick Lee [mailto:LeeRCA@aol.com]
**Sent:** Friday, September 08, 2006 4:16 PM
**To:** 'Sandy Boone CCC'
**Subject:** RE: Pastor Douglas and you

Dear Sandy –

I ache for you, for Pastor Douglas, and for CCC.
I'm not sure how best to be helpful in this situation; if you see a benefit to us talking, I certainly am interested in doing so.
I can understand your reaction to Douglas ' visit; I can also understand his sense of urgency in clearing the air.
In terms of the specific incident cited in the letter, it seems to me that Pastor Douglas and the office staff don't share a common view of the POD responsibility. I look to Pastor Charlie to clarify what his expectations are, then everyone else needs to adhere to it. I know what the history of this church is, but it's not clear to me that Charlie has the same convictions about POD.
But the more troubling thing is that the letter hints that this is just an example. Not being in the church regularly during the week, I'm unable to generalize from this to a larger problem. So those of us elders with the same lack of knowledge need some help, if we are to do any good.
Meanwhile, I continue to pray for resolution.

In Him,
Dick Lee

---

**From:** elderbrd01122006@3c.org [mailto:elderbrd01122006@3c.org] **On Behalf Of** Sandy Boone CCC
**Sent:** Friday, September 08, 2006 11:41 AM
**To:** Dick Lee
**Cc:** 'Charlie Youngkin'
**Subject:**

Pastor Douglas,

I am now rather disheartened and somewhat disturbed by your refusal to honor my wishes that we not meet about the letter issue. I found your technique of standing in my doorway, blocking my exit and demanding we converse to be rather intimidating and threatening. Pastor Bosler, as I communicated earlier, it is up to Pastor Charlie and the Elders to interface with you about this issue. Your behavior this morning was completely inappropriate!

Sandy Boone

**From:** Sandy Boone CCC
**To:** 'R Thomas Wood Attorney'
**Date:** Tuesday, September 12, 2006 10:36:00 AM
**Subject:** RE: Pastor Bosler

Tom,

Thanks for your note. You are correct, yesterday I met with Pastor Charlie, then I had a separate meeting with Pastors Charlie, Max and Phil. Neither of these two meetings included any kind of personal counseling directed at me or the other Ladies, however the meetings were entirely about the current and historical issues pertaining to Pastor Bosler's questionable behaviors. There were many grave concerns discussed about Pastor Bosler by all three of the Pastors and I also addressed the concerns of the office ladies.

I am confused when you say you have no agenda other then trying to effect a reconciliation. The only thing that could possibly be reconciled on a personal level is Pastor Bosler's accosting of me in the office on Friday September 8th. Pastor Bosler behaved in a completely inappropriate manner physically, verbally and in his written communications about every incident he is involved in. Pastor Charlie admitted to me that much of what Pastor Bosler has written in defense of himself are ponderous half truths if not out and out fabrications. The issue that the Ladies surfaced originally about Pastor Bosler's work ethic and his cavalier attitude about his serious responsibilities to CCC, is not a personal issue to be "reconciled" it is an issue that needs to be dealt with through employment discipline and counseling by people such as yourself.

Tom, I am compassionate to Pastor Bosler and his obvious personal issues. At this point, I firmly believe that the leadership of the Church needs to take a good hard look past the intense personal relationship that exists between Pastor Charlie and Pastor Bosler and ask "Is Pastor Bosler really a good fit with our congregation?". It is obvious to me that people such as Pastor Max and numerous other wise and informed individuals, across the spectrum from Elders to other Pastors and Directors all the way down the ladder to receptionist have tolerated more then enough from the individual in question.

If you would like to chat, I will be available here at the church, by phone sometime after 10:30AM when we are finished counting Sunday's offering.

---

**From:** R Thomas Wood Attorney [mailto:rtwoodatty@sbcglobal.net]
**Sent:** Monday, September 11, 2006 9:18 PM
**To:** sboone@3c.org
**Subject:** Pastor Bosler

Sandy:

I apologize for not responding to your e-mail sooner. Could you please call me tomorrow at your convenience, 729-1159. The Elders will be discussing this issue. I know you have met with Pastors Charlie and Phil, but I would like to meet with you and hear your concerns first hand. I assure you I have no particular agenda except to help effect a reconciliation, if that is possible.

Thanks,

Tom (aka Crash)

R. THOMAS WOOD
325 Carlsbad Village Drive
Suite E-2
Carlsbad, CA 92008
Tel 760.729.1159
Fax 760.729.1220

**Sandy Boone**

---

**From:** Dick Lee [LeeRCA@aol.com]
**Sent:** Monday, September 25, 2006 4:59 PM
**To:** 'Sandy Boone CCC'
**Subject:** RE: Douglas Bosler

Dear Sandy,

I hate to see this issue escalate and escalate! I am so sorry that you continue to be in anguish over this matter. I'm not going to write much, because others are driving this and I don't want to get too many cooks in the soup, but I wanted you to know ...

The issue is being taken very seriously by the whole Board of Elders, as well as Pastor Charlie.
We're inexperienced at this, and it does take time to find knowledgeable help. I personally have made phone calls, and it's just taking time to find the right person or people to help us out.
The reason for the meeting with you last Wednesday was that we discussed this issue at length (two hours, maybe?) the previous Tuesday night, so that many of us went home very tired. It was thought that we needed to let you know of our discussions as soon as possible, which is the reason that you were visited by Tom and Jim Wednesday morning. You make it sound like this was an imposition, but it seems to me that if we'd delayed, that you also would have found grounds for criticism, so it seems to me that you would have been critical no matter what path was chosen. I don't remember why the substitution of Jim Boone for Tom Dennert, it may have been that Jim has some expertise in this area, it may have been Tom Dennert's unavailability.
I can assure you, from the discussion Tuesday night, that Jim Boone takes this matter very seriously.
Surely you must understand that while your perspective is pretty well understood by now, that we have to move carefully. We cannot err on either side.

Your Christian brother,
Dick Lee

---

**From:** elderbrd01122006@3c.org [mailto:elderbrd01122006@3c.org] **On Behalf Of** Sandy Boone CCC
**Sent:** Monday, September 25, 2006 4:37 PM
**To:** Dick Lee
**Subject:** Douglas Bosler

Dear Mr. Boone & Mr. Wood,

The surprise and unscheduled meeting that you insisted on having with me on Wednesday the 20th of September at 8:30 AM caught me in a somewhat unprepared state. In the future, please ensure that you schedule any such meetings ahead of time so we can all have equal time to prepare. In the future I will not participate in any such unscheduled meetings, nor will I participate without adequate opportunity to arrange for objective representation. One could construe your approach as an attempt to intimidate me, especially since you removed Tom Dennert (an objective and fair minded man) from the discussions and substituted him with Jim Boone.

The meeting was conducted in a somewhat confrontational fashion and I came away from the meeting feeling a significant degree of righteous indignation about the overall tone that was set by Jim Boone and a number of the comments that were made.

Jim stated that "Women react to such problems in an overly emotional way". I feel this was rather insulting, sexist and dismissive of a very serious issue. As you could tell from our meeting I am not being overly emotional but rather I am assigning the correct level of importance to this issue! Are you taking this seriously? My impression is that you are not. It is somewhat obvious to me that you are trying to minimize the ramifications of Douglas's behavior so that Douglas is not held accountable. It appears that you are unduly protecting Douglas Bosler for some bizarre reason, this confuses me.

Additionally, the somewhat juvenile solution that you have offered to this issue is completely unacceptable. I am 60 years old, have worked for CCC for 19 years and have been a member for 29 years. To treat me as if I am 13 years old by telling me that Douglas and I are to stay away from each other is absolutely absurd, simply because several times since Douglas has received this directive he has attempted to engage me in conversation (this has happened at least 5 times since Wednesday, September 20th). This is not a high school and Douglas is not a "young man" in fact he is middle aged (44 years old) and is supposed to be a Pastor that is held to a higher standard of behavior. This is not a teenage spat, this is one adult (me) being assaulted by another adult (Douglas). I am without responsibility for what has transpired. Upon careful reflection, all responsibility for the inappropriate behavior belongs to Douglas Bosler!

After our meeting I have chosen to consult with counsel and I am advised that Douglas's behavior qualifies as Employer Harassment. I am also advised that your approach to this "investigation" qualifies as sexual harassment in the workplace. Your derogatory comments about Women and your attempt to verbally manipulate the issue so that I am no longer the victim but a perpetrator exposes CCC as an organization, the Senior Pastor and you, The Elders, personally, to significant liability.

At this point in time, to avoid further unpleasantness, I respectfully request that you act decisively and immediately to remove this threat from my work environment, completely and permanently. I love this Church, have no intention of terminating my employment and have no desire to escalate this to the next level. However, whether this is escalated or not is entirely up to you, the Elders. I am now fully prepared to pursue this issue should you choose to not take appropriate remedial action. As an aside, based upon a comment that was made to me by Pastor Charlie on Monday September, 25th I do not consider counseling to be an option that will resolve this issue. Should you choose to provide counseling to Douglas after he leaves our employ, that is up to you and I am sure it would assist him greatly in his future endeavors.

The preceding letter should not be viewed as a threat, it is simply an update on the status of this situation and the options available to both of us.

Sandy Boone

**Dick Lee**

**From:** Dick Lee [LeeRCA@aol.com]
**Sent:** Sunday, August 26, 2007 6:32 AM
**To:** cppadilla@cox.net
**Cc:** 'Dick Lee'
**Subject:** RE: Website Communication to Elder Board

Paula (and Charlie) -

I'm jammed up today, both church and family things, but very much want to talk with you.

A few things to consider:

Don't take Dick Norris' and Dave Sittner's letters as gospel, without checking out their "facts" first.

Dave raised a whole bunch of issues, which he claims were facts. With the exception of the morale issue, which is a very real problem, the investigation team found nothing wrong at all. I can't remember if you were at the congregation meeting where those results were presented.

Dave claimed that Pastor Francisco and I were commingling funds, creating slush funds, and eliminating accounts ---- none of that is true. It took a great deal of time to "prove" this, partly because Dave Sittner would agree to meet - then reschedule the meeting - then cancel the meeting. To date, Dave has been unwilling, since the time he first wrote his letter, to meet with me, any other elder, or any pastor. So he's never presented one piece of evidence - and he can't. The only thing we are guilty of is slowing down the process to give him ample time to meet.

On Sandy Boone, let me say this. Francisco and Tom Wood were the messengers; they terminated Sandy at the direction of the Board of Elders.
We all met - many times - and then voted to terminate her. She was a long-term employee and had done many good things for the church. But she also did things that are evil and absolutely despicable. We don't dismiss people lightly. Unlike Dick Norris and Dave Sittner, who were given confidential information and then released it, I won't say any more about the specifics of Sandy's termination, because personnel matters are confidential - and I keep confidences. The first concerns about Sandy pre-date our first conversations with Francisco. Yet he's taking the blame for this.

When you write that the treatment of the Sittners is inexcusable, what treatment? I don't believe that we've done anything to them. I think the public comments about them have been restrained, maybe too restrained. What should I do when someone calls me a thief (go back and read his words again)
- and I know that I'm not?

Now, after the investigation team report comes out clearing our financial practices, Dick raises these issues all over again. Three Godly men who are very thorough say that there's no evidence of any wrongdoing. Dick now releases a report saying that there is too. Do you believe Ben White + Ken Johnson + Rich McDowell - and me - or do you believe Dick Norris? It comes down to that. I've asked Dick Norris for one shred of evidence ... he won't produce it and he can't. So, if he lies about that, then what else?

I was privileged to serve on the call committee that ultimately recommended Pastor Youngkin to the elders, who ultimately recommended him to the church body, who ultimately overwhelmingly called him. As a call committee member, we researched him thoroughly. I will tell you that we got exactly what we expected - a person who will spend lots of time on sermon preparation, casting visions, and working one-on-one behind the scene with small groups of people. When you do that, and are unwilling (or unable) to work more than 65 hours a week, then there are other things that don't get done.
Pastor Charlie was up-front about that to the call committee; I think he was pretty candid about that during the week of congregational meetings. There are no surprises. Some may not like it, but we were forewarned.

## Dick Lee

**From:** Dick Lee [LeeRCA@aol.com]

**Sent:** Thursday, September 06, 2007 4:27 PM

**To:** 'Laura Breen'

**Cc:** 'Dick Lee'; 'R Thomas Wood Attorney'

**Subject:** RE: Our church

*Dear Laura,*

*Thank you for the message, and the opportunity to correspond with you. Surely, since God made each of us different, we're not all going to agree on everything. I'm going to a meeting with the elders and pastors tonight .... it will be long, and by the time it's done my head will be aching. Even trying to keep 20+ people on the same specific topic is a challenge!*

*I do believe that if we all seek God's will, and try our best to understand each other, that we'll get through this crisis. My experience so far with congregation members is that a lot of the trouble comes from us elders - and the pastors - not providing enough information. We're going to try to fix that! Meanwhile, here are some answers. I'm going to interweave them with your comments. These are my personal views, not necessarily the same as the whole body of elders. I'm a bit pressed for time today, so I'll skip some of the items, as you'll see.*

-----Original Message-----
From: Laura Breen [mailto:lbreen@ucsd.edu]
Sent: Thursday, September 06, 2007 3:33 PM
To: Dick Lee
Cc: R Thomas Wood Attorney; bunkergal@sbcglobal.net; Todd & Deb Breen; mdbreen-comcast.net; Patsene Cline
Subject:

Hello Dick;

I understand your disagreement with some of my conclusions but before I go on I'd like you to think on a few things. These are things I have heard said/asked about when people are talking. Please don't think of as a spy, just someone who sees a lack of communication going on and I understand that you can't answer questions if no one asks.

*We have no problem with each other. It's great that people are passionate about - and concerned for - our church.*

Why is there a change in how the accounting is done?

*There really isn't a "change" in the way that the accounting is done. Every year, we eliminate a few accounts, and add a few, trying to make the system more responsive to the needs of our church. I've been Treasurer on and off over the last 10 years; I don't see any more changes this year than in previous years. Frankly, Dave Sittner made a big stink about nothing … I could show that to him if he'd ever meet with me (he never has, since his letter) and I'd be happy to sit down with you and show you the accounting reports.*

*Pastor Francisco is very skilled in accounting, much more so than Russ Nelson. He also started by carefully reading our bylaws … and he found that Russ and I were*

*not doing some of the financial things required by them, so he set out to fix that. "Businesses" (and that's how the government views us) have two kinds of financial statements – the income statement and the balance sheet. Our income statement was in good shape but our balance sheet was in complete disarray – as an example, it showed us owing $500,000 more on our mortgage than we did! He's fixed all that. Along the way, we've had to make some accounting statements.*

*Accounting rules change periodically. We get the church books audited each year. Our auditors for the last year (the one ended June 30) have already told us that if we hadn't made these changes, they would not be able to give us a passing grade on our financial procedures.*

Why can't we know how much the pastors make? we did in the past! After all it's our money paying their salary. Why all the secrecy? What is it they are doing that they don't want us to know about?

*I came to this church in 1989. As far as I know, we've never published the salaries of our staff since that time. It has always been a policy that any congregation member who wants to know this can ask; usually it takes a meeting with the business manager or the treasurer, and we tell them. This certainly is a policy that could be changed. But I think it's a bit like giving out your giving record … or mine … some things just seem better kept confidential. I've observed that different congregation members have different "favorite" pastors; I can just imagine the mess if we get into a public debate about the economic worth of Pastor Phil vs. Pastor Max, etc. Ouch! This is only going to hurt things. So if you'd like to know more, let's set up a time to meet.*

How could they fire someone who has worked for the church for so long? And a good Christian woman too!

*This is one of those "bad information" things. First, Sandy was not fired by Pastor Francisco … he was the messenger, acting at the direction of all the members of the Board of Elders. Pastor Francisco at one time wanted to promote Sandy. Secondly, it wasn't done quickly. Elder-level discussions about this go back to last fall, before we even knew Pastor Francisco. There have been many troubles, and I can assure you that Sandy knows them. I believe that Sandy is a good Christian (I cannot be sure, only God knows). But she – like me – is also a sinner. And the sins got her into trouble. I'm not going to say more about this; it's a confidential personnel matter. Unlike Dave and Dick, I keep confidences.*

Remember, the stories are flying and people are reading the Sittner and Norris letters and reading into them what is not there. More than once I've had to re-read the letter(s) to my Mom so that she understands that what she heard is not what was written. Human nature, when upset, I'm sorry to say will first think badly about a given issue.

*I agree and this points out one of our biggest errors, the lack of communication from us leaders. But I will list three mitigating factors:*

- *It's very clear that neither Dave nor Dick wanted a "fix" from the leadership; they've either refused to talk with the leadership, or delayed and delayed on meetings, instead choosing to distribute their stuff to the congregation.*
- *We have a very good group of leaders (I believe!) but the number of us makes the process inefficient. One cannot quickly call a special elder meeting, with the number of people involved, the number of activities that all of us are involved in, etc. So it will take time to respond to things.*
- *In some cases the communication has been delayed because we were trying to work for reconciliation, so as not to tarnish a person's reputation (per Pastor*

*Charlie's sermon last Sunday, from James 4). Unfortunately, the "other side" doesn't seem to have any such compunctions.*

I received the newsletter and your essay is very good. Short and to the point. No running around the bush and an offer to talk to anyone who has questions. You addressed the problem as it applies to you and to specific issues that have come up - good job and a big thank you,
I appreciate your work and effort to do the right thing. I for one feel better about you.

*Thank you! I try. But I wouldn't have known what to write if it hadn't been for the questions we were hearing. For some reason, our nature seems to be to condemn first, without even checking out concerns. Dave Sittner raised 11 separate financial issues in his March letter … ALL are baseless. It would have taken much less energy if he'd just been willing to sit down and discuss them. Instead, I - and others - have spent countless hours of work that's diverted us from other tasks. I always invite people to call or email with financial questions … but I get very few.*

Pastor Mesquita is a different story.

*The issues you have with him are probably better taken up with him directly. I will say that in the time that he's been here, I've found him to be:*

- *Very warm and personable*
- *Absolutely committed to the good of this church*
- *The most knowledgeable financial person we've ever had in this church (I've worked with four)*
- *In a difficult situation, having inherited a somewhat dysfunctional organization*
- *Being blamed for things that are not his fault.*

Pastor Youngkin's essay is like his sermons, long on what other people say, a bible verse, a definition of some word(s) and a little something from him. No into, middle, or end. It's just here. Bad writing overall. A newsletter is a great way to talk to people with out preaching to them. A way to answer questions and inform your co worker and friends on what's going on. He still doesn't see that people want answers not cuddling and a lecture. There's a time and place for a lecture and now is the time for answers, which you did and did beautify too.

*I don't feel qualified to answer this one.*

Our Constitution and By-laws are very much like other churches in our area that I have been checking out. They stand as an example of the standard for our type of church and in that way no change is needed. But when a governing body does not change with the times, the governed will force a change in law to better the way they are treated. Do you understand what I'm saying? With better communion and answers to questions a change in the constitution will not be necessary.

*I think I get it, but time will tell.*
*I don't think our bylaws are the problem.*
*I do think we have a power struggle going on (ask yourself - what are Dave's and Dick's motives, and that of the "anonymous emailer"?0.*
*We are NOT a perfect church. We are made up of imperfect people, starting with our pastors and elders.*

9/6/2007

*God only gives us 168 hours of time a week. I know that I, for one, have spent so much time on issues like these since February that not only am I not spending all the time that I need to on my paying job, but that there are many things that I want to do for my church, that I can't. I believe that the same thing is happening to all your elders .. and all your pastors (this may be a partial answer to your criticism of Pastor Charlie).*

I look forward to Sunday but am not hopeful that much will happen.

*I understand what your wrote. I pray that we will leave as brothers and sisters.*

*Thank you for the dialog!*

*Dick*

Have a nice evening............Laura Breen

At 03:37 PM 9/5/2007, you wrote:
>Dear Laura,
>
>Thank you for sending this to me!
>I accept most of the criticism, I disagree with some of the conclusions
>(partly because I have facts that we've not communicated to you ...
>hopefully that will get fixed on Sunday).
>But it's so wonderful seeing something with a name behind it, vs. trying to
>cope with the unseen enemy.
>Yes, we do need to get to the point where we all love each other, and trust
>each other; until then, we will never be the church that God will want us to
>be.
>I look forward to Sunday!
>
>In Him,
>
>Dick Lee
>
>
>-----Original Message-----
>From: Laura Breen [mailto:lbreen@ucsd.edu]
>Sent: Wednesday, September 05, 2007 3:26 PM
>To: Doris Sherk; mdbreen-comcast.net; Patsene Cline; Todd & Deb Breen; Steva
>and Dick Breen; bunkergal@sbcglobal.net
>Cc: R Thomas Wood Attorney; Dick Lee
>Subject: CCC blog web site
>
>Next Sunday at 2PM a meeting will be held at CCC. While many issues
>will be talked about, I fear that no answers or plans for improvement
>will come about. You have all had forwarded to you or received in
>the mail letters from the Sittners and Dick Norris. The following
>web site has been set up by person or persons unknown,
>www.carlsbadcommunity.org/about/
>
>Please check out the site and pray not only for our church but those
>who felt the need to set up and write this web page. The pastors and
>elders have hurt a lot of people but things like this happen in a
>family. As a family we need to say we're sorry, change our ways, and
>forgive so that we may once again love one another and grow in the Lord.

**CARLSBAD COMMUNITY CHURCH**
**CONSTITUTION AND BY-LAWS**
June 4, 2000

PREAMBLE: This church is incorporated under the Laws of the State of California. This Constitution and these By-laws are adopted in accordance with and subject to the corporation's Articles of Incorporation which have been filed with the Secretary of the State of California.

**CONSTITUTION**

ARTICLE I - NAME
The name of this church shall be Carlsbad Community Church.

ARTICLE II - OBJECT
The object of this church shall be to make disciples and-unite the followers of Jesus Christ for the purpose of sharing in the worship and service of God, that His will may become dominant in the lives of men in the community and throughout the world as that will -is set forth in the life and teachings, death and resurrection of Jesus Christ.

ARTICLE III - STATEMENT OF FAITH

1. We believe the Bible, consisting of the Old and New Testaments, to be the only inspired, inerrant, infallible, authoritative Word of God written.
2. We believe that there is one God, eternally existent in three persons; Father, Son and Holy Ghost.
3. We believe in the deity of Christ, in His Virgin Birth, in His sinless life, in his miracles, in His vicarious and atoning death through His shed blood, in His bodily resurrection, in His ascension to the right hand of the Father, and in His personal return in power and glory.
4. We believe that for salvation of lost and sinful man regeneration by the Holy Spirit is absolutely essential.
5. We believe in the present ministry of the Holy Spirit by Whose indwelling power and fullness the Christian is enabled to live a godly life in this present, evil world.
6. We believe in the resurrection of both the saved and the lost; they that are saved unto the resurrection of life; and they that are lost unto the resurrection of damnation.
7. We believe in the spiritual unity of all believers in Christ.

ARTICLE IV - STATEMENT OF POLITY (CHURCH GOVERNMENT)

1. We believe that Jesus Christ is the Head of His body, the Church universal, and of each local church.
2. We believe that this local church is in itself a complete church, and therefore, autonomous and possesses all rights and responsibilities of the church by the Holy Spirit as set forth in the Holy Scriptures.
3. We believe that Jesus Christ exercises His authority in this local church by the Holy 'Spirit and through the Holy Scriptures.
4. We believe that this local church is amenable only to Jesus Christ, and not to any association, conference, counsel, synod or any other ecclesiastical body.
5. We believe that it is proper and beneficial for this local church to seek fellowship and counsel of other such local churches who share our evangelical faith and doctrine.

ARTICLE V - COVENANT OF: MEMBERSHIP

I confess Jesus Christ as my Saviour and Lord, and believe that God has raised Him from the dead; and I do heartily give myself-to His service, take His Word as the rule of life and will habitually observe secret prayer and the reading of the Scriptures, earnestly seeking therein

the help of the Holy Spirit. I subscribe to the Object, Statement of Faith, and Statement of Polity of this church.
If I am or become the head of a family, I will maintain the worship of God in my home, and endeavor to lead my children to faith in Christ and to the Christian life.
I will attend regularly, as far as Providence permits, the public worship ofGod on the Lord's Day and such other meetings for worship as the church may appoint, and faithfully observe the ordinance of the Lord's Supper and walk together in brotherly love, with Christian sympathy and kindness, and faithfully admonish and help one another as may be needful.
I will aid as the Lord shall prosper me in supporting a faithful ministry amongst us, and in sending the Gospel to the whole human family; and as I have opportunity, will seek by example and word to lead men to Christ.
I will endeavor to live soberly and righteously and godly in this present world, abstaining from whatever is unbecoming to the Christian character; and as baptism signifies my death to sin and resurrection to holiness, so will I seek to walk in newness of life.

**BY-LAWS**

ARTICLE I – MEMBERSHIP

SECTION 1: QUALIFICATIONS
Persons who (a) present satisfactory letters of transfer from other churches, or (b) reaffirm their faith, but do not wish to sever their relationship with their church, or (c) make a confession of faith, must complete the prescribed course of instruction by the Minister, be recommended by the Membership Development Ministry Team, be approved by the Board of Elders and publicly accept the covenant of this church, will be accepted-as an "Active Member" or "Associate Member" of this church.

a. YOUTH MEMBERS. Youth who are High School Sophomores (10th grade) or higher are at least 16 years of age who fulfill the qualifications specified above and are recommended by the cognizant Youth Minister will be accepted as a "Youth Member".

SECTION 2: RECEPTION OF MEMBERS AND CATEGORIES OF MEMBERSHIP
Members (including "Youth" members) shall publicly accept the covenant of "membership" and may be received on the first Sunday of any month, or at any other regular service by special arrangement with the minister.

a. ACTIVE MEMBERS. "Active" Members are expected first to be faithful in all the spiritual duties essential to the Christian life, also to attend habitually the services of this church, to give regularly for its support and its charities, and to share in its organized work. This may include persons who wish to continue an existing membership at another church, but pledge to fulfill all requirements of "Active" Membership at this church.

b. ASSOCIATE MEMBERS. "Associate" Members are members of other churches who are with us temporarily and have met membership qualifications or members of our own church who find it necessary to be away for a prolonged period of time. Such members shall render to the church as many of the duties of the Active Member as they are able to perform, and are usually on the mailing-list. Associate Members are not voting members arid may not serve as a church officer, board member, or on a Ministry Team, but may serve on a Ministry Action Team.

c. INACTIVE MEMBERS. "Inactive" Members have been either "Active" or "Associate" Members who, due to lengthy inactivity, and for administrative purposes, are so designated. "Inactive" Members are usually not on the mailing lists and are not counted in membership totals and do not have the right to vote.

d. YOUTH MEMBERS. "Youth" members are expected to fulfill all the requirements of an "Active" member specified in Article I, Section 3.a. of these By-Laws. "Youth" Members who are active when they graduate from High School or reach their 18th birthday will automatically

become an "Active" Member. Those who are not active will become inactive members and normal follow up will be made by the Membership Development Ministry Team to determine their appropriate status of membership. Youth members do not have the right to vote and may not serve as a church officer, board member, or on a ministry team, but may serve on a Ministry Action Team or Special Committee.

SECTION 3: TERMINATION OF MEMBERSHIP
The continuance of membership shall be subject to the following:

a. Any member in good and regular standing who desires a letter of transfer and recommendation to any other Evangelical Church is entitled to receive it upon his request. In case of removal to another community, he shall promptly make such a request. This letter shall be valid as a recommendation from its date only for one year, unless renewed, and this restriction shall be stated in the letter.

b. If a member desires to join a religious body with which this Church is not in fellowship, or which would not receive its letter, the Church may, at his request, give a certificate of good standing to terminate membership.

c. If a member in good standing requests to be released from his covenant obligations to this Church for reasons which the Board of Elders deem satisfactory, after they shall have patiently and kindly endeavored to secure his 'Continuance in this fellowship, such request may then be granted by the Board of Elders and his membership terminated.

d. The Elders, after due notice and kindly effort to make such action unnecessary, may redesignate an Active Member as "Associate" or "Inactive" if he or she has been a non-resident or has not worshipped regularly with the Church or has not contributed to its support, if he or she is able, according to the system provided by the Church for the period of one year.

e. Should any member become an offense to the Church and its good name by reason of persistent breach of his covenant vows, the Church may terminate all form of his membership, but only after faithful efforts have been made to bring such member to repentance and amendment.

f. The membership of no member shall be altered except upon recommendation by an Elder or Pastor, followed by action of the Board of Elders or by letter granted by Board of Elders.

SECTION 4: RESTORATION

Any person whose membership has 'been terminated may be restored upon recommendation of the Membership Development Ministry Team, or the Senior Pastor and by agreement of the Board of Elders when evidence of his repentance and reformation (if for an offense) is received or, if on account of continued absence or non-contribution, upon satisfactory explanation.

ARTICLE II - LEADERSHIP

SECTION 1: GENERAL QUALIFICATIONS

a. All pastors, officers, board members and ministry team members shall be in agreement with Articles II, III, IV and V of the Constitution and Article ill of these By-Laws. Each pastor, officer, board member and ministry team member shall annually sign the Officers or Staff Covenant.

b. Pastors and Members of the Board of Elders shall have the spiritual qualifications stated in I Timothy 3:1-7 and Titus 1:5-9. Members of the Board of Elders shall be "Active" Members who have previously served on a board, ministry team, or in leadership of a Sunday School class, Growth Group or similar group in this church.

c. Members of Ministry Teams shall, where appropriate to their duties, have qualifications of a Deacon, as stated in I Timothy 3:8-13, and shall annually sign the Officers Covenant contained in Article III of these By-Laws.

d. This church, being autonomous, has the authority to license and ordain ministers of the Gospel of Jesus Christ.

SECTION 2: SENIOR MINISTER

a.  QUALIFACATIONS AND DUTIES

The Senior Minister shall by virtue of his office be an ex-officio member, without vote, of Board of Elders, all boards, all committees, all ministry teams, and organizations of the Church. He shall work closely with them, and lend his assistance, counsel and inspiration. The Senior Minister shall have charge of the Pastoral Staff, use of facilities and equipment. He shall preside at all meetings of the congregation, except as limited in Article V, Section 7, relating to regular and specially called business meetings.

b.  SELECTION

When a vacancy occurs, the Board of Elders shall act as a Search Committee to seek a suitable candidate for the pastorate of this Church, and to present such candidate for acceptance at a regular or special congregational meeting. Acceptance of a candidate shall require a 2/3 vote of those members present and voting at the regular or special congregational meeting.

c. TERM

The term of the pastorate shall be indeterminate. The Board of Elders may recommend a definite term in the case of an interim minister. Such term must be approved by 2/3 of the members attending a congregational meeting at which the interim minister is called.
In case either the Church or the minister wishes to terminate the pastoral relationship, a notice of at least sixty days shall be given, unless it is mutually agreed to terminate the pastorate on shorter notice. Removal of the minister shall not be a subject matter for vote by the members of the Church until the minister shall have been notified in writing by the Chairman of the Church a minimum of three weeks before such intended action, such notice giving the reasons therefore,
and until the minister shall have first had opportunity to answer such reasons before a meeting of the Board of Elders.

SECTION 3: OTHER PASTORALIMINISTERIAL STAFF

a. PASTORAL/MINISTERIAL STAFF

The Pastoral/Ministerial Staff shall consist of Pastors/Ministers, Program Directors and other professional employees who are called to this role by the congregation or the Board of Elders and who are eligible for assignment to an official ministry team and, therefore, are officers of the Church.

b. SELECTION

When there is a vacancy, the Board of Elders shall appoint a Search Committee. Upon their recommendation and with the concurrence of the Senior Minister, the Board of Elders shall: (1) present the Pastoral/Ministerial candidate to the Church for a vote; or (2) present the Pastoral/Ministerial candidate(s) to the appropriate Ministry Team for approval and then to the congregation for a vote; or (3) Present Program Directors, Director of Administration, or other professional candidates to the appropriate ministry team for a recommendation then approved and called by the Board of Elders who will then inform the congregation at the next regular business meeting.

c. STRUCTURAL ORGANIZATION OF PASTORALIMINISTERIAL STAFF

The Pastoral/Ministerial Staff will be organized by the Board of Elders, in conjunction with the Senior Pastor/Minister, to ensure that each major ministry of the church has a Pastor/Minister or Program Director assigned to facilitate that ministry. The structural organization is based on the Ministry Team Concept with a Pastor/Minister or Program Director and at least one elder assigned to each Ministry Team along with other key lay persons.

d. DUTIES OF DIRECTOR OF ADMINISTRATION

The Director of Administration shall be directly responsible to the Senior Minister. The Director of Administration shall have charge of the administrative and property maintenance staff of the Church and shall conduct the business affairs of the Church, working within established policy guidelines of the Church. The Director of Administration shall work with the Treasurer and appropriate ministry teams and shall be a member of the Administration Ministry Team and an ex officio member, without vote, of the Board of Elders and shall be an advisor to the Personnel Committee.

e. DUTIES OF OTHER PASTORAL STAFF

Other Pastoral Staff are directly responsible for performance of their duties to the Senior Minister and shall have such responsibilities as set forth in the Approved Position Description, or as assigned by the Senior Minister. Each Pastoral Staff member shall be assigned by the Senior Minister to be a pastoral member of a Ministry Team(s) constituted by the Board of Elders. Pastoral Staff Members may be made responsible to other Members of the Pastoral Staff when deemed necessary by the Senior Pastor and the Board of Elders.

SECTION 4: GENERAL OFFICERS

a. CHAIRPERSON

A Chairperson of the Church shall be elected each year from the membership of and by the Board of Elders at their November meeting with the term of office beginning on the following January 1st. The Chairperson shall serve for a term of one year and may not serve more than three full terms in succession. The Chairperson shall preside over the regular and special business meetings of the congregation and of the Board of Elders and serve as Church Corporate President.

b. VICE CHAIRPERSON

A Vice Chairperson of the Church shall be elected each year by the Board of Elders, from among their membership, at the November board meeting with the term of office beginning on the following January 1st. The Vice Chairperson shall serve for a term of one year and may not serve more than three full terms in succession. The Church Vice-Chairman shall serve as Corporate Vice President and in the absence of the Chairperson shall perform the duties of Church Chairperson.

c. CLERK

A Clerk shall be elected each year by the Board of Elders, from among their membership, at the November board meeting. The term of office shall begin on the following January 1st for one year and such person may serve no more than three full terms in succession. The Clerk shall ensure that minutes are kept for the congregational and Board of Elders meetings. The Clerk, supported by the Church staff, shall maintain proper records of church membership and church growth, a file of necessary reports and papers, an official manual of church policy, and shall give notice of all meetings where such notice is required by these By-Laws. Semiannually, the Clerk shall publish a roster of all Ministry Teams. The Clerk will be Corporate Secretary.

d. TREASURER

A treasurer shall be elected by the Board of Elders, from among their membership, at the November board meeting with the term of office beginning on the following January 1st. The Treasurer will be a member of the Administration Ministry Team.

The Treasurer of the Church shall be the custodian of all the funds of the Church, and working with the Director of Administration shall ensure that true and accurate books of account are maintained, which shall be audited annually by a committee appointed by the Board of Elders.

The Treasurer shall ensure that a monthly statement of the revenues and expenditures and current bank balance is prepared and presented to the Administration Ministry Team at their regular meetings, furnish a monthly budget report for the Board of Elders and shall make an annual written report to the congregation.

The Treasurer, or persons designated by him, shall receive all funds of the church and deposit them in a bank approved by the Administration Ministry Team. All receipts shall be accounted for, and all checks on the bank accounts of the Church (except for Missions Funds) shall be signed by any two of the following: the Treasurer, the Director of Administration, a Pastor designated by the Administration Ministry Team, the Chairman of the Administration Ministry Team, the Chairperson of the Church, the Vice Chairperson of the Church, or other church members designated by the Administration Ministry Team.

The Treasurer shall disburse funds only upon vouchers approved by an official of the Church or as established by policy of the Board of Elders or the Administration Ministry Team. The Treasurer is the Corporate Treasurer.

The Missions Ministry Team will disburse the funds specified under the Designated Missions Budget in accordance with accounting practices established by the Administration Ministry Team working with the Church Auditor, Treasurer, and Director of Administration.

SECTION 5: OFFICIAL BOARD

a. COMPOSITION

There shall be one official board which shall report directly to the congregation. The Senior Minister, and the Director of Administration are ex officio members, without vote, of the board. The official Board will be called the Board of Elders, and will be composed of fifteen (15) elected members.

b. TERMS

All members of the Board of Elders shall be elected to three year terms, with one-third of the membership being elected each year. A person can serve only one full term of three years on the Board of Elders and then must remain off the board for at least one year. Term of office shall begin on January 1st.

c. CHAIRPERSON

The Chairperson for the Board of Elders shall have served at least one year on the board. The Board of Elders shall select a Chairperson not later than its November meeting of the preceding term. The Chairperson shall also serve as Chairperson of the Church.

d. RESPONSIBILITIES

The responsibility of the Board of Elders is to give oversight to the Ministry Teams and to formulate and control application of policy. Board members shall serve as active members of Ministry Teams with at least one board member/elder on each ministry team. They do not

need to be the Chairperson of the Ministry Team. Ministry team appointments will be made by the Church Chairperson in consultation with the Senior Minister. The Board of Elders shall prepare an annual church budget for presentation to the congregation at its May meeting. Ministry Teams will look to the Board of Elders to advise, coordinate, negotiate and arbitrate within and between
ministry teams, or between ministry teams and other leadership regarding unclear, conflicting or new issues. The Board of Elders will meet monthly, or at other times, as needed. Meetings shall begin with a reading of Scripture and prayer and conclude with prayer. Other areas of responsibility are as follows:

1. THE BOARD OF ELDERS shall be responsible for all those functions which have to do with the inner life and nurture of the congregation, including the areas of church membership, church discipline, worship, music, Christian education, pastoral care, lay ministries and other congregational life ministries. The Board of Elders shall provide for the Lord's Supper, and shall designate those who shall care for the poor and sick, using funds set aside for this purpose, which shall be known as the Deacon's/Benevolence Fund. The Board of Elders shall provide for the supply of the pulpit. They shall set the personnel compensation for ministerial staff, music staff and the Director of Administration. The above responsibilities will be carried out through Ministry Teams and Ministry Action Teams where appropriate.

2. THE BOARD OF ELDERS shall be responsible to provide the financial resources needed to support and expand "The Object" and ministry of the Church. Special offerings for fund raising projects shall be subject to the approval of the Board of Elders. The Board will work with the Church Treasurer, Director of Administration, and the Administration Ministry Team to create policies to guide the business affairs of the church. The Administration Ministry Team is entrusted with conducting the business affairs of the church in accordance with established policies and good Christian business practices. The Administration Ministry Team working with the Director of Administration is entrusted with setting appropriate compensation for administrative and plant maintenance personnel.

3. THE BOARD OF ELDERS shall be responsible for all those functions in which the Church is attempting to bring into the membership of the local church or the church worldwide, those who have yet to know Christ, thus including the areas of worldwide missions, finances, personnel and evaluation, church planting and community outreach. The Board of Elders will work through the Missions Ministry Team to accomplish the church's mission's role and responsibilities. Further, the Missions Ministry Team will prepare a separate Faith Promise Missions Program Budget, which is not part of the regular church budget. The Budget will be presented to and approved by the Board of Elders. The Missions Ministry Team shall designate the use of special Missions offerings and shall approve candidates for missionary support.

4. The Board of Elders will approve position descriptions for all pastoral/ministerial, program director, Director of Administration and other professional personnel positions.

5. The Board of Elders shall oversee the Personnel Committee to ensure that fair and equitable personnel policies are established and are set forth in appropriate personnel manuals. When grievances are referred to the Board by the Personnel Committee they will serve principally as negotiators between aggrieved personnel and supervisor.

6. The Board of Elders shall serve as the Church Corporation Board of Directors.

7. The Board of Elders shall provide other coordination as needed.

8. The Board of Elders shall serve as a Search Committee to fill vacancies in Senior Minister, and Pastoral/Ministerial Staff, including the Director of Administration. The Personnel Committee or a Committee appointed by the Board of Elders may be used to conduct preliminary search and screening functions. Review positions as per Article II, Section 2.b. and Section 3.b.

9. The Board of Elders shall guide the short and long-range planning process of the

Church, Ministry Teams, and Pastoral Staff. It may appoint planning committees.

SECTION 6: MINISTRY TEAMS

a. MINISTRY TEAMS

The Board of Elders is required to establish Ministry Teams which will carry out the functions and activities involved in assigned areas of ministry. The Board, in establishing a Ministry Team, will define its area of responsibility, request the assignment of a member of the Pastoral/Ministerial Staff as a member of the Ministry Team, and appoint at least one member of the Board as a member of the Ministry Team. The Board appointee will be expected to participate in any Ministry Team task assignment. A Ministry Team shall have maximum freedom for ministry within its assigned ministry and budget. Requests for policy formulation or interpretation will be carried to the Board of Elders by one of the Elders on the Ministry Team. Ministry Action Teams may be appointed by Ministry Teams for each area of assigned ministry. Recommendations for ministry needs and resources as well as requests for policy formulation will be forwarded from Ministry Action Team to the Ministry Team and then on to the Board of Elders for action if necessary.

b. MINISTRY TEAMMEMBERSHIP

Anyone person should not normally serve on more than one Ministry Team at a time, and should not normally serve more than three consecutive years on the same Ministry Team. All Ministry Teams shall be reaffirmed and Ministry Team members appointed annually by specific Board action. Members of Ministry Teams shall annually sign the Officers Covenant contained in Article III of these By-Laws.

c. MINISTRY ACTION TEAMS

Ministry Teams are authorized to appoint Ministry Action Teams as needed for efficient execution of their areas of responsibility. However, no Ministry Team or Ministry Action Team shall be formed that is not responsible, either directly or indirectly, to the Board of Elders.

d. MINISTRY TEAM RESPONSIBILITIES

The Ministry Teams will recruit, train, and guide personnel, and provide the resources for each ministry assigned to them. They may use Ministry Action Teams to perform the actual ministry. Ministry Action Teams will make recommendations, requests, and reports to the Ministry Team. The Ministry Team will make recommendations, requests and reports to the Senior Pastor/Minister through the Pastor/Minister member(s) and to the Board of Elders through the Elder member(s).

   1. THE MISSIONS MINISTRY TEAM is responsible for all those functions in which the Church is attempting to bring into the membership of the church worldwide, those who have yet to know Christ, thus including the areas of worldwide missions, finances, personnel and evaluation, church planting and outreach into other local cultures. Further, they will prepare a separate Faith Promise Missions Program Budget, which is not part of the regular church budget. The overall budget will be approved by the Board of Elders. The Missions Ministry Team shall designate the use of special Missions offerings. They shall approve candidates for missionary support.

      (a) The Missions Treasurer, or persons designated by him with the concurrence of the Chairman of the Missions Ministry Team, will administer the distribution of funds which are part of the designated missions giving program. All receipts will be accounted for and all checks issued shall be signed by any two of the following: Missions Treasurer, Director of Administration, or Chairman of the Missions Ministry Team or his designee. The Missions Treasurer shall ensure a statement of revenues and expenditures and current bank balances is issued to the Administration Ministry Team and the Missions Ministry Team monthly and to the Congregation

Annually at the May meeting for the Missions Faith Promise Budget's previous Fiscal Year from April through March. The books of account shall be audited on a regular basis in conjunction with the general accounting of our Church finances.

2. THE ADMINISTRATION MINISTRY TEAM shall be responsible to the Board of Elders for financial management, administrative management, plant management, and property maintenance management needed to support and expand "The Object" and ministry of the Church. Financial responsibilities shall include establishing various programs of giving: including tithing, estate planning, trusts, and endowments. Special offerings for fund raising projects shall be subject to the approval of the Board of Elders. The Team shall be responsible for coordinating the annual financial planning process per Article N, Section 4. The Team will work with both the Church Treasurer and Director of Administration to create policies to guide the business affairs of the church. The Administration Ministry Team is entrusted with all functions related to the maintenance of real and personal property. The Administration Ministry Team, working with the Director of Administration, are entrusted with recommending appropriate compensation for administrative and plant maintenance personnel. They shall maintain a Manual of Current Church Policies.

3. Other Ministry Teams responsibilities and duties will be developed, written and kept separately from these By-Laws.

SECTION 7: PERSONNEL COMIMITTEE

The Personnel Committee shall be responsible to the Board of Elders to oversee all personnel matters.

a. DUTIES

In conjunction with the Administration Ministry Team, evaluate any changes in employee benefits and the employee policy manual.

Ensure that job descriptions exist for pastoral and staff positions. Develop grievance procedures, hear and mediate grievances. Ensure that evaluation procedures exist and are implemented.

b. MEMBERSHIP
Member qualities desired: Integrity, compassion, knowledge and experience, sense of fairness, objectivity, experience on a board or ministry team.

Made up of four (4) people, appointed by the Board of Elders, who rotate, each serving four (4) years.

SECTION 8: CHURCH CORPORATION

a. PURPOSE

Primarily to fulfill legal and governmental requirements regarding tax and liability law and to provide titled officers and directors for use as required in the course of doing corporate business.

b. SELECTION OF OFFICERS

The Church Corporate Officers: President, Vice President, Treasurer and Secretary are filled by the Church's Chairperson, Vice Chairperson, Church Treasurer and Clerk, respectively. Further, the Church Corporation's Board of Directors consists of the Board of Elders members whose voting or non-voting status is carried with them to the Corporate Board.

c. RESPONSIBILITY

The Board of Directors and Corporate Officers have charge of the Charter and Seal of the Corporation and matters related to maintaining the church's corporate status. The Board of Directors and Corporate Officers may request the aid of the church Director of Administration and hire professional services in carrying out these responsibilities. They will have a budgeted line item on the Church Budget for this purpose and will advise the Administration Ministry Team of the amount to be budgeted annually.

d. AUTHORITY

The Corporate Officers' authority to act must be approved by the Board of Directors or congregational meeting on an "as needed" basis, or annually as is appropriate for the particular need.

The Corporate Board of Directors' authority is limited to that which is already congregationally approved for the Board of Elders, Board of Directors, or Corporate Officers.

The Congregation's voting members are the voting shareholders of the Corporation who, through acceptance of this Constitution and these By-laws instruct the Corporate Board of Directors and officers to follow them and also the Articles of Incorporation which have been filed with the Secretary of the State of California. Therefore, final authority within the Corporation rests with the voting members in accordance with these By-Laws.

SECTION 9: NOMINATINGCOMMITTEE

a. There shall be a Nominating Committee composed of three members from the Board of Elders, three members from the congregation at large, and the Senior Minister, or his representative, who shall be an ex officio member, without vote.

b. The three members representing the Board of Elders shall be nominated by the Board of Elders from among its members. The members from the congregation at large shall be nominated by the Senior Minister. All members nominated shall be confirmed by the congregation at its May meeting.

It shall be the responsibility of the retiring Nominating Committee to obtain the names of those nominated in time for posting before the congregation two weeks before the date on which they are to be confirmed by the congregation.

c. No selected member of the Nominating Committee shall serve more than two full one-year terms in succession.

d. The Nominating Committee shall seek out individuals who have spiritual gifts and qualifications stated in I Timothy 3:1-7 and Article II, Section 1 of these By-Laws which are commensurate with service on the Board of Elders and who have sensed God's call in their lives for service.

e. The Nominating Committee shall develop the slate of candidates for the Board of Elders and shall receive nominations from the Board of Elders and Senior Minister for the Nominating Committee for the coming year. It shall obtain signed Covenant of Commitments from all persons nominated. The Nominating Committee shall present the slate of nominees in writing to the congregation two weeks prior to the date of election. The Committee shall serve year round to find and nominate persons to fill vacancies as they occur.

SECTION 10: ELECTION

Members of the Board of Elders shall be elected at the November congregational meeting. All elections shall be determined by a majority vote of the votes cast. In case of vacancy, the Nominating Committee shall nominate a replacement to be voted upon at a congregational meeting. All members of Ministry Teams shall be published at the May Congregational Meeting.

ARTICLE III - STATEMENT OF OFFICERS, STAFF, MINISTRY TEAMS, AND SUNDAY SCHOOLTEACHERS

SECTION 1: OFFICERS, MINISTRY TEAM MEMBERS AND SUNDAY SCHOOL TEACHERS

All candidates for church office shall, when they accept the invitation of the Nominating Committee, sign the following Covenant of Commitment, and each of these officers, all members of Ministry Teams, and all Sunday School Teachers, shall at the beginning of every year that they serve, sign this Covenant of Commitment.

It shall be the duty of the Nominating Committee to secure the signed covenants of those who are recommended for office and of the Church Clerk to secure the same from all others from whom it is required holding over in office. If any person is unable to sign the Covenant, that person shall not be considered by the Nominating Committee and if any persons named above shall become unable to subscribe, that person shall withdraw from office.

LAYPERSONS COVENANT OF COMMITMENT

"Realizing the sacred privilege and responsibility of serving Christ in the Carlsbad Community Church, I, without mental reservation, declare that:

1. I believe the Bible, consisting of the Old and New Testaments, to be the only inspired, inerrant, infallible, authoritative Word of God written.

2. I believe that there is one God, eternally existent in three persons; Father, Son and Holy Spirit.

3. I believe in the deity of Christ, in His Virgin Birth, in His sinless life, in his miracles, in His vicarious and *atoning* death through His shed blood, in His bodily resurrection, in His ascension to the right hand of the Father, and in His personal return in power and glory.

4. I believe that for salvation of lost and sinful man regeneration by the Holy Spirit is absolutely essential.

5. I believe in the present ministry of the Holy Spirit by Whose indwelling power and fullness the Christian is enabled to live a godly life in this present, evil world.

6. I believe in the resurrection of both the saved and the lost; they that are saved unto the resurrection of life; and they that are lost unto the resurrection of damnation.

7. I believe in the spiritual unity of all believers in Christ.

Freely admitting my own weakness, and yet believing that "I can do all things through Christ, who strengthens me," I will:

1. Surrender my life so as to advance the cause (or work) of Christ.
2. Faithfully perform the duties of the position that I accept in the Church.
3. Seek training which will increase the effectiveness of my service and help develop higher standards of performance for the Church.
4. Contribute regularly to the financial support of the Church.
5. Faithfully attend the worship services of the Church.
6. Earnestly pray and work for unity and harmony in the Church."

Section 2: Pastoral Staff and permanent church employees:

All candidates for church pastoral and office staff shall, prior to being hired by the church sign the following Covenant of Commitment and shall at the beginning of every year that they are employed by the church sign this Covenant.

It shall be the duty of the Board of Elders to secure the signed covenants of those who are recommended for pastoral/ministerial and office staff. If any person is unable to sign the Covenant, that person shall be considered to have resigned from employment by Carlsbad Community Church because of a lack of unity with and commitment to the doctrine which is at the heart of the church.

STAFF COVENANT OF COMMITMENT

"Realizing the sacred privilege and responsibility of serving Christ in the Carlsbad Community Church, I, without mental reservation, declare that:

1. I believe the Bible, consisting of the Old and New Testaments, to be the only inspired, inerrant, infallible, authoritative Word of God written.
2. I believe that there is one God, eternally existent in three persons; Father, Son and Holy Spirit.
3. I believe in the deity of Christ, in His Virgin Birth, in His sinless life, in his miracles, in His vicarious and *atoning*. death through His shed blood, in His bodily resurrection, in His ascension to the right hand of the Father, and in His personal return in power and glory.
4. I believe that for salvation of lost and sinful man regeneration by the Holy Spirit is absolutely essential.
5. I believe in the present ministry of the Holy Spirit by Whose indwelling power and fullness the Christian is enabled to live a godly life in this present, evil world.
6. I believe in the resurrection of both the saved and the lost; they that are saved unto the resurrection of life; and they that are lost unto the resurrection of damnation.
7. I believe in the spiritual unity of all believers in Christ.

ARTICLE IV - ORGANIZATION

SECTION 1: POLICY FORMATION

The Board of Elders shall have the power to formulate and annunciate policies that are to guide the activities of the Church. Such policies shall be entered by the Clerk into the Policy Manual of the Church which shall be available for examination by any member.

SECTION2: BOARD AND MINISTRY TEAM ROSTER

A roster, published by the Clerk semi-annually, shall list all officers and the membership of: the Board of Elders, Ministry Teams, Ministry Action Teams, and Committees.

SECTION 3: PLANNING PROCESS

The Senior Minister shall present at the February meeting a Statement of Vision, which shall be a result of interaction among the Board of Elders, Ministry Teams and the Pastoral Staff.

SECTION 4: BUDGET

The annual financial planning process, which is coordinated by the Administration Ministry Team, will reflect the direction of the planning and ministry programs reported to the congregation. Priority shall be given to effective on-going programs. The budget shall be for the next fiscal year, July through June.

SECTION 5: INPUT TO MINISTRY TEAMS AND THE BOARD OF ELDERS

New programs, ideas or suggestions for changes in existing policies may be made by any member of the church who may transmit this suggestion in writing, either directly to the appropriate Ministry Action Team, Ministry Team, Board of Elders, or committee, or if in doubt as to where it should go, to the Church Chairperson.

ARTICLE V - CONGREGATIONAL:MEETING

SECTION 1

Meeting for worship and public services shall be held on Sunday, and on some regular evenings each week.

SECTION 2

The Lord's Supper shall be celebrated at such regular dates as the Board of Elders may from time to time determine, but not less than 12 times a year.

SECTION 3

Occasional evangelistic or other worship services may be appointed by the Senior Minister in agreement with the Board of Elders.

SECTION 4

At any of the regular meetings of worship, the church may, without special notice, act upon resignations of officers, upon nominations by the Nominating Committee to fill vacancies, upon reception of new members, and to request that a council be formed for the ordination of a member considered qualified, but not upon other business.

SECTION 5

There shall be three regular business meetings of the church held each year: in November for the election of elders and to receive Ministry and Financial Reports from the previous church year; in February for the Senior Minister's Statement of Vision; and in May for the adoption of the annual budget for the following fiscal year. All other business may be transacted in these meetings, except that business which by these By-Laws require special notice or call. The date and time of the regular business meetings shall be set by the Board of Elders and communicated in the call issued by the Church Clerk.

SECTION 6 SPECIAL MEETINGS

The Chairman of the Church or the Senior Minister may and shall, when requested by the Board of Elders, call special business meetings. Special meetings of the Church shall also be called by the Clerk upon the written application of 25 members entitled to vote, specifying the purpose thereof.

Except as otherwise provided in these By-Laws, notice of all special meetings shall be read at the regular morning worship services on each of the two Sundays next preceding the day fixed for such meeting. The purpose of the Special Business Meeting shall be stated in the notice or shall be made available for distribution to the members in writing in the narthex of the sanctuary, and the worship center and reference thereto shall be made in the notice.

SECTION 7: PRESIDINGOFFICERIMODERATOR

The Chairman of the Church, or in the Chair's absence, the Vice-Chairman, or on their unavailability, an individual designated by the Board of Elders, shall preside at the regular meetings and at all specially called business meetings of the Church. The Senior Minister, or his designee, shall preside at all other meetings and worship services of the Church.

SECTION 8: QUORUM

A quorum for the transaction of business at any business meeting of the Church shall be 10% of qualified voters. "Robert's Rules of Order" are hereby adopted for the governing of all business procedures, except as otherwise provided in these By-Laws.

ARTICLE VI - DISCIPLINE

SECTION 1

Should any unhappy differences arise between members, the aggrieved member or members shall follow, in a tender spirit, the rules given by our Lord in the eighteenth Chapter of Matthew.

SECTION 2

Should any case of gross breach of Covenant occur, the Board of Elders shall appoint a committee to endeavor to remove the offense, and if such efforts fail, report the offense back to the Board of Elders. Should this breach involve the Pastoral and Program Staff, or Administration Staff, the matter may be referred to the Personnel Committee, if appropriate, who shall endeavor to resolve or remove the offense and if such efforts fail; report the offense back to the Board of Elders.

SECTION 3

If the Board of Elders votes to entertain a complaint, it must be in writing. The Board of Elders shall appoint a reasonable time and place of hearing and notify the person, or persons in question thereof, furnishing him or her with a copy of the charge.

SECTION 4

At such hearing the accused member or members may call to his or her aid any member of the Church as counsel. If he shall not present himself at the time appointed, or give a satisfactory reason for his neglect to do so, the Board of Elders may proceed in his/her absence.

SECTION 5

All such proceedings shall be pervaded by a spirit of Christian kindness and forbearance. Should an adverse decision be reached, the Board of Elders may proceed to admonish or to declare the offender to be no longer in the membership of the Church.

SECTION 6
In case of grave difficulty, the Board of Elders will be ready, if requested, to ask advice of a mutual council.

ARTICLE VII - AMENDMENTS

These By-Laws may be amended by a two-thirds vote ofthe Active Members present and voting at any Regular Business Meeting of the Church, or at a business meeting specifically called for that purpose. In both instances, the proposed amendment shall be inserted in a meeting call which shall be made at least one week in advance of said meeting. By "call" is understood: (1) public announcement and reading of the amendment from the pulpit at a Lord's Day service, or (2) posting of at least four copies of the proposed amendment in prominent places within the Church campus, and public reference thereto being made from the pulpit at the Lord's Day service.

No change shall be made in the Constitution except at a Regular Business Meeting and by a three-fourths vote of the Active Members present and voting, said proposal having been laid before the Church in writing at a business meeting at least one month before the time of the

proposed action and read from the pulpit on the Lord's Day at least one week before the meeting.

ARTICLE VIII - RESERVED AND DELEGATED POWERS

SECTION 1 RESERVED POWERS

Government of this church is vested in its members. Except as otherwise provided in these By-Laws or by congregational action, all powers not expressly delegated are reserved to the congregation, including the following:

a. Call of the Senior Minister or of any person to the Pastoral Staff as defined more fully in Article II of these By-Laws;

b. Amendment of the Articles of Incorporation in accordance with the law;

c. Amendment of these By-Laws in accordance with the provision for amendment stated elsewhere herein;

d. Purchase or lease (as Lessee) of any real property;

e. Sale, other transfer, lease (as Lessor), or encumbrance of any real property, except property not used in the conduct of religious activities of the Church;

f. Adoption and amendment of an annual budget;

g. Construction or demolition of any permanent building used in the conduct of religious activities of the Church;

h. Election of Officers and Boards provided for in Article II of these By-laws;

   i.    Review and modification at a congregational meeting, duly called and noticed for that purpose, of the action of the Board of Elders, or any Ministry Team, Committee, or Ministry Action Team upon the written request of 25 members filed with the Church Clerk.

SECTION 2 DELEGATED POWERS

The Board of Elders, Committees, Ministry Teams, Ministry Action Teams and Officers shall have those powers provided elsewhere in these By-laws and such other authority as the congregation may from time to time delegate to them.

**STUTZ ARTIANO SHINOFF & HOLTZ**, A.P.C.
Daniel R. Shinoff, Esq. (State Bar No. 099129)
Ryan L. Church, Esq. (State Bar No. 249484)
2488 Historic Decatur Road, Ste. 200
San Diego, California 92106
Telephone: (619) 232-3122
Facsimile: (619) 232-3264
Attorneys for: Plaintiff SONDRA BOONE

***Boone v. Carlsbad Community Church, et al.***
**San Diego Superior Court, Case No.: 37-2007-00057536-CU-DF-NC**
**Hon.: Michael B. Orfield**

HEARING DATE: 5/9/08 TIME: 1:30 p.m. DEPT.: N-28 T/D: None Set

**DECLARATION OF PROOF OF SERVICE**
**(CCP 1013a(1) & (3) & 2015.5**
**Local Rules, Div. II, Rule 6, 7; Cal. Rules of Court, Rule 2008(e))**

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO:

I am employed in the county of San Diego, State of California. I am over the age of 18 and not a party to the within action; my business address is: 2488 Historic Decatur Road, Suite 200, San Diego, California 92106. On March 12, 2008, I served the foregoing document described as **NOTICE OF LODGMENT IN SUPPORT OF CCP 425.14 MOTION** on all interested persons in this action by placing true copies thereof enclosed in sealed envelopes addressed as shown below:

| Golnar J. Fozi, Esq.<br>DALEY & HEFT<br>462 Stevens Avenue, #201<br>Solana Beach, CA 92075<br>Tel: (858) 755-5666<br>Fax: (858) 755-7870 | Counsel for Defendants |
|---|---|

_X_ BY MAIL - I am "readily familiar" with the firm's practice of collection and processing documents for mailing. Under that practice it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid at San Diego, California in the ordinary course of a business day. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on March 12, 2008, at San Diego, California.

LINDA L. MOORE

STUTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

**STUTZ ARTIANO SHINOFF & HOLTZ**
*A Professional Corporation*
Daniel R. Shinoff, Esq. (State Bar No. 99129)
Gil Abed, Esq. (State Bar No. 195771)
Ryan L. Church, Esq. (State Bar No. 249484)
2488 Historic Decatur Road, Suite 200
San Diego, CA 92106-6113
Tel: (619) 232-3122
Fax: (619) 232-3264

Attorneys for Plaintiff SONDRA BOONE

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SAN DIEGO - NORTH COUNTY BRANCH**

SONDRA BOONE,

Plaintiff,

v.

CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA and DOES 1-20,

Defendants.

Case No. 37-2007-00057536-CU-DF-NC

ICJ: Michael B. Orfield
DEPT: N-29

**AFFIDAVIT OF SONDRA BOONE**

COMPLAINT FILED: 10/29/07
TRIAL DATE: Not Set

I, SONDRA BOONE, declare as follows:

1. I am the Plaintiff in *Sondra Boone v. Carlsbad Community Church et. al.* I have personal knowledge of the facts set forth below and if called upon I could and would testify competently thereto. I have reviewed all Exhibits filed in connection with the Motion to Seek Punitive Damages and believe them to be true and complete copies.

2. I began my employment at the Carlsbad Community Church ("Church") in 1987.

3. During my time of employment at the Church, all of my employment reviews were exemplary.

4. I am informed and believe the Defendant Church was governed by the Board of Elders at the time when the alleged retaliation, discrimination, harassment, and defamation against me took place.

STUTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

5. I am informed and believe Defendants Lee and Wood were active members of, and acted on the behalf of the Board of Elders at the time the alleged retaliation, discrimination, harassment, and defamation against me occurred.

6. I am informed and believe that Defendant Tom Wood served as the Chairman of the Board of Elders at the time the alleged retaliation, discrimination, harassment, and defamation against me occurred.

7. I am informed and believe that Defendant Dick Lee served as the Treasurer of the Church at the time the alleged retaliation, discrimination, harassment, and defamation against me occurred.

8. I am informed and believe that Defendant Francisco Mesquita was the Pastor of Administration at the time the alleged retaliation, discrimination, harassment, and defamation against me occurred.

9. On or about September 4, 2006, I, along with other female Church employees, filed an internal complaint regarding our health and welfare while at the workplace.

10. On or about September 8, 2006, a supervising pastor, Douglas Bosler, entered my office and verbally threatened, physically intimidated, and harassed me regarding my filing of the above-referenced complaint. Following this, I was in fear of further harsh reprisals and in fear of being physically and verbally abused by Pastor Bosler.

11. Starting on or about September 8, 2006, I filed a series of grievances with the Church regarding Douglas Bosler's September 4, 2006, outburst.

12. Following the filing of my grievances, the Board did not furnish me with a safe place of employment free and clear from harassment and discrimination. After filing my grievances, Church management began to mistreat me, ignore me, and engage in behavior I perceived as harassing.

13. In or around March and April of 2007, I openly supported a Church Administration Ministry Team Member's request to initiate an investigation into potential misuse of Church funds.

///

STUTZ ARTIANO SHINOFF & HOLTZ
*A Professional Corporation*

14. Through my administrative position within the Church, I became aware of possible improper financial activity by Francisco Mesquita and Church Treasure Dick Lee and wished to discuss this with investigators.

15. In April of 2007, I had a meeting with my supervisor, Charlie Younkin, regarding the investigation. I expressed support of the investigation, and expressed my desire to discuss the possible improper financial accounting with the investigators. Younkin became irrate over my support and desire to share information with investigators. During the course of the meeting, Mr. Younkin stated that an investigation would only occur "over my dead body."

16. On or about April 23, 2007, I was terminated without cause by Francisco Mesquita (Pastor of Administration) and Tom Wood (Chairman of the Elder Board).

17. I am informed and believe the Board of Elders, through Defendants Wood, Lee, and others, condoned, ratified, or approved my termination as, among other things, an act of retaliation for: (1) my filing of an internal complaint regarding the safety of myself and other female employees; (2) my filing an internal complaint regarding Supervisor Bosler's treatment of me on September 8, 2006; and (3) my expressed support of an internal financial audit of the Church in connection with accusations of financial improprieties.

18. During my time of employment at the Church, I consistently heard male Church employees and male Members of the Board of Elders make comments and engage in conversations that I perceived as being discriminatory against females.

19 Many of the discriminatory comments made about females were expressly made to me.

20. The discriminatory comments were unwelcome and highly offensive.

21. I am informed and believe the Board of Elders, through Defendants Wood, Lee, and others, condoned, ratified, or approved the termination of me as, among other things, an act discrimination on the basis of my gender, female.

///

///

///

22. During my time of employment at the Church, I consistently heard male Church employees and Members of the Board of Elders make comments and engage in conversations that I perceived as being discriminatory against myself, as well as other individuals similar in age.

23. The discriminatory comments were unwelcome and highly offensive.

24. I am informed and believe the Board of Elders, through Defendants Wood, Lee, and others, condoned, ratified, encouraged, or approved the termination of me as, among other things, an act of discrimination on the basis of my age, 61.

25. I am informed and believe the Board of Elders, through Wood, Lee, and others, intended to cause injury to, and subject me to cruel and unjust hardship when it condoned, ratified, encouraged, or approved my termination.

26. I am informed and believe the Board of Elders, through Wood, Lee, and others, intentionally misrepresented or concealed material facts with the intent of depriving me of my legal rights when it condoned, ratified, encouraged, or approved my termination.

27. I am informed and believe the Board of Elders, through Defendants Wood, Lee, and others, as well as Defendant Mesquita, made disparaging statements about me publicly, through written email, and through use of other channels of communication to third parties. These statements were false, entirely improper and opportunistic, and were disseminated throughout my community. My career and professional reputation were severely damaged as a result of these statements.

28. The defamatory statements included, but were not limited to falsely and maliciously accusing me of engaging in criminal activity and characterizing me as "evil" and having committed "grievous acts." Statements made by the Defendants included, for example:

(a) On or about April 25, 2007, Defendant Francisco Mesquita falsely informed Church employees that I (Sandy Boone) broke into the Church after being terminated and destroyed my computer. After April 25, 2007, Mesquita continued to tell employees that I illegally entered the Church and destroyed my computer.

///

(b) On or about August 26, 2007, an email was sent from Defendant Dick Lee to Paula Padilla, a member of the community, stating that I (Sandy Boone) was terminated because I "Had done things that were evil and absolutely despicable."

(c) On or about September 1, 2007, Defendant Tom Wood called Carol Nave, a member of the community, and stated that I (Sandy Boone) was fired because I committed "grievous acts."

(d) On or about September 3, 2007, Defendant Tom Wood stated to Clyde Cobb, a member of the community, that I (Sandy Boone) was terminated because I had done "Evil things."

(e) On September 6, 2007, an email was sent from Defendant Dick Lee to Laura Breen, a member of the community, stating that I (Sandy Boone) was fired "at the direction of all of the members of the Board of Elders," that I (Sandy Boone) [am] "a sinner," and "[my] sins got me into trouble."

29. I am informed and believe the Board of Elders, through Defendants Wood, Lee, and others, as well as Defendant Mesquita, either made, or had advanced knowledge and/or condoned, ratified, encouraged, or approved the defamatory remarks made about me.

30. I am informed and believe the Board of Elders, through Defendants Wood, Lee, and others, as well as Defendant Mesquita, intended to cause injury to, and subject me to cruel and unjust hardship when it condoned, ratified, encouraged or approved the defamatory remarks made about me.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed on this 11TH day of March, 2008, at San Diego, California.

SONDRA BOONE

ACKNOWLEDGMENT

State of California )
)
County of San Diego )

On, March 11, 2008, before me, Ann Posthill, notary public, personally appeared SONDRA BOONE, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature ______________

ANN POSTHILL
COMM. #1495915
Notary Public - California
San Diego County
My Comm. Expires Jul. 18, 2008
NR01
NR01

STUTZ ARTIANO SHINOFF & HOLTZ
*A Professional Corporation*

**STUTZ ARTIANO SHINOFF & HOLTZ**, A.P.C.
Daniel R. Shinoff, Esq. (State Bar No. 099129)
Ryan L. Church, Esq. (State Bar No. 249484)
2488 Historic Decatur Road, Ste. 200
San Diego, California 92106
Telephone: (619) 232-3122
Facsimile: (619) 232-3264
Attorneys for: Plaintiff SONDRA BOONE

***Boone v. Carlsbad Community Church, et al.***
**San Diego Superior Court, Case No.: 37-2007-00057536-CU-DF-NC**
**Hon.: Michael B. Orfield**

HEARING DATE: May 9, 2008 TIME: 1:30 p.m. DEPT.: N-28 T/D: None Set

**DECLARATION OF PROOF OF SERVICE**
**(CCP 1013a(1) & (3) & 2015.5**
**Local Rules, Div. II, Rule 6, 7; Cal. Rules of Court, Rule 2008(e))**

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO:

I am employed in the county of San Diego, State of California. I am over the age of 18 and not a party to the within action; my business address is: 2488 Historic Decatur Road, Suite 200, San Diego, California 92106. On March 12, 2008, I served the foregoing document described as **AFFIDAVIT OF SONDRA BOONE** on all interested persons in this action by placing true copies thereof enclosed in sealed envelopes addressed as shown below:

| | |
|---|---|
| Golnar J. Fozi, Esq.<br>DALEY & HEFT<br>462 Stevens Avenue, #201<br>Solana Beach, CA 92075<br>Tel: (858) 755-5666<br>Fax: (858) 755-7870 | Counsel for Defendants |

X BY MAIL - I am "readily familiar" with the firm's practice of collection and processing documents for mailing. Under that practice it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid at San Diego, California in the ordinary course of a business day. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on March 12, 2008, at San Diego, California.

LINDA L. MOORE

**STUTZ ARTIANO SHINOFF & HOLTZ**
*A Professional Corporation*
Daniel R. Shinoff, Esq. (State Bar No. 99129)
Gil Abed, Esq. (State Bar No. 195771)
Ryan L. Church, Esq. (State Bar No. 249484)
2488 Historic Decatur Road, Suite 200
San Diego, CA 92106-6113
Tel: (619) 232-3122
Fax: (619) 232-3264

Attorneys for Plaintiff SONDRA BOONE

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SAN DIEGO - NORTH COUNTY BRANCH**

SONDRA BOONE,

Plaintiff,

v.

CARLSBAD COMMUNITY CHURCH, TOM WOOD, DICK LEE, FRANCISCO MESQUITA and DOES 1-20,

Defendants.

Case No. 37-2007-00057536-CU-DF-NC

ICJ: Michael B. Orfield
DEPT: N-29
DATE: May 9, 2008
TIME: 1:30 p.m.

DECLARATION OF RYAN L. CHURCH IN SUPPORT OF NOTION OF MOTION

COMPLAINT FILED: 10/29/07
TRIAL DATE: Not Set

I, RYAN L. CHURCH, declare as follows:

1. I am an attorney at law duly licensed to practice before all courts of the State of California and am an associate of the law firm Stutz Artiano Shinoff & Holtz, APC, attorneys of record for Plaintiff, Sondra Boone. I have personal knowledge of the facts set forth below and if called upon I could and would testify competently thereto.

2. To the best of my knowledge, I have attached a true and complete copy of each Exhibit provided in support of the Plaintiff's Motion To Seek Punitive Damages against the Defendant Church.

3. Exhibits 3, 4, and 5 were provided to us by the Defendants through a request for production of documents.

STUTZ ARTIANO SHINOFF & HOLTZ
A Professional Corporation

4. Plaintiff, Sondra Boone, provided me with Exhibits 1, 2, and 6. I am informed and believe that Defendants are in, or were in possession of true and correct copies of Exhibits 1, 2, and 6.

5. I personally examined each Exhibit.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed on this 12th day of March, 2008, at San Diego, California.

Ryan L. Church

STUTZ ARTIANO SHINOFF & HOLTZ
*A Professional Corporation*

**STUTZ ARTIANO SHINOFF & HOLTZ**, A.P.C.
Daniel R. Shinoff, Esq. (State Bar No. 099129)
Ryan L. Church, Esq. (State Bar No. 249484)
2488 Historic Decatur Road, Ste. 200
San Diego, California 92106
Telephone: (619) 232-3122
Facsimile: (619) 232-3264
Attorneys for: Plaintiff SONDRA BOONE

***Boone v. Carlsbad Community Church, et al.***
**San Diego Superior Court, Case No.: 37-2007-00057536-CU-DF-NC**
**Hon.: Michael B. Orfield**

HEARING DATE: 5/9/08 TIME: 1:30 p.m. DEPT.: N-28 T/D: None Set

**DECLARATION OF PROOF OF SERVICE**
**(CCP 1013a(1) & (3) & 2015.5**
**Local Rules, Div. II, Rule 6, 7; Cal. Rules of Court, Rule 2008(e))**

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO:

I am employed in the county of San Diego, State of California. I am over the age of 18 and not a party to the within action; my business address is: 2488 Historic Decatur Road, Suite 200, San Diego, California 92106. On March 12, 2008, I served the foregoing document described as **DECLARATION OF RYAN L. CHURCH IN SUPPORT OF NOTICE OF LODGMENT** on all interested persons in this action by placing true copies thereof enclosed in sealed envelopes addressed as shown below:

| Golnar J. Fozi, Esq.<br>DALEY & HEFT<br>462 Stevens Avenue, #201<br>Solana Beach, CA 92075<br>Tel: (858) 755-5666<br>Fax: (858) 755-7870 | Counsel for Defendants |
|---|---|

X BY MAIL - I am "readily familiar" with the firm's practice of collection and processing documents for mailing. Under that practice it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid at San Diego, California in the ordinary course of a business day. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on March 12, 2008, at San Diego, California.

LINDA L. MOORE

STUTZ ARTIANO SHINOFF & HOLTZ
*A Professional Corporation*

*Sondra Boone v. Carlsbad Community Church, Tom Wood, Dick Lee, Francisco Mesquita and DOES 1-20*
United States District Court, Southern District of California
Case No.

**PROOF OF SERVICE BY UNITED STATES MAIL**

I, Chiai Chon, declare that I am over the age of eighteen years and not a party to this action. I am an employee of Daley & Heft, (the firm) and my business address is 462 Stevens Avenue, Suite 201, Solana Beach, CA 92075.

On April 7, 2008, I caused the following document(s) to be electronically filed and served in this case:

**CIVIL COVER SHEET; NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1441(b) (FEDERAL QUESTION); NOTICE OF INTERESTED PARTIES**

and also by placing a copy thereof in envelopes bearing the name and addresses of the persons to be served as shown below. I am readily familiar with the Firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. Pursuant to that practice, correspondence which is placed for collection and mailing with the Postal Service during regular business hours on a given date is deposited with the Postal Service on that same date in the ordinary course of business. On the above date during regular business hours, I sealed the above-described envelopes and placed them for collection and mailing with the Postal Service, postage prepaid, in accordance with the Firm's ordinary business practice described above.

Ryan L. Church, Esq.
2488 Historic Decatur Road, Suite 200
San Diego, CA 92106-6113
**Attorneys for Plaintiff Sondra Boone**

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct. Executed on April 7, 2008, at Solana Beach, California.

Chiai Chon

VIA FAX

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

FILED 08 APR -8 PM 2:15
CLERK, U.S. DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA
BY: DEPUTY

'08 CV 0634 W AJB

**I. (a) PLAINTIFFS**

**DEFENDANTS**

(b) County of Residence of First Listed Plaintiff San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant San Diego
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Ryan L. Church, Esq., 2488 Historic Decatur Road, Ste. 200
San Diego, CA 92106-6113

Attorneys (If Known)
Golnar J. Fozi, Esq., 462 Stevens Avenue, Suite 201, Solana Beach, CA 92075

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☒ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
- Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

☐ 1 Original Proceeding ☒ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 42 USC §2000e
Brief description of cause: Plaintiff claims employment discrimination on the basis of age and gender.

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 DEMAND $
CHECK YES only if demanded in complaint: JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE DOCKET NUMBER

DATE 4/8/08 SIGNATURE OF ATTORNEY OF RECORD [signature]

FOR OFFICE USE ONLY

RECEIPT # 149490 AMOUNT 350 APPLYING IFP JUDGE MAG. JUDGE
4/8/08

VIA FAX

UNITED STATES
DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 149490 - SR

April 08, 2008
14:14:28

Civ Fil Non-Pris
USAO #.: 08CV0634
Judge..: THOMAS J WHELAN
Amount.: $350.00 CK
Check#.: BC#25204

Total-> $350.00

FROM: SONDRA BOONE V. EEE
CIVIL FILING